UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BIRD GLOBAL, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11 Cases<br><br>Case No. 23-_____<br><br>(Joint Administration Pending) |

**DEBTORS' EMERGENCY MOTION FOR ORDER (I) AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF LIEN CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY STATUS FOR OUTSTANDING PREPETITION PURCHASE ORDERS, AND (III) GRANTING RELATED RELIEF**
**Emergency Hearing Requested**

**Basis for Requested Emergency Hearing**

The Debtors respectfully request the Court conduct an emergency hearing on this Motion as it is essential that the Debtors pay the pre-petition claims of the Lien Claimants (defined herein) to ensure that they will continue to ship goods to and store goods for the Debtors. It is important to the Debtors' successful operations that the items in the process of being shipped or presently in the possession of the Lien Claimants are sent to the appropriate locations on time. Any disruptions could impair operations and lower confidence in the Debtors' ability to perform timely and consistently with their contractual and other obligations. Additionally, the Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1(B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by

and through their proposed undersigned counsel, file this motion (the "Motion") seeking the

entry an order (a) authorizing, but not directing, the Debtors to pay the prepetition claims of third

party service providers that may be entitled to assert liens against the Debtors' property (the

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

"Lien Claimants" or "Vendors"); (b) confirming the administrative expense priority status of all undisputed obligations of the Debtors arising out of outstanding prepetition purchase orders (the "Outstanding Orders"); and (c) granting related relief.

In support of the Motion, the Debtors rely on the *Declaration of Christopher Rankin in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") and respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are sections 105(a), 363, 503(b), 1107(a), and 1108 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), and Rules 6003 and 6004 of the Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

5.      The Debtors are operating their businesses and managing their affairs as debtors in possession.  11 U.S.C. §§ 1107(a) and 1108.

6.      For a detailed description of the Debtors and their operations, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.[2]

---

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declaration.

12661536-3

**RELIEF REQUESTED**

7.     By this Motion, the Debtors seek entry of an order (a) authorizing, but not directing, the Debtors to pay the prepetition claims of the Lien Claimants; (b) confirming the administrative expense priority status of all undisputed obligations of the Debtors arising out of the Outstanding Orders; and (c) granting related relief; provided, however, that honoring, performing, or exercising of such rights and obligations shall not give rise to administrative claims solely as a result of the entry of an order providing such authorization and shall not be deemed an assumption of any contract.

**I.      LIEN CLAIMANTS**

8.     Bird Global, Inc. is a micromobility company committed to providing affordable, environmentally friendly on-demand transportation solutions to communities across the world. The Debtors were the first company to deploy shared electric scooters in the United States, providing an entirely new category for short-distance transportation relying entirely on renewable energy.  In connection with their operations, the Debtors have received goods and services from certain Vendors who may qualify as Lien Claimants, meaning they may assert claims that would entitle such Vendors to assert liens against the Debtors' property in the event of nonpayment.

9.     The Debtors routinely engage a number of Lien Claimants, consisting of freight, warehousing, and third party logistics service providers, that, under certain non-bankruptcy laws, may be able to assert and perfect liens, including mechanic's liens, artisan's liens, materialman's liens, shipper's liens, warehouseman's liens, and other similar liens, against the Debtors' property  and, in some cases, their customers' property, if the Debtors fail to pay for goods or services rendered.  In general, the Lien Claimants provide shipping, storage, and other logistics

12661536-3

services related to the Debtors' proprietary property and equipment.  Accordingly, at any given time, the Lien Claimants may be in physical possession of parts, materials, and equipment purchased by the Debtors to be used to service and prepare the Debtors' electronic vehicles.  A list of the Lien Claimants and the amounts owed to each as of the Petition Date is attached hereto as Exhibit "A."

10.    The Debtors must ensure that they receive timely deliveries of goods to ensure no disruption in their services to customers.  Moreover, transitioning to other Lien Claimants could take sixty (60) to ninety (90) days, causing a massive disruption in the Debtors' operations.  If the Debtors are unable to pay the Lien Claimants on account of their prepetition claims, the Debtors risk such Lien Claimants asserting liens on their property, rendering the Debtors unable to provide their services to their customers and fully operate their businesses, which could be devastating to the Debtors' business.

11.    The Debtors estimate that the claims of Lien Claimants (the "Lien Claims") that have created, or could give rise to, a lien against the Debtors' property, regardless of whether the related Lien Claimants have already perfected their interests, total approximately $3,104,946.

12.    In the event that, as of the Petition Date, the Lien Claimants have outstanding invoices for goods transported or stored prior to the Petition Date, the Lien Claimants will likely argue that they have possessory liens for transportation or storage costs and may refuse to deliver or release those goods held in their possession until their invoices are paid and their liens are redeemed. The Lien Claimants may further be unwilling to release the goods in their possession to which they may be entitled to liens since this may result in their claims against the Debtors becoming unsecured.

12661536-3

13.     Moreover, even absent a perfected lien, a Lien Claimant's refusal to deliver the Debtors' goods and supplies would severely disrupt the Debtors' operations and cause the Debtors to lose revenue, future business, and goodwill.  The Debtors have established an excellent reputation in the industry for providing on-demand electric vehicles and must maintain this reputation in order to maintain their customer base and strengthen the value of the Debtors' business. As such, the Debtors seek authority to pay, in their sole discretion, the prepetition claims of the Lien Claimants.

## II.     POSTPETITION CONTINUATION OF CUSTOMARY TRADE CLAIMS

14.     The Debtors propose conditioning, where possible, the payment of Lien Claims on obtaining from each Lien Claimant their agreement to continue supplying goods and services to the Debtors on as favorable trade terms, practices, and programs as those trade terms, practices, and programs in place in the 24-months before the Petition Date (the "Customary Trade Terms") or pursuant to such other trade practices and programs that are favorable to the Debtors.

15.     The Debtors also seek limited authority, but not direction, to pay Lien Claims; *provided that*, unless otherwise agreed by the Debtors, if any Lien Claimant accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms:  (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore such payment will be immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such Lien Claimant will be reinstated as if the payment had not been made and the deadline for a Lien Claimant to file a reinstated claim will be the later of (i) the general bar date established by order of the Court or (ii) 30 days after the Debtors provide

12661536-3

written notice to the Lien Claimant of the reinstatement of its claim; and (c) if the Debtors owe the Lien Claimant any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with this Motion to reduce such outstanding postpetition amounts, and such Lien Claimant must return any amounts overpaid by the Debtors, without the right of any setoffs, recoupments, claims, provisions for payment of any claims, or otherwise.

### III.    OUTSTANDING ORDERS

16.    As of the Petition Date, the Debtors have certain prepetition purchase orders outstanding with various third-party vendors and suppliers for goods or services requested by the Debtors that have not yet been delivered or provided to the Debtors. These third-party vendors and suppliers may be concerned that because the Debtors' obligations under the Outstanding Orders arose before the Petition Date, such obligations will be treated as general unsecured claims in the Chapter 11 Cases. Accordingly, certain vendors and suppliers may refuse to provide goods or services to the Debtors purchased pursuant to the Outstanding Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (a) confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods or services subject to Outstanding Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

17.    As discussed above and in the First Day Declaration, any delay in the shipment or delivery of goods or services could significantly disrupt the Debtors' operations, harming the Debtors' business. Although it is difficult to estimate the total amount due and owing under the Outstanding Orders for goods or services that are not scheduled to be delivered or provided until after the Petition Date, the Debtors submit that the total amount to be paid in connection

12661536-3

therewith, if the relief requested herein is granted, is *de minimis* compared to the importance and necessity of the goods or services provided.

## AUTHORITY FOR RELIEF

**I.     PAYMENT OF LIEN CLAIMS IS WARRANTED UNDER SECTION 363(b) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY**

18.     The Court has authority to permit the payment of pre-petition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors and to reach the paramount goal of Chapter 11 of rehabilitation of a debtor.

19.     A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *accord In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

20.     In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such

12661536-3

relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  11 U.S.C. § 1107(a).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate, including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); see also *Unofficial Comm. of Equity Holders v. McManigle (In re Penick Pharm., Inc.)*, 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

21.    The Court may also rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business.  *See, e.g.*, *In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity, particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard for enabling a court to authorize payment of prepetition claims before confirmation of a reorganization plan).

22.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates,

12661536-3

and is justified under sections 363(b) and 105(a) of the Bankruptcy Code. Authorizing the Debtors to pay the Lien Claims in the amounts set forth herein is in the best interests of the Debtors, their estates, and their economic stakeholders. As set forth above and in the First Day Declaration, the Lien Claimants provide valuable shipping, storage and other logistics services related to the Debtors' proprietary equipment, that are necessary to the Debtors' continued operations. If the Debtors are unable to access these goods or utilize the services provided by the Lien Claimants, their business operations and ability to meet their customers' needs would be seriously impaired.

23.    Substantially similar relief as that requested here has been granted previously to debtors by courts in this District and others where, like here, it is essential to the debtors' ongoing business operations. *See, e.g., In re Vital Pharmaceuticals, Inc., et al.,* Case No. 22-17842 (PDR) (Bankr. S.D. Fla. Oct. 14, 2022); *In re Stein Mart, Inc.,* Case No. 3:20-b-2387 (JAF) (Bankr. M.D. Fla. Oct. 9, 2020); *In re Sears Holdings Corporation, et al.,* Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Oct. 16, 2018); *In re Robb & Stucky Limited LLLP,* No. 8:11-bk-2801-CED (Bankr. M.D. Fla. Feb. 24, 2011); *In re Maguire Group Holdings, Inc.,* No. 11-39347-RAM (Bankr. S.D. Fla. Nov. 1, 2011); *In re Gulfstream Intern. Group, Inc., et al.,* No. 10-44131 (Bankr. S.D. Fla. Nov. 4, 2010); and *In re Aloha Airlines, Inc., et al.,* No. 08-00337 (Bankr. D. Haw. March 21, 2008).

24.    The relief requested herein is justified under the foregoing authorities because allowing the Debtors to pay certain limited expenses or honor certain limited contractual obligations that accrued before the Petition Date is critical to maintaining the Debtors' ongoing operations, and granting the relief requested herein will allow the Debtors to continue to operate and therefore preserve and enhance the bankruptcy estates for the benefit of all creditors.

Payment of these limited expenses, as requested herein, in the ordinary course of the Debtors' business is, therefore, appropriate and necessary to carry out the rehabilitation of the Debtors under chapter 11 of the Bankruptcy Code.

25.     Here, it is essential that the Debtors pay the prepetition claims of the Lien Claimants in order to ensure that they will continue to provide the shipping, storage, and other logistics services related to the Debtors' inventory, equipment and personal property necessary to operate their business.

26.     Unless these Lien Claimants are paid promptly, they may refuse to deliver inventory, equipment or other personal property items of the Debtors that are vital to maintaining the Debtors' valuable relationships with their customers.

27.     As a result, it is in the best interest of the Debtors' estates, creditors, and other parties in interest if the Debtors are authorized, but not directed, to pay the prepetition claims of the Lien Claimants.  Absent such payment, the value of the Debtors' estates is likely to suffer substantial diminution.

28.     The relief requested in this Motion contemplates payments to be made to only the Lien Claimants who agree to provide services on Customary Trade Terms.  Any Lien Claimants paid pursuant to this Motion must agree to continue supplying the Debtors with services on the same or better trade terms as governed the relationship prepetition.

**II.     OBLIGATIONS OWED UNDER OUTSTANDING ORDERS ARE ENTITLED TO ADMINISTRATIVE EXPENSE PRIORITY STATUS UNDER SECTION 503(b) OF THE BANKRUPTCY CODE**

29.     Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded administrative expense priority because they benefit the estate postpetition. 11 U.S.C. § 503(b)(1)(A); *see also In re Waste Systems Intern., Inc.*, 280 B.R. 824, 826 (Bankr. D. Del.

12661536-3

2002) (holding that a non-debtor party to a prepetition consulting agreement was entitled to an administrative expense claim equal to the value of any postpetition benefit conferred on the estate); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993) (holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority).  Accordingly, granting the relief sought herein and explicitly granting the Outstanding Orders administrative expense priority status will not provide affected claimants with any greater priority than they would otherwise be entitled to, and will not prejudice any party in interest.  Absent such relief, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide affected claimants with assurance of administrative expense priority status.  This disruption to the continuous flow of goods and services to the Debtors would seriously impact the Debtors' ability to operate their businesses for the benefit of all stakeholders

### RESERVATION OF DEBTORS' RIGHTS

30.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### EXPEDITED CONSIDERATION AND WAIVER OF ANY APPLICABLE STAY

31.    The Debtors respectfully request expedited consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate

12661536-3

and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an expedited basis.

32.    To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

33.    No prior motion for the relief requested herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit "B"** (i) granting this Motion; (ii) authorizing, but not directing, the Debtors, in their sole discretion, to pay the prepetition obligations owing to the Lien Claimants and otherwise deal with those entities in the ordinary course of business and in accordance with normal prepetition procedures and agreements; (iii) authorizing, but not directing, the Debtors to continue honoring, performing, and exercising their rights and obligations (whether arising pre-petition or post-petition) under the Lien Claimants' contracts in the ordinary course of business; (iv) confirming the administrative expense priority status of all

12661536-3

undisputed obligations of the Debtors arising out of the Outstanding Orders; and (v) granting

such other and further relief as is just and proper.

Dated: December 20, 2023                    Respectfully submitted,

                                            BERGER SINGERMAN LLP
                                            *Proposed Counsel for the Debtors and*
                                            *Debtors-in-Possession*
                                            1450 Brickell Avenue, Ste. 1900
                                            Miami, FL  33131
                                            Telephone: (305) 755-9500
                                            Facsimile: (305) 714-4340

                                            By:    */s/  Paul Steven Singerman*
                                                   Paul Steven Singerman
                                                   Florida Bar No. 378860
                                                   singerman@bergersingerman.com
                                                   Jordi Guso
                                                   Florida Bar No. 863580
                                                   jguso@bergersingerman.com
                                                   Robin J. Rubens
                                                   Florida Bar No. 959413
                                                   rrubens@bergersingerman.com
                                                   Clay B. Roberts
                                                   Florida Bar No. 116058
                                                   croberts@bergersingerman.com

12661536-3

## EXHIBIT "A"

## (LIST OF LIEN CLAIMANTS)

Lien Claimant Motion
*Exhibit A: List of Lien Claimants*

| Lien Claimant | Lien Claimant Address | Estimated Pre-Petition Amount Owed |
|---|---|---|
| | | 1,200 |
| | | 13,000 |
| | | 9,516 |
| | | 8,524 |
| | | 6,720 |
| | | 38,679 |
| | | 9,032 |
| | | 34,566 |
| | | 950 |
| | | 2,213 |
| | | 3,667 |
| | | 129,523 |
| | | 5,760 |
| | | 195 |
| | | 4,469 |
| | | 7,705 |
| | | 2,083 |
| | | 6,279 |
| | | 3,400 |
| | | 1,997 |
| | | 4,668 |
| | | 4,500 |
| | | 16,000 |
| | | 10,699 |
| | | 21,994 |
| | | 24,826 |
| | | 12,813 |
| | | 6,479 |
| | | 900 |
| | | 6,400 |
| | | 2,800 |
| | | 23,180 |
| | | 15,795 |
| | | 29,147 |
| | | 9,004 |
| | | 9,876 |
| | | 3,292 |
| | | 3,500 |
| | | 2,368 |
| | | 9,876 |
| | | 9,873 |
| | | 253,157 |
| | | 394,817 |
| | | 193,818 |
| | | 547,192 |
| | | 10,220 |
| | | 27,080 |
| | | 650,000 |
| | | 228,571 |
| | | 17,580 |
| | | 35,746 |
| | | 114,395 |
| | | 48,844 |
| | | 66,057 |
| **Total** | | **3,104,946** |

## EXHIBIT "B"

## (PROPOSED ORDER)

12661536-3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BIRD GLOBAL, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11 Cases<br><br>Case No. 23-_____<br><br>(Joint Administration Pending) |

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR ORDER (I)
AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF LIEN
CLAIMANTS, (II) CONFIRMING ADMINISTRATIVE EXPENSE PRIORITY
STATUS FOR OUTSTANDING PREPETITION PURCHASE ORDERS,
AND (III) GRANTING RELATED RELIEF**

**THIS MATTER** came before the Court on _____, 2023, at \_\_\_\_ \_.m., in Miami,

Florida for a hearing (the "Hearing") upon the *Debtors' Emergency Motion for Order (I)*

*Authorizing Debtors to Pay Prepetition Claims of Lien Claimants, (II) Confirming*

---

[1]   The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179.  The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

12661547-3

*Administrative Expense Priority Status for Outstanding Prepetition Purchase Orders, and (III) Granting Related Relief* (the "Motion") [ECF No. ___] filed by the above-captioned debtors and debtors-in-possession (each a "Debtor" and, collectively, the "Debtors").[2] The Court, having considered the Motion, finds that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; (b) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (c) this matter is core pursuant to 28 U.S.C. § 157(b)(2); (d) the Court may enter a final order consistent with Article III of the United States Constitution; (e) notice of the Motion and the Hearing was sufficient under the circumstances and no other or further notice need be provided; (f) the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest; and (g) upon a review of the record before the Court, including the legal and factual bases set forth in the Motion and the First Day Declaration and the statements made by counsel at the Hearing, and being otherwise fully advised in the premises, does for the reasons stated on the record of the Hearing, all of which are incorporated herein; and after due deliberation and sufficient cause appearing therefor, has determined that good and sufficient cause exists to grant the relief requested.  Accordingly, it is

**ORDERED THAT**:

1.      The Motion is **GRANTED**.

2.      The Debtors are authorized, but not directed, to pay Lien Claims in an aggregate amount not to exceed $3,104,946 and otherwise deal with the Lien Claimants in the ordinary course of business and in accordance with normal prepetition procedures and agreements.

3.      The Debtors are authorized, but not directed, in the exercise of their reasonable

---

[2]    All capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion.

12661547-3

business judgment, to condition payment of Lien Claims on the agreement of Lien Claimants to provide goods and services on Customary Trade Terms.

4.      If any party accepts payment pursuant to the relief provided by this Order and thereafter does not continue to provide goods or services on Customary Trade Terms:  (a) the Debtors may demand repayment in cash and otherwise take all action to have such payment be deemed to be an improper postpetition transfer on account of a prepetition claim, and (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for such party to file a reinstated claim will be the later of (i) the general bar date established by order of this Court or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim.

5.      All undisputed obligations of the Debtors arising under the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(a) of the Bankruptcy Code.

6.      Notwithstanding anything to the contrary in this Order, the Motion, or any exhibits thereto, the priority of a Lien Claimant's claim shall not be affected by whether such Lien Claimant provides goods or services to the Debtors under Customary Trade Terms, or otherwise.

7.      The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds transfers, on account of Lien Claims as set forth herein, and to replace any prepetition checks or electronic fund transfer requests that may be lost or dishonored as a result of the commencement of the Chapter 11 Cases.

8.      Nothing in the Motion or this Order, nor any actions or payments made by the

3

12661547-3

Debtors pursuant to this Order, shall be construed as: (a) an admission as to the validity of any claim against the Debtors or the existence of any lien against the Debtors' properties; (b) a waiver of the Debtors' rights to dispute any claim or lien on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim would constitute an allowed claim; (e) an assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code; or (f) a limitation on the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract with any party subject to this Order. Nothing contained in this Order shall be deemed to increase, reclassify, elevate to an administrative expense status, or otherwise affect any claim to the extent it is not paid.

9.      Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

10.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

11.     The Court shall retain jurisdiction over this matter to provide for such additional and further relief necessary to enforce the terms and conditions of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
singerman@bergersingerman.com

*(Attorney Singerman is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

4

12661547-3