UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BIRD GLOBAL, INC., *et al.*,[1]<br><br>    Debtors. | Chapter 11 Cases<br><br>Case No. 23-_____<br><br>(Joint Administration Pending) |

**DEBTORS' EMERGENCY MOTION FOR AN ORDER (I)
AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF
CRITICAL VENDORS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
PRIORITY STATUS FOR OUTSTANDING PREPETITION PURCHASE
ORDERS, AND (III) GRANTING RELATED RELIEF
(Emergency Hearing Requested)**

**Statement of Exigent Circumstances**

The Debtors respectfully request the Court to conduct an expedited hearing on this Motion, as it is essential for the Debtors to pay certain critical vendors in order to maintain business operations in the ordinary course. The vendors that the Debtors seek to pay through this Motion are critical to the Debtors' daily operations and, thus, critical to the successful reorganization of the Debtors. The Debtors also seek to confirm administrative expense priority status for outstanding prepetition purchase orders. Without payments to certain critical vendors, the Debtors' businesses will likely suffer significant, if not irreparable, harm. The Debtors respectfully request that the Court waive the provisions of Local Rule 9075-1 (B), which requires an affirmative statement that a bona fide effort was made in order to resolve the issues raised in this Motion, as the relief requested herein is urgent in nature and does not lend itself to advance resolution.

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, pursuant to 11 U.S.C. §§ 105(a) and 363, file this motion (the "Motion") seeking the entry of an Order (a) authorizing, but not directing, the Debtors to pay the prepetition claims of vendors that are critical to the Debtors' business operations (the "Critical Vendors"); (b) confirming the administrative expense priority status of

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

all undisputed obligations of the Debtors arising out of outstanding prepetition purchase orders (the "Outstanding Orders"); and (c) granting related relief.

In support of this Motion, the Debtors rely upon the *Declaration of Christopher Rankin in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed concurrently herewith and incorporated herein and respectfully represent the following:

## BACKGROUND

1.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      The Debtors are operating their business and managing their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      For a detailed description of the Debtors and their operation, the Debtors respectfully refer the Court and parties in interest to the First Day Declaration.[2]

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek entry of an order (a) authorizing, but not directing, the Debtors to pay the prepetition claims of the Critical Vendors; (b) confirming the administrative expense priority status of the Outstanding Orders; and (c) granting related relief.

## A.      PREPETITION CRITICAL VENDOR CLAIMS

5.      Bird Global, Inc. is a micromobility company committed to providing affordable, environmentally friendly on-demand transportation solutions to communities across the world. The Debtors were the first company to deploy shared electric scooters in the United States, providing an entirely new category for short-distance transportation relying entirely on renewable energy.   In connection with their operations, the Debtors rely upon a number of

---

[2]   Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the First Day Declaration.

12645890-5

Critical Vendors whose services are essential to maintaining their operations. Without the services of the Critical Vendors, the Debtors would be unable to operate their businesses, comply with federal or local regulations, meet customer demand, or safely maintain their assets.

6.      The Debtors seek authority to pay the prepetition claims of Critical Vendors, totaling $2,740,176.57 in the aggregate, that are critical to the Debtors' businesses. The Critical Vendors, including, without limitation, those listed on **Exhibit "A"**.

7.      The Debtors and their advisors spent significant time and effort reviewing and analyzing the Debtors' books and records, consulting operations management and purchasing personnel, reviewing contracts and supply agreements, and analyzing applicable laws, regulations, and historical practices to identify business relationships which, if lost, could materially harm the Debtors' businesses or impair their restructuring process. In this process, the Debtors, with the assistance of their professional advisors, assessed a variety of factors, including:

a.      the goods or services provided by a vendor or supplier;

b.      whether goods or services are provided pursuant to an executory contract or on a purchase-order basis;

c.      whether failure to pay all or part of a particular vendor's claim could cause the vendor to refuse to ship inventory or provide critical services on a postpetition basis;

d.      whether the Debtors could maintain postpetition relationships with a vendor through non-bankruptcy alternatives, including prepayment or cash-on-delivery terms;

e.      whether failure to pay a particular vendor would be likely to result in contraction of trade terms as a matter of applicable bankruptcy or non-bankruptcy law;

f.      whether the vendor is a sole- or limited-source or high-volume supplier for branded and "in-demand" inventory due to particular local, regional, or national customer preferences;

12645890-5

g.      whether alternative vendors are available that could provide requisite volumes of similar goods or services on equal or better terms and, if so, whether the Debtors would be able to continue operating while transitioning business thereto;

h.      whether the Debtors' inability to pay all or part of the vendor's prepetition claim would be likely to trigger financial distress for such vendor; and

i.      whether failure to pay the particular vendor would be likely to jeopardize the Debtors' valuable proprietary interest in goods.

8.      Applying the above factors, the Debtors identified the type of vendors that are essential to the Debtors' ability to preserve and enhance value in chapter 11. With respect to the Critical Vendors, the Debtors have determined that, in many cases, the disruption attendant to resolving a dispute with such repudiating Critical Vendor would likely exceed the payment to such Critical Vendor on account of its prepetition claim. Further, the Debtors believe that any such disruption in a relationship with such a Critical Vendor could be significantly detrimental to the Debtors' operations. Ultimately, the Debtors believe that the relief sought herein is narrowly tailored and reasonable, as the amount of claims of Critical Vendors (the "Critical Vendor Claims") the Debtors are seeking authority to pay pursuant to this Motion comprises only approximately 7% of the Debtors' total outstanding prepetition trade debt as of the Petition Date.

9.      A general description of the categories of Critical Vendors is as follows:

a.      **Fleet Managers**.  The Debtors' local in-market operations are either managed with the support of a network of local third-party logistics providers (the "Fleet Managers") or through the Company's in-house teams ("In-House").  Prior to the second quarter of 2020, substantially all of the Debtors' in-market operations were conducted In-House. After temporarily pausing operations at the onset of COVID-19 in March 2020, the Company rapidly shifted to the Fleet Manager operating model as a way to quickly relaunch and provide safe and socially distanced transportation options for its global city partners.

4

Today, the Fleet Managers are responsible for approximately 50% of the Debtors' in-market operations, including deploying, repairing, relocating, sanitizing, and charging vehicles. There are approximately 220 Fleet Managers operating for the Debtors in the United States.

The Debtors recruit and contract with Fleet Managers to manage fleets of 100 or more vehicles in their local markets, and pay Fleet Managers based on revenues generated by vehicles under their management. With the support of the Debtors' central operations team and advanced technology platform, Fleet Managers manage the day-to-day logistics responsibilities required for proper fleet management, including deploying, repairing, relocating, and charging Bird vehicles. Through a revenue share model, Fleet Managers make money on rides taken on the vehicles in their care, creating built-in economic incentives to ensure these vehicles are properly maintained, and strategically placed to align with local demand. As such, the Fleet Manager program provides economic advancement opportunities to local businesses.

Prior to the Petition Date, in an effort to ensure the Fleet Managers were not owed any prepetition amounts, the Debtors paid the Fleet Managers prior to their normal pay period (every Wednesday). In addition to paying the Fleet Managers for services rendered through December 17, 2023, the Debtors estimated and paid the amount the Fleet Managers would normally earn for the next three days, through December 20, 2023. As such, the Debtors do not believe the Fleet Managers are owed any prepetition amounts. However, in abundance of caution, the Debtors are listing the Fleet Managers as Critical Vendors in an "unliquidated" amount. It is possible that the Fleet Managers are owed payment for services rendered as of the Petition Date in amounts for which the Debtors cannot yet be aware under their revenue sharing platform. As such, the Debtors seek authority to pay the Fleet Managers using the Critical Vendor Reserve (as defined below) to the extent the Fleet Managers are determined to be owed prepetition amounts.

b.  **Technology and Software Services**.  The Debtors' business requires a vast amount of data and information in order to properly operate the on-demand service its customers expect.  The technology and software services of these suppliers is critical to the Debtors' ongoing operations.  The Critical Vendors in this category include software to operate the Debtors' electronic vehicle sharing and security systems, data infrastructure for monitoring and logging rides, freight tracking of spare parts for vehicles, and mapping data for use to track the Debtors' vehicles.  Replacing these technology and software systems would take substantial time and require lengthy and careful vetting to ensure a seamless transition.  Without reliable access to these technology and software systems, the Debtors' vehicles may be subject to malfunction, could be lost, and may otherwise not be available to the Debtors' customers.

c.  **Parts Suppliers**.  In the ordinary course, the Debtors' various types of electric vehicles require replacement parts and services to ensure the Debtors' fleet continues to function appropriately for its customers.  The Debtors' part supplier vendors play a key role in keeping the Debtors' vehicles up and running.  Any disruption in the flow of parts or services immediately affects the Debtors' ability to deploy vehicles for its customers to use.  To ensure that the Debtors are able to receive the necessary repair parts and make the necessary repairs to their vehicles quickly and efficiently, the Debtors engage a number of parts suppliers, which specialize in, and are experienced with, the logistics and supply chain solutions unique to the Debtors' business.

d.  **Staffing Agencies**.  The Debtors utilize several staffing agencies which provide a source of critical labor used in the Debtors' day-to-day business operations.  In exchange for such labor, the Debtors pay the staffing agencies on a regular basis.  Generally, the staffing agencies provide labor to the Debtors in three categories.  The **first** category of staffing agencies act as a source of front-of house labor for hard to find and/or short-term labor in

6

markets where it is not practical or feasible to hire staff full time or where seasonality does not allow the Debtors to have employees year-round. The **second** category are drivers which are responsible for the deployment, rebalancing, and vehicle collection of the Debtors' fleet of electronic vehicles. The drivers also move the vehicles to areas where demand is present. Further, the drivers transport the vehicles between deployed locations and the local warehouse or service center for charging. The **third** category are technicians responsible for vehicle maintenance and quality control. These technicians perform daily preventative maintenance on vehicles, battery charging, inspection and quality control for deployed vehicles, as well as vehicle sanitization where required. The technicians also perform both routine fixes and more robust end of season retrofits and overhauls.

e.     **Arbitration and Mediation Services**. The Debtors utilize two arbitration and mediation service providers in connection with litigation brought against the cities in which the Debtors have permits to operate, and whom the Debtors must indemnify as required by the permits. Pursuant to certain city permits, the Debtors are required to indemnify the cities for litigation brought against the cities for injuries, property damage, and other damages arising out of the use of the Debtors' vehicles on public roadways and sidewalks. The arbitration and mediation service providers are critical to the Debtors to assist in achieving resolution to the various city disputes for which the Debtors must indemnify.

10.     Notwithstanding the efforts of the Debtors and their advisors to identify all Critical Vendors and vendors with executory contracts, they may not have identified the full scope of vendors deemed critical. For example, the Debtors believe they have executory contracts with several Critical Vendors that would otherwise be included in this Motion but from whom the Debtors believe they can continue to compel performance under the executory contract. However, it is possible that the Debtors do not have executory contracts with some of

these Critical Vendors who will not provide post-petition goods or services to the Debtors absent payment of the prepetition amounts owed to them. Moreover, as described above, the Debtors have attempted to estimate the amounts the Fleet Managers will earn through the Petition Date but under the Debtors' revenue sharing platform, the Debtors cannot be sure the Fleet Managers have been paid in full. As such, the Debtors seek the authority to create a reserve of $750,000 (the "Critical Vendor Reserve") to pay prepetition claims of Critical Vendors that are not identified in this Motion or Fleet Managers, both of whose performance is essential to the Debtors' operations. The DIP Lenders have approved the establishment of the Critical Vendor Reserve and consent to the Debtors' use of proceeds of the DIP Loans for this purpose.

11.    In the ordinary course, the Debtors use one credit card (the "Critical Vendor Credit Card") to pay certain Critical Vendors because such vendors do not accept cash payments (the "Credit Card Vendors"). The Debtors estimate that there are between 75-100 transactions per month on the Critical Vendor Credit Card. If the Debtors fail to pay the prepetition amounts owed on the Critical Vendor Credit Card, they will not be able to pay the Credit Card Vendors which would cause irreparable harm to the business. As of the Petition Date, $285,000 is owed prepetition on the Critical Vendor Credit Card. The Debtors seek the authority, but not the direction, to pay the prepetition amounts owed on the Critical Vendor Credit Card. This amount has been approved by the DIP Lenders in the DIP Budget.

12.    If payment of the Critical Vendor Claims, the amounts of which are set forth on **Exhibit "A"**, are not paid, the Critical Vendors will very likely terminate the services they provide to the Debtors and operations of the Debtors' business will be jeopardized to the detriment of all creditors. Most if not all of the Debtors' business operations are dependent upon the Critical Vendors. Accordingly interrupting the business relationship between the Debtors, on the one hand, and the Critical Vendors, on the other hand, if not fatal to the Debtors' efforts to

reorganization, will severely impair that effort to the detriment of the Debtors' estates and the creditors thereof. The Debtors believe that payment of the Critical Vendor Claims is fair and reasonable for the services provided, and essential to a successful reorganization.

**B.     POSTPETITION CONTINUATION OF CUSTOMARY TRADE TERMS**

13.     The Debtors propose conditioning, where possible, the payment of Critical Vendor Claims on obtaining from each Critical Vendor their agreement to continue supplying goods and services to the Debtors on as favorable trade terms, practices, and programs as those trade terms, practices, and programs in place in the 24-months before the Petition Date (the "Customary Trade Terms") or pursuant to such other trade practices and programs that are favorable to the Debtors.

14.     The Debtors also seek limited authority, but not direction, to pay Critical Vendor Claims; *provided that*, unless otherwise agreed by the Debtors, if any Critical Vendor accepts payment pursuant to the relief requested by this Motion and thereafter does not continue to provide goods or services on Customary Trade Terms: (a) such payment may be deemed to be an improper postpetition transfer on account of a prepetition claim, and therefore such payment will be immediately recoverable by the Debtors in cash upon written request; (b) upon recovery by the Debtors, any prepetition claim of such Critical Vendor will be reinstated as if the payment had not been made and the deadline for a Critical Vendor to file a reinstated claim will be the later of (i) the general bar date established by order of the Court or (ii) 30 days after the Debtors provide written notice to the Critical Vendor of the reinstatement of its claim; and (c) if the Debtors owe the Critical Vendor any postpetition amounts, the Debtors may recharacterize and apply any payment made pursuant to an order entered in connection with this Motion to reduce such outstanding postpetition amounts, and such Critical Vendor must return any amounts

overpaid by the Debtors, without the right of any setoffs, recoupments, claims, provisions for payment of any claims, or otherwise.

## C. **OUTSTANDING ORDERS**

15.    As of the Petition Date, the Debtors have certain prepetition purchase orders outstanding with various third-party vendors and suppliers for goods or services requested by the Debtors that have not yet been delivered or provided to the Debtors.  These third-party vendors and suppliers may be concerned that because the Debtors' obligations under the Outstanding Orders arose before the Petition Date, such obligations will be treated as general unsecured claims in the Chapter 11 Cases.  Accordingly, certain vendors and suppliers may refuse to provide goods or services purchased by the Debtors pursuant to the Outstanding Orders unless the Debtors issue substitute purchase orders postpetition or obtain an order of the Court (a) confirming that all undisputed obligations of the Debtors arising from the postpetition delivery of goods or services subject to Outstanding Orders are afforded administrative expense priority status under section 503(b) of the Bankruptcy Code and (b) authorizing the Debtors to satisfy such obligations in the ordinary course of business.

16.    As discussed above and in the First Day Declaration, any delay in the shipment or delivery of goods or services could bring the Debtors' operations to a halt, harming the Debtors' businesses.  Although it is difficult to estimate the total amount due and owing under the Outstanding Orders for goods or services that are not scheduled to be delivered or provided until after the Petition Date, the Debtors submit that the total amount to be paid in connection therewith, if the relief requested herein is granted, is *de minimis* compared to the importance and necessity of the goods or services provided.

12645890-5

D.      **BASIS FOR RELIEF REQUESTED**

      a.  **PAYMENT OF VENDOR CLAIMS IS WARRANTED UNDER SECTION 363(b) OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY**

    17.    A bankruptcy court may authorize a debtor to pay certain prepetition obligations pursuant to section 363(b) of the Bankruptcy Code.  Section 363(b) provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  To approve the use of assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, courts require only that the debtor "show that a sound business purpose justifies such actions."  *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (D. Del. 1999) (internal citations omitted); *accord In re Phoenix Steel Corp.*, 82 B.R. 334, 335–36 (Bankr. D. Del. 1987).  Moreover, if "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) (citation omitted); *see also Stanziale v. Nachtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005) (stating that "[o]vercoming the presumptions of the business judgment rule on the merits is a near-Herculean task").

    18.    In addition, the Court has the authority, pursuant to its equitable powers under section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for the Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code.  11 U.S.C. § 1107(a).  Section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Section 1107(a) of the Bankruptcy Code "contains an implied duty of the debtor-in-possession" to "protect and preserve the estate,

including an operating business' going-concern value," on behalf of a debtor's creditors and other parties in interest.  *In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004) (quoting *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002)); see also *Unofficial Comm. of Equity Holders v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998) ("[U]pon filing its petition, the Debtor became debtor in possession and, through its management . . . was burdened with the duties and responsibilities of a bankruptcy trustee.").

19.    The Court may also rely on the doctrine of necessity and its equitable powers under section 105(a) of the Bankruptcy Code to authorize the payment of prepetition claims when such payment is essential to the continued operation of a debtor's business.  *See, e.g., In re Just for Feet, Inc.*, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code provides a statutory basis for payment of prepetition claims under the doctrine of necessity, particularly when such payment is necessary for the debtor's survival during chapter 11); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994) (confirming that the doctrine of necessity is the standard for enabling a court to authorize payment of prepetition claims before confirmation of a reorganization plan).

20.    The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 363(b) and 105(a) of the Bankruptcy Code.  Authorizing the Debtors to pay the Critical Vendor Claims in the amounts set forth herein is in the best interests of the Debtors, their estates, and their economic stakeholders.  As set forth above and in the First Day Declaration, if the Critical Vendors are unwilling to provide essential goods and services to the Debtors postpetition because of their outstanding prepetition claims, the Debtors' operations would suffer dramatically.  Any attempt by the Debtors to address the resulting impact on

12

operations by either re-sourcing or shifting business to alternative vendors would, even if possible, result in significant expense to the Debtors' estates and delay, resulting in disruptions to the services the Debtors provide to their customers and significant damages and losses to the Debtors' estates.

21.     There is ample precedent for the post-petition satisfaction of the specific types of prepetition claims described in the Motion. For example, bankruptcy courts have granted debtors relief substantially similar to that sought by the instant Motion. *See, e.g., In re Eagle -Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payments of prepetition claims where "the payment is necessary to avert a serious threat to the Chapter 11 process"). In addition, several courts in this district have granted relief similar to that sought herein. *See, e.g., In re Vital Pharmaceuticals, Inc., et al.,* Case No. 22-17842-PDR (Bankr. S.D. Fla. Oct. 14, 2022); *In re Liberty Power Holdings, LLC,* Case No. 21-13797-SMG (Bankr. S.D. Fla. April 30, 2021); *In re It's Sugar FL I LLC, et al.,* Case No. 20-20259-RAM (Bankr. S.D. Fla. Mar. 16, 2021); *In re TM Healthcare Holdings, LLC, et al.,* Case No. 20-20024-EPK (Bankr. S.D. Fla. Jan. 6, 2021); *In re Toojay's Management LLC, et al.,* Case No. 20-14792-EPK (Bankr. S.D. Fla. June 30, 2020); *In re Miami Air International, Inc.,* Case No. 20-13924-AJC (Bankr. S.D. Fla. April 7, 2020); *In re Structured Cabling Solutions, Inc.,* Case No. 20-12551-RAM (Bankr. S.D. Fla. Mar. 13, 2020); *In re Gulfstream International Group, Inc., et al.,* Case No. 10-44131-JKO (Bankr. S.D. Fla. Dec. 3, 2010); *In re Mercedes Homes, Inc., et al.,* Case No. 09-1191-PGH (Bankr. S.D. Fla. Jan. 29, 2009).

### b. OBLIGATIONS OWED UNDER OUTSTANDING ORDERS ARE ENTITLED TO ADMINISTRATIVE EXPENSE PRIORITY STATUS UNDER SECTION 503(b) OF THE BANKRUPTCY CODE

22.     Pursuant to section 503(b) of the Bankruptcy Code, obligations that arise in connection with the postpetition delivery of necessary goods and services are afforded

13

administrative expense priority because they benefit the estate postpetition. 11 U.S.C. § 503(b)(1)(A); *see also In re Waste Systems Intern., Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002) (holding that a non-debtor party to a prepetition consulting agreement was entitled to an administrative expense claim equal to the value of any postpetition benefit conferred on the estate); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2d. Cir. 1993) (holding that an obligation arising from the postpetition performance relating to a prepetition transaction is entitled to administrative expense priority).  Accordingly, granting the relief sought herein and explicitly granting the Outstanding Orders administrative expense priority status will not provide affected claimants with any greater priority than they would otherwise be entitled to, and will not prejudice any party in interest.  Absent such relief, the Debtors may be required to expend substantial time and effort reissuing the Outstanding Orders to provide affected claimants with assurance of administrative expense priority status.  This disruption to the continuous flow of goods and services to the Debtors would seriously impact the Debtors' ability to operate their businesses for the benefit of all stakeholders.

## RESERVATION OF DEBTORS' RIGHTS

23.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## EXPEDITED CONSIDERATION AND WAIVER OF ANY APPLICABLE STAY

24.     The Debtors respectfully request expedited consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first 21 days after

14

12645890-5

the commencement of a chapter 11 case "to the extent that relief is necessary to avoid immediate and irreparable harm." Here, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations and that any delay in granting the relief requested could hinder the Debtors' operations and cause irreparable harm. Furthermore, the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture.  Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 and, therefore, respectfully request that the Court approve the relief requested in this Motion on an expedited basis.

25.      To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

26.      No prior motion for the relief requested herein has been made to this or any other court.

**CONCLUSION**

27.      To avoid significant – and perhaps irreparable – impairment of their business operations, the Debtors respectfully submit that it is appropriate for the Court to grant the relief requested.   If the Motion is denied, the Debtors' businesses will suffer immediate and substantial interruptions before the Debtors have the opportunity to attempt to reorganize.  In the very early stage of the Debtors' effort to reorganize their financial affairs, it is especially important to maintain a "business as usual" atmosphere to ensure smooth and uninterrupted business operations.   It is the Debtors' business judgment, therefore, that authority to pay immediately the Critical Vendor Claims described in the Motion is essential to the success of the

12645890-5

chapter 11 cases. Accordingly, for all of the reasons set forth herein, the relief requested in the Motion should be granted.

**WHEREFORE**, the Debtors respectfully request that the Court enter an order in the form attached hereto as **Exhibit "B"** (i) granting the relief requested in this Motion; (ii) authorizing, but not directing, the Debtors to pay the prepetition claims of the Critical Vendors and otherwise deal with those entities in the ordinary course of business and in accordance with normal prepetition procedures and agreements; (iii) confirming the administrative expense priority status of the Outstanding Orders; and (iv) granting such other relief as the Court deems just and proper.

Dated: December 20, 2023

Respectfully submitted,

BERGER SINGERMAN LLP
*Proposed Counsel for the Debtors and
Debtors-in-Possession*
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:   */s/ Paul Steven Singerman*
      Paul Steven Singerman
      Florida Bar No. 378860
      singerman@bergersingerman.com
      Jordi Guso
      Florida Bar No. 863580
      jguso@bergersingerman.com
      Robin J. Rubens
      Florida Bar No. 959413
      rrubens@bergersingerman.com
      Clay B. Roberts
      Florida Bar No. 116058
      croberts@bergersingerman.com

12645890-5

**EXHIBIT "A"**
**(List of Critical Vendor Claims)**

12645890-5

**Critical Vendor Motion**
*Exhibit A: List of Critical Vendor Claims*

| Name of Critical Vendor | Address of Critical Vendor | Description of Services Provided | Estimated Prepetition Amount Owing to Critical Vendor |
|---|---|---|---|
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |
| | | Fleet Manager | Unliquidated |

| | | |
|---|---|---|
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |
| Fleet Manager | | Unliquidated |

| | |
|---|---|
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |

| | |
|---|---|
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |

| | |
|---|---|
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Fleet Manager | Unliquidated |
| Technology and Software Services | $11,157.00 |
| Technology and Software Services | $1,596.00 |
| Technology and Software Services | $64,692.00 |
| Technology and Software Services | $43,741.00 |
| Technology and Software Services | $9,156.00 |
| Technology and Software Services | $12,500.00 |

| | |
|---|---|
| Technology and Software Services | $1,812.00 |
| Staffing Agency | $70,035.24 |
| Staffing Agency | $217,488.00 |
| Staffing Agency | $28,078.00 |
| Staffing Agency | $75,990.94 |
| Staffing Agency | $378,763.00 |
| Staffing Agency | $75,868.00 |
| Staffing Agency | $8,000.00 |
| Staffing Agency | $46,114.23 |
| Staffing Agency | $49,943.86 |
| Staffing Agency | $115,969.30 |
| Arbitration/Mediation Services | $25,250.00 |
| Arbitration/Mediation Services | $9,255.00 |
| Parts Supplier | $459,767.00 |
| | $285,000.00 |
| | $750,000.00 |
| **Total Critical Vendor Liabilities** | **$2,740,176.57** |

**EXHIBIT "B"**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BIRD GLOBAL, INC., *et al.*,[1]

     Debtors.

Chapter 11 Cases

Case No. 23-_____

(Joint Administration Pending)

**ORDER GRANTING DEBTORS' EMERGENCY MOTION FOR AN ORDER (I)
AUTHORIZING DEBTORS TO PAY PREPETITION CLAIMS OF
CRITICAL VENDORS, (II) CONFIRMING ADMINISTRATIVE EXPENSE
PRIORITY STATUS FOR OUTSTANDING PREPETITION PURCHASE
ORDERS, AND (III) GRANTING RELATED RELIEF**

     **THIS MATTER** having come before the Court for a hearing on _____, 2023, at

____ _.m. in Miami, Florida upon the *Debtors' Emergency Motion for an (I) authorizing*

*Debtors to Pay the Prepetition Claims of Vendors; (II) Confirming the Administrative Expense*

*Priority Status for Outstanding Prepetition Purchase Orders; and (III) Granting Related Relief*

(the "Motion") [ECF No. __] filed by the above-captioned debtors and debtors-in-possession

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179.  The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

12650397-3

(collectively, the "Debtors").  The Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334; (ii) the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Motion is in the best interests of the Debtors, their estates and their creditors; (v) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (vi) upon the record herein, including the exhibits submitted into evidence at the hearing, after due deliberation thereon good and sufficient cause exists for the granting of the relief as set forth herein. Accordingly, it is

ORDERED as follows:

1.      The Motion is **GRANTED**.

2.      The Debtors are authorized, but not required, to pay or honor prepetition obligations (the "Prepetition Claim Payment") to Critical Vendors.[2]  The Debtors have authority to pay a total of not more than $2,740,176.57 in the aggregate in satisfaction of Critical Vendor Claims.

3.      If any party accepts payment pursuant to the relief requested by this Order and thereafter does not continue to provide goods or services on Customary Trade Terms: (a) the Debtors may demand repayment in cash and otherwise take all action to have such payment be deemed to be an improper postpetition transfer on account of a prepetition claim, and (b) upon recovery by the Debtors, any prepetition claim of such party shall be reinstated as if the payment had not been made and the deadline for such party to file a reinstated claim will be the later of

---

[2]      All capitalized terms not defined herein shall have the meaning given to them in the Motion.

2

(i) the general bar date established by order of this Court, or (ii) 30 days after the Debtors provide written notice to the party of the reinstatement of its claim.

4.     All undisputed obligations of the Debtors arising under the Outstanding Orders are granted administrative expense priority status in accordance with section 503(b)(1)(a) of the Bankruptcy Code.

5.     The Debtors are hereby authorized to issue post-petition checks and to make post-petition fund transfer requests to replace any pre-petition checks and prepetition transfers to Critical Vendors that may be dishonored by any bank.

6.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall constitute, nor is it intended to constitute, the Debtors' assumption of any contract or agreement under 11 U.S.C. § 365.

7.     Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person or entity.

8.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  singerman@bergersingerman.com

*(Attorney Singerman is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*

3

12650397-3