UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br><br>BIRD GLOBAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11 Cases<br><br>Case No. 23-20514-LMI<br><br>(Jointly Administered) |

**DEBTORS' APPLICATION FOR THE APPROVAL OF THE
EMPLOYMENT OF TENEO CAPITAL LLC, AS FINANCIAL ADVISOR
TO THE DEBTORS, AND TENEO STRATEGY LLC, AS COMMUNICATIONS
AND CORPORATE STRATEGY ADVISOR TO THE DEBTORS,
EFFECTIVE AS OF THE PETITION DATE**

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through their proposed undersigned counsel, pursuant to §§ 105, 327(a) and 328 and Fed. R. Bankr. P. 2014(a), file this *Debtors' Application for the Approval of the Employment of Teneo Capital LLC, as Financial Advisor to the Debtors, and Teneo Strategy LLC, as Communications and Corporate Strategy Advisor to the Debtors, Effective as of the Petition Date* (the "Application"). In support of the Application, the Debtors rely on the *Declaration of James S. Feltman on Behalf of Teneo Capital LLC and Teneo Strategy LLC* (the "Feltman Declaration") attached hereto as **Exhibit A** and the *Declaration of Christopher Rankin in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration"), filed on the Petition Date. In support of the Application, the Debtors respectfully represent as follows:

---

[1] The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief sought herein are section 105(a), 327 and 328 of chapter 11 of title 11 of the United States Code (as amended, the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

5.      The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.      As of the date of this Motion, no trustee, examiner or statutory committee has been appointed in these Chapter 11 Cases.

7.      For a detailed description of the Debtors, the circumstances leading to the commencement of these Chapter 11 Cases and information regarding the Debtors' businesses and capital structure, the Debtors respectfully refer the Court and parties-in-interest to the First Day Declaration.

## RELIEF REQUESTED AND BASIS THEREFOR

8.      The Debtors seek to employ Teneo Capital, LLC ("Teneo Capital") as financial advisor pursuant to the terms of that certain engagement letter dated as of November 27, 2023 and Teneo Strategy LLC, an affiliate of Capital ("Teneo Strategy" and, collectively with Capital, "Teneo") as communications and corporate strategy advisors pursuant to the terms of that certain amendment dated December 14, 2023 (the "Amendment" and collectively, the "Engagement

Letter"). A true and correct copy of the Engagement Letter is attached hereto as **Composite Exhibit B.** Through this Application, the Debtors seek to employ Teneo Capital, as financial advisor, and Teneo Strategy, as communication and corporate strategy advisor, during the pendency of these Chapter 11 Cases. The requested retention by the Debtors is sought pursuant to Section 327(a) of the Bankruptcy Code, and Bankruptcy Rule 2014.

9.      The Bankruptcy Code allows a debtor, with the Court's approval, to employ one or more professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Except as disclosed in the Feltman Declaration, neither James S. Feltman ("Feltman") nor Teneo has any connection with the creditors or other parties in interest or their respective attorneys. As set forth in the Feltman Declaration, to the best knowledge of Feltman, neither he nor Teneo represents any interest adverse to the Debtors. Attached to this Application as **Exhibit A** is the Feltman Declaration containing a verified statement as required under Rule 2014 of the Federal Rules of Bankruptcy Procedure and demonstrating that under these circumstances Feltman and Teneo are disinterested as required by Section 327(a) of the Bankruptcy Code.

A.      **Services to be Provided**

10.      As per the terms contained in the Engagement Letter, Teneo has agreed to provide financial advisory services (the "Services") including, but not limited to:

      a.      Reviewing and analyzing the Debtors' business, operations, assets, financial condition, business plan, strategy, and operating forecasts;

      b.      Working with the Debtors' and the Debtors' senior management team ("Management") in an advisory capacity to stabilize and manage the Debtors' relationship with their senior lender to assist in providing the senior lender with financial and other requests as reasonably made upon the Debtors;

c.      Assisting the Debtors in securing a time period efficient to allow the Debtors' professionals to source and close on a replacement credit facility to replace the senior lender or otherwise determine that such an undertaking is not presently feasible;

d.      Reviewing and analyzing the Debtors' business, operations, assets, financial condition, business plan, strategy, and operating forecasts;

e.      Producing a 13-week cash budget / debtor in possession budget;

f.      Assisting the Debtors with preparing for chapter 11 filings in the United States Bankruptcy Court for the Southern District of Florida;

g.      Assisting the Debtors to oversee bankruptcy preparation and filing activities, including execution of relevant documents, reviewing the bankruptcy petitions and first day affidavits, executing first day affidavits as appropriate, attending and appearing on behalf of the Debtors at bankruptcy hearings and the Debtors' 341 meetings of creditors and related ancillary bankruptcy matters;

h.      Reviewing and analyzing any proposed capital structure for the Debtors;

i.      Attending meetings with the Debtors, counsel, and other stakeholders as required and participating in court hearings;

j.      Assisting in negotiations with, and responding to inquiries from, various stakeholders, including creditors and other parties, at the Debtors' request and with counsel's guidance;

k.      Assisting the Debtors' management in developing, evaluating, structuring, and negotiating the terms and conditions of a potential restructuring, plan of reorganization, or sale transaction, including a liquidation valuation and estimation of creditor recoveries for a plan of reorganization and/or negotiation purposes; and

l.      Providing the Debtors with certain communication and corporate advisory services.

11.    In addition, to the extent that the Debtors request additional advisory services, Teneo will amend the Engagement Letter accordingly and seek approval of the Court.  Teneo may provide additional personnel as the Debtors may request to assist in performing the Services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Debtors and Teneo shall agree.

B.    **Terms of Retention**

12.    The terms of Teneo Capital's proposed compensation are set forth in the Engagement Letter. Specifically, Teneo Capital's fees will be based on the time spent by members of Teneo Capital at regular professional hourly rates in effect at the time the Services are rendered. Currently, Teneo Capital's hourly rates are:

| Professional | Currently Hourly Rates |
|---|---|
| Managing Directors and Senior Advisors | $800 - $1,300 |
| Directors, Vice Presidents, and Consultants | $500 - $800 |
| Associates and Analysts | $350 - $500 |
| Administrative Staff | $200 - $300 |

13.    The terms of Teneo Strategy's proposed compensation are set forth in the Amendment. Specifically, Teneo Strategy's fees will be based on the time spent by members of Teneo Strategy at regular professional hourly rates in effect at the time the Services are rendered. Currently, Teneo Strategy's hourly rates are:

| Professional | Currently Hourly Rates |
|---|---|
| Senior Leadership (Chairman, Vice Chairman) | $1.500 - $2,000 |
| Senior Managing Director | $950 - $1,500 |
| Managing Director | $800 - $950 |
| Senior Assoc, VP, SVP | $500 - $800 |
| Analyst, Consultant, Associate | $300 - $500 |

14.     Teneo typically adjusts its hourly rates on January 1st of each year. Services rendered after the date of any rate change will be billed at the new hourly rates in effect at the time the services are rendered.   Prior to applying any increases in its hourly rates, Teneo has agreed to provide ten days' notice of any such increase to the Debtors, to the Office of the United States Trustee and to any official committee of unsecured creditors, if one is appointed.

15.     Teneo Capital has agreed to discount the hourly rates of James S. Feltman to $895.00 per hour, and Scott Lyman to $875.00 per hour for this engagement.   In addition, for this engagement, Teneo has agreed to apply a 10% discount to the hourly fees listed in paragraphs 12 and 13 above for all other Teneo professionals.   Teneo has also agreed to provide the Services at the estimated cost listed in Appendix A to the Engagement Letter.

16.     Any additional services beyond the scope of the Services set forth above and in the Engagement Letter will be subject to the approval of the Court after notice and hearing.

17.     In addition to compensation for services rendered by Teneo, Teneo will seek reimbursement for reasonable and customary out-of-pocket expenses in connection with this engagement, which shall include all documented travel expenses, meals, computer and database research charges, messenger services, and reasonable fees and expenses of its legal counsel, if any, and other advisors retained by Teneo, with the understanding that the retention of such advisor, other than legal counsel, will be made only with the Debtors' prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed. Feltman has agreed not to charge the Debtors for any travel time or associated costs for meetings or court hearings in Miami, Florida.

18.     Pursuant to the Engagement Letter, the Debtors paid Teneo Capital in aggregate a $500,000 retainer and Teneo Strategy a $25,000 retainer for both pre-petition and post-petition services.

19.     Teneo will apply for compensation and reimbursement of costs, pursuant to Sections 330 and 331 of the Bankruptcy Code for services rendered and costs incurred on behalf of the Debtors.

**C.      Limitations on Liability and Indemnification Matters**

20.     As set forth in the Engagement Letter, Teneo warrants that it will perform the Services with reasonable skill and care. Except as specifically provided in the Engagement Letter, no Teneo Party[2] shall have any liability, regardless of the form of action, whether in contract or tort, or whether direct or indirect, except to the extent that any such liability for Claims (as defined in the Engagement Letter) is found in a non-appealable final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Teneo Party's gross negligence or willful misconduct. In no event will any Teneo Party have any liability to the Debtors for special, consequential, incidental, or exemplary damages or loss (nor any lost profits, savings, or business opportunity).

21.     Nothing in the Engagement Letter shall exclude or limit Teneo's liability for (i) fraud or fraudulent misrepresentation; (ii) gross negligence or willful misconduct; or (iii) any other liability that may not be excluded or limited by law.

22.     Where Teneo has agreed in the Engagement Letter that there is more than one beneficiary of the Services, the limitation on its total liability in the Engagement Letter will apply to all such beneficiaries in the aggregate and shall be apportioned amongst them.   The Debtors will procure that no such beneficiary will dispute or challenge the validity, operation, or enforceability of section 4.3 of the Engagement Letter on the grounds that no such apportionment

---

[2] Teneo Party is defined in the Engagement Letter as any member of the Teneo Holdings LLC network of firms and their holding companies, subsidiaries, Affiliates (any entity controlled by, controlling, or under common control with, the relevant party), and Subcontractors (third parties appointed by Teneo to support the provision of the Services), and, in each case, their respective partners, principals, officers, directors, and personnel.

has been so agreed or on the grounds that the agreed share of the limitation amount so apportioned to any beneficiary is unreasonably low.

23.      Any liability which Teneo may have to the Debtors for Damages (as defined in the Engagement Letter) shall (so far as is permitted by law) be limited to such an amount as is determined to be just and equitable, taking into account the extent of responsibility for such Damages of Teneo, the Debtors, and any person other than Teneo who is jointly or severally liable to the Debtors for all or part of the same Damages, provided always that Teneo's liability to the Debtors shall not exceed in aggregate the amount set out in the Engagement Letter. Any limitation, exclusion, or restriction on the liability of any such other person, whether arising under statute or contract or resulting from death, bankruptcy or insolvency, or any settlement of such liability agreed with the Debtors, shall not be taken account of for the purposes of determining the extent of Teneo's liability to the Debtors.

24.      Except for the warranties, representations, conditions, and obligations expressly set out in the Engagement Letter, Teneo disclaims all warranties, representations, conditions, and obligations, either express or implied, including warranties of satisfactory quality and fitness for a particular purpose. In entering into the Engagement Letter with Teneo, the Debtors have agreed that they did not rely on any representations (whether written or oral) of any kind or of any person other than those expressly set out in the Engagement Letter and Teneo shall have no liability otherwise than pursuant to the express terms of the Engagement Letter.

25.      As set forth in the Engagement Letter, any ancillary comments from Teneo which arise during delivery of the Services are provided solely for the purpose of the Services to the Debtors and, without Teneo's prior written consent, may not be used for any other purpose, or disclosed to any person other than the Debtors' other advisors (who may not rely on such advice).

The Debtors will not refer to Teneo, or any comments which Teneo provides during the delivery of the Services, in any public document or communication without Teneo's prior written consent, which will only be given on the basis that Teneo will not be responsible for any such public document or communication.

26.     As set forth in the Engagement Letter, the Debtors and Teneo have agreed that the Debtors shall indemnify and hold harmless the Teneo Parties from any against all Claims to which any of the Teneo Parties may become subject related to or arising in any manner out of any activities performed or services furnished pursuant to the Engagement Letter, any matter contemplated thereby, or a Teneo Party's role in connection therewith, including prior to the date of the Engagement Letter (the "Indemnified Activities"), except to the extent a court of competent jurisdiction shall have determined by a final non-appealable judgment that such liabilities resulted directly from the gross negligence or willful misconduct of Teneo in performing the services that are the subject of the Engagement Letter.

27.     The Debtors have agreed to promptly reimburse the Teneo Parties for all costs and expenses (including fees, costs, and expenses of legal counsel), as incurred, in connection with (i) the investigation of; preparation for; response to; serving as a witness in respect of; or defending, pursuing, settling, or otherwise becoming involved in any pending or threatened investigative, administrative, judicial, regulatory, or other claim, action, or proceeding or any arbitration or investigation in any jurisdiction related to or arising in any manner out of any Indemnified Activities, whether in connection with pending or threatened litigation to which any Teneo Party is, or is threatened to be, a party (collectively, "Proceedings"); and (ii) enforcing a Teneo Party's rights under the Engagement Letter.

28.     Teneo has agreed to notify the Debtors after Teneo becomes aware that a Proceeding has been commenced by way of service with a summons or other legal process giving information as to the nature and basis of the claim against a Teneo Party in respect of which indemnity may be sought under the Engagement Letter. In any event, Teneo's failure to notify the Debtors shall not relieve the Debtors from any liability that the Debtors may have on account of this indemnity or otherwise except to the extent the Debtors could not otherwise have been aware of such Proceeding and the Debtors have been materially prejudiced with respect to the Proceeding by such failure.

29.     Neither the Debtors nor any member of the Debtors' board of directors shall (a) settle, compromise, consent to the entry of a judgment in, or otherwise seek to terminate any pending or threatened Proceeding in respect of which indemnity may be sought pursuant to the Engagement Letter, whether any Teneo Party is an actual or potential party to such Proceeding; or (b) participate in, or facilitate, any such settlement, compromise, consent, or termination, including on behalf of the Debtors' board of directors (or a committee thereof), in each case without Teneo's prior written consent unless such settlement, compromise, consent, or termination includes an unconditional release of each Teneo Party from all actual or potential Claims relating to the Indemnified Activities (such release to be set forth in an instrument signed by all parties to such settlement, compromise, consent, or termination) and does not include a statement as to or an admission of fault, culpability, or a failure to act, by or on behalf of any Teneo Party.

30.     The indemnification provisions contained in the Engagement Letter shall survive completion of the engagement.

D.     **Teneo's Qualifications**

31.     Teneo and its professionals and employees have a wealth of experience in providing financial advisory services to distressed organizations, including those operating as chapter 11 debtors-in-possession. Specifically, Feltman is a Senior Managing Director of Teneo, with more than three decades of experience leading fiduciary and restructuring matters, as well as providing clients with key litigation support and expert witness testimony.  As one of the nation's leading multi-jurisdictional bankruptcy fiduciaries, Feltman has considerable experience acting as a chapter 11 trustee, examiner, chapter 7 trustee, mediator, arbitrator, and monitor.  His industry specialization includes agriculture, retail, manufacturing and distribution, real estate/construction, aviation, healthcare, financial services, and other industries.  Feltman has also served on the boards of numerous privately held businesses.  Feltman is accomplished in financial restructurings, operational improvement plans, and cash management. Attached hereto as **Exhibit C** is the Curriculum Vitae of James S. Feltman.

32.     The Debtors submit that the employment of Teneo under the terms and conditions contained in the Engagement Letter will benefit the Debtors' estates and their creditors.

33.     The Debtors seek entry of an order approving the employment of Teneo, effective as of the Petition Date.

**WHEREFORE**, the Debtors respectfully request the entry of an order in the form annexed hereto as **Exhibit D** (i) approving this Application, (ii) authorizing the Debtors to engage Teneo to provide financial advisory services during the pendency of the Chapter 11 Cases upon the terms

and conditions contained in the Engagement Letter, effective as of the Petition Date; and (iii)

granting such other and further relief as may be just and proper.

Dated:  December 21, 2023                   Respectfully submitted,

                                            BIRD GLOBAL, INC., *et al.*, Debtors
                                            392 N.E. 191st Street, #20388
                                            Miami, FL  33179

                                            By: /s/  *Christopher Rankin*
                                            _____
                                                    Christopher Rankin
                                                    Chief Restructuring Officer

**<u>EXHIBIT "A"</u>**

**(Declaration of James S. Feltman)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

BIRD GLOBAL, INC., *et al.*,[1]

    Debtors.

Chapter 11 Cases

Case No. 23-20514-LMI

(Jointly Administered)

## DECLARATION OF JAMES S. FELTMAN ON BEHALF OF
## TENEO CAPITAL LLC AND TENEO STRATEGY LLC

    1.    My name is James S. Feltman. I am over 18 years of age and competent to make this Declaration.

    2.    I am a certified public accountant in the State of Florida, am a member of the American Institute of Certified Public Accountants and the Florida Institute of Certified Public Accountants.   I am a Senior Managing Director at Teneo Capital LLC ("Teneo Capital"), a financial advisory firm headquartered at 280 Park Ave., 4th Floor, New York, NY 10017, with additional offices across the United States, Canada, Europe, Asia, the Middle East and Africa, as well the Caribbean and Bermuda.

    3.    I am familiar with the matters set forth herein and make this declaration in support of the *Debtors' Application for the Approval of the Employment of Teneo Capital LLC, as Financial Advisor to the Debtors, and Teneo Strategy LLC, as Communications and Corporate Strategy Advisor to the Debtors, Effective as of the Petition Date* (the "Application") filed by Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC and Skinny Labs, Inc.

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179.  The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

(collectively, the "Debtors"). Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, I would testify competently thereto.

4.     To the best of my knowledge, information and belief, insofar as I have been able to ascertain after reasonable inquiry, other than in connection with the Chapter 11 Cases,[2] neither I, nor Teneo Capital, nor Teneo Strategy LLC ("Teneo Strategy" and together with Teneo Capital, "Teneo"), nor any of its partners, principals, members, employees, agents or affiliates, have any connection with the Debtors, their creditors, the United States Trustee, or any other party with an actual or potential interest in these Chapter 11 Cases, or their respective attorneys or accountants, except as set forth below:

(a)     Teneo is not employed by, and has not been employed by, any entity other than the Debtors in matters related to the Chapter 11 Cases.

(b)     From time to time, Teneo has provided services, and likely will continue to provide services, to certain creditors of the Debtors and various other parties adverse to the Debtors in matters wholly unrelated to the Chapter 11 Cases. As described below, Teneo has undertaken a detailed search to determine, and to disclose, whether it is providing or has provided, services to any significant creditor, equity security holder, insider or other party-in-interest in such unrelated matters

(c)     Teneo provides services in connection with numerous cases, proceedings and transactions unrelated to the Chapter 11 Cases. Those unrelated matters involve numerous attorneys, financial advisors and creditors, some of which may be claimants or parties with actual or potential interests in the Chapter 11 Cases, or may represent such parties.

(d)     Teneo's personnel may have business associations with certain creditors of the Debtors unrelated to the Chapter 11 Cases. In addition, in the ordinary course of its business, Teneo may engage counsel or other professionals in unrelated matters who now represent, or who may in the future represent, creditors or other interested parties in the Chapter 11 Cases.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

5.    Teneo searched its client database to determine whether Teneo had any relationships with the following (collectively, the "Interested Parties"):

   (a)    the Debtors;

   (b)    the Debtors' current members, officers and directors and certain of their most significant business affiliations, as provided to Teneo by the Debtors;

   (c)    the Debtors' secured creditors, as provided to Teneo by the Debtors;

   (d)    the Debtors' 30 largest unsecured creditors, as provided to Teneo by the Debtors;

   (e)    the Debtors' creditors and interested parties, as provided to Teneo by the Debtors; and

   (f)    various other potential parties-in-interest, as identified by the Debtors.

6.    Based on that search, Teneo represents that, to the best of its knowledge, Teneo knows of no fact or situation that would represent a conflict of interest for Teneo with regard to the Debtors.

7.    Teneo submits that there are no simultaneous or prospective engagements existing, including that on behalf of the Debtors, which - if the Application is granted - would constitute a conflict or adverse interest as to the matters for which it will be employed by the Debtors, nor would Teneo staff any post-petition matter with personnel that would create a conflict or adverse interest to these matters.

8.    Teneo consists of financial advisors and crisis managers providing services and advice specifically in the areas of restructuring and distressed debt. As a result, Teneo has represented, and may in the future represent, certain Interested Parties in matters wholly unrelated to the Chapter 11 Cases, either individually or as part of representation of a committee of creditors or interest holders.

9.     Teneo is a "disinterested person" as that term is defined in section 101(14), as modified by section 1107(b) of the Bankruptcy Code, given that, to the best of my information and belief, Teneo:

      a.     is not a creditor, an equity security holder, or an insider of the Debtors;

      b.     is not and was not, within two years before the commencement of the Chapter 11 Cases, a director, officer or employee of the Debtors; and

      c.     does not have an interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors or for any other reason.

10.     Despite the efforts described above to identify and disclose Teneo's connections with parties in interest in the Chapter 11 Cases, Teneo is unable to state with certainty that every client relationship or other connection has been disclosed. In that regard, if Teneo discovers additional information that requires disclosure, Teneo will file a supplemental disclosure with the Court.

11.     James Feltman as an individual, and not as an employee of Teneo, was appointed as a Receiver in the Federal District Court in  New York.  James Feltman retained Berger Singerman LLP to represent him as Receiver among other law firms.

12.     Prior to the commencement of the Chapter 11 Cases, Teneo received on December 1, 2023, a retainer in the amount of $75,000, which was deposited into a trust account of Teneo. On December 8, 2023, Teneo received a second retainer in the amount of $75,000, which was deposited into a trust account of Teneo.  On December 19, 2023, Teneo received a third retainer in the amount of $375,000, which was deposited into a trust account of Teneo.

13.     On December 19th, 2023, Teneo applied the sum of approximately $325,000 from the $525,000 in aggregate retainers toward payment in full of all outstanding fees and expenses

owed to Teneo, leaving a balance in Teneo's trust account in the amount of approximately $200,000.

14.     The foregoing payments by the Debtors to Teneo were in connection with services rendered and costs incurred by Teneo, in contemplation of, and in connection with, prepetition restructuring activities.

15.     As disclosed in the Application, Teneo Capital's fees will be based on the time spent by members of Teneo Capital at regular professional hourly rates in effect at the time the Services are rendered.  Currently, Teneo Capital's hourly rates are:

| Professional | Currently Hourly Rates |
|---|---|
| Managing Directors and Senior Advisors | $800 - $1,300 |
| Directors, Vice Presidents, and Consultants | $500 - $800 |
| Associates and Analysts | $350 - $500 |
| Administrative Staff | $200 - $300 |

16.     Teneo Strategy's fees will also be based on the time spent by members of Teneo Strategy at regular professional hourly rates in effect at the time the Services are rendered. Currently, Teneo Strategy's hourly rates are:

| Professional | Currently Hourly Rates |
|---|---|
| Senior Leadership (Chairman, Vice Chairman) | $1.500 - $2,000 |
| Senior Managing Director | $950 - $1,500 |
| Managing Director | $800 - $950 |
| Senior Assoc, VP, SVP | $500 - $800 |
| Analyst, Consultant, Associate | $300 - $500 |

17.    Teneo typically adjusts its hourly rates on January 1st of each year. Services rendered after the date of any rate change will be billed at the new hourly rates in effect at the time the services are rendered.   Prior to applying any increases in its hourly rates, Teneo will provide ten days' notice of any such increase to the Debtors, to the Office of the United States Trustee and to any official committee of unsecured creditors, if one is appointed.

18.    Teneo has agreed to discount my hourly rate to $895.00 per hour, and the hourly rate of my colleague, Scott Lyman to $875.00 per hour for this engagement.  In addition, for this engagement, Teneo has agreed to apply a 10% discount to the hourly fees listed above for all other Teneo professionals.  Teneo has also agreed to provide the Services at the estimated cost listed in Appendix A to the Engagement Letter.  As set forth in the Engagement Letter and Application, I will not charge the Debtors for any travel time or associated costs for meetings or court hearings in Miami, Florida.

19.    In addition to compensation for services rendered by Teneo, Teneo will seek reimbursement for reasonable and customary out-of-pocket expenses in connection with this engagement, which shall include all documented travel expenses, meals, computer and database research charges, messenger services, and reasonable fees and expenses of its legal counsel, if any, and other advisors retained by Teneo, with the understanding that the retention of such advisor, other than legal counsel, will be made only with the Debtors' prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed.

20.    Teneo intends to apply for compensation for professional services rendered in connection with the Chapter 11 Cases, subject to approval of this Court as stated in the Application, and in compliance with applicable provisions of the Bankruptcy Code, on an hourly basis, plus reimbursement of actual, necessary out-of-pocket expenses and other charges incurred by Teneo.

21.     Teneo reserves the right to supplement this Declaration in the event that Teneo discovers any facts bearing on matters described in this Declaration regarding Teneo's employment by the Debtors.

22.     This concludes my Declaration.

## 28 U.S.C 1746 Declaration

I declare under penalty of perjury that the foregoing is true and correct.  Executed on December 21, 2023.

*/s/ James S. Feltman*
James S. Feltman

## EXHIBIT "B"

**(Engagement Letter)**



Michael Washinushi
Interim Chief Executive Officer
Bird Global, Inc.
392 NE 191st Street, #20388
Miami, FL 33179

VIA EMAIL

November 27, 2023

Dear Michael

**RE: FINANCIAL ADVISORY SERVICES RELATING TO BIRD GLOBAL, INC.**

Teneo Capital LLC, a Delaware limited liability company ("**Teneo**" or "**we**"), is pleased to provide financial advisory services to Bird Global, Inc. (the "**Client**," the "**Company**," or "**you**"). This letter (this "**Agreement**") sets forth the terms of our engagement (the "**Engagement**"), pursuant to which Teneo is being retained by the Company to provide financial advisory services in connection with the financial restructuring of the Company. James S. Feltman, or a suitable replacement as determined by Teneo and the Company jointly, shall be the Teneo professional in charge of the Engagement.

The engagement of Teneo shall be under the supervision of the Company's Board of Directors. If and when a bankruptcy filing occurs, Teneo shall be under supervision of the Company's Chief Restructuring Officer.

1. **Term of the Engagement**

   The Engagement shall commence as of the date of this Agreement (the "**Effective Date**") and shall continue until terminated by Teneo or the Company on ten (10) days' notice (the "**Engagement Period**").

2. **Scope of Services**

   Effective upon execution of this Agreement, Teneo will provide financial advisory services (the "**Services**") at the direction of the Company's counsel, Berger Singerman LLP ("**Counsel**"). The Services will not be provided for the benefit of any party other than the Company and Counsel and shall be rendered to assist Counsel in its representation of the Company. The Services shall include preparing and reviewing financial materials and analyses, assisting Counsel in connection with litigation matters involving the Company, and preparing for a restructuring transaction and/or the commencement of a case under title 11 of the United States Code (the "**Bankruptcy Code**") in the event the Company and Counsel decide to pursue a restructuring.

   Effective upon execution of this Agreement, Teneo will, in its capacity as the Company's financial advisor, provide the following services (the "**Services**") as directed by the Companies and/or Counsel:

(Cont.)



- Review and analyze the Company's business, operations, assets, financial condition, business plan, strategy, and operating forecasts;
- Work with the Company's Board and the Company's senior management team ("Management") in an advisory capacity to stabilize and manage the Company's relationship with its Senior Lender to assist in providing the Senior Lender with financial and other requests as reasonably made upon the Company;
- Assist the Company in securing a time period efficient to allow the Company's professionals to source and close on a replacement credit facility to replace the Senior Lender or otherwise determine that such an undertaking is not presently feasible;
- Review and analyze the Company's business, operations, assets, financial condition, business plan, strategy, and operating forecasts;
- Produce a 13-week cash budget / DIP Budget
- Assist the Company to prepare for Chapter 11 filings in a United States bankruptcy court having jurisdiction over the Company's proceedings
- Assist the Company to oversee bankruptcy preparation and filing activities; including execution of relevant documents, reviewing the bankruptcy petitions and first day affidavits, execute first day affidavits as appropriate, attend and appear on behalf of the Company at bankruptcy hearings and 341 meetings of Creditors and related ancillary bankruptcy matters
- Review and analyze any proposed capital structure for the Company;
- Attend meetings with the Company, Counsel, and other stakeholders as required and participate in court hearings;
- Assist in negotiations with, and responding to inquiries from, various stakeholders, including creditors and other parties, at your request and with your guidance; and
- Assist Management in developing, evaluating, structuring, and negotiating the terms and conditions of a potential restructuring, plan of reorganization, or sale transaction, including a liquidation valuation and estimation of creditor recoveries for a plan of reorganization and / or negotiation purposes.

The Services do not encompass any investment banking, financial advisory, or other services not explicitly set forth in this Section 2. Notwithstanding anything contained in this Agreement to the contrary, Teneo shall have no responsibility for designating or implementing any initiatives to improve the Company's operations, profitability, cash management, or liquidity. Teneo makes no representations or warranties about the Company's ability to (i) successfully improve its operations; (ii) maintain or secure sufficient liquidity to operate its business; or (iii) successfully complete a restructuring, plan of reorganization, or sale transaction.

3. **Retainer**

Prior to Teneo providing the Services hereunder, the Company shall provide Teneo a retainer of $75,000 (the "**Retainer**"). Teneo shall hold the Retainer to secure payments hereunder until the end of the Engagement Period. At the end of the Engagement Period, Teneo shall return the unused portion, if any, of the Retainer to the Company.

4. **Compensation**

4.1. **Hourly Fees**

In connection with providing the Services hereunder, Teneo shall be entitled to hourly fees at its usual and customary services (the "**Hourly Fees**"). The Hourly Fees will be based principally on

(Cont.)



the experience of the people providing services to you, and the actual hours worked, unless otherwise agreed. The current customary hourly rates, subject to period adjustment, charged by Teneo professionals anticipated to be assigned to this case are as follows:

| | |
|---|---|
| Managing Directors and Senior Advisors | $800–$1,300 |
| Directors, Vice Presidents, and Consultants | $500–$800 |
| Associates and Analysts | $350–$500 |
| Administrative Staff | $200–$300 |

Services rendered after the date of any rate change will be billed at the new rates. Prior to applying any increases in its hourly rates, Teneo must provide ten days' notice of any such increase to the Company and, in the event the Company has filed for bankruptcy protection, to the Office of the United States Trustee and any other official committee.

Teneo has agreed to discount James S. Feltman Hourly Fee to $895 per hour and Scott Lyman Hourly Fee to $875 per hour for this engagement.  Teneo has also agreed to apply a 10% discount to its Hourly Fees listed above for this engagement for all other Teneo professionals.

Teneo has also agreed to provide the services at the estimated cost listed in Appendix A.

### 4.2. Expenses

At all times during the Engagement Period, Teneo shall be entitled to full reimbursement for its reasonable out-of-pocket expenses. Out-of-pocket expenses shall include all documented travel expenses, meals, computer and database research charges, messenger services, and reasonable fees and expenses of its legal counsel, if any, and other advisor retained by Teneo (it being understood that the retention of such advisor, other than legal counsel, will be made only with the Company's prior written consent, which consent shall not be unreasonably withheld, conditioned, or delayed).  James S. Feltman will not charge for any travel time or associted costs for meetings or court hearings in Miami, Florida.

### 4.3. Right to Payment

It is understood that, as of the date of this Agreement, Teneo has not arrived at any conclusions respecting any matters relating to the Engagement. Teneo shall be entitled to receive payment in full of all fees and reimbursements of expenses incurred in connection with the Services (collectively, "**Compensation**") regardless of the conclusions at which it may arrive, or the outcomes of any motion or request to disqualify any witness or exclude testimony. Teneo will not provide requested testimony—oral or written testimony or a report for submission, filing, or disclosure—until arrangements have been made, satisfactory to Teneo in its discretion, for payment of all due and owing Compensation.

### 4.4. Submission of Invoices

Teneo shall submit invoices for Compensation on a weekly basis. Except as otherwise set forth herein, payment shall be due within ten (10) business days of invoicing for fees and expenses incurred.

(Cont.)



If Teneo does not timely receive any payment due under this Agreement, it may, at its election, immediately suspend services or terminate this Agreement and have no further obligations hereunder except those that survive termination. Teneo's failure to exercise such remedy (or any other remedy) at any time does not constitute a waiver of its right to do so at any future time. In the event of termination based upon failure to pay or other breach of contract by the Company, Teneo shall remain entitled to receive any unpaid earned compensation and reimbursement for incurred fees.

**5. Standard Terms of Business**

Subject to any order of the Bankruptcy Court or any contrary terms of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, the standard terms of business (the "**Terms of Business**") attached to this Agreement are incorporated herein. Capitalized terms used in this Agreement but not otherwise defined shall have the meanings assigned to them by the Terms of Business. Where the terms and conditions of this Agreement and the Terms of Business differ, this Agreement shall control.

**6. Bankruptcy Filing**

In the event that the Company is or becomes a debtor under the Bankruptcy Code, the Company shall use its reasonable best efforts to promptly apply to the bankruptcy court having jurisdiction over the relevant case(s) (the "**Bankruptcy Court**") for the approval, pursuant to sections 327 and 328 of the Bankruptcy Code, of (i) this Agreement; and (ii) Teneo's retention by the Company under the terms of this Agreement, subject to the standard of review provided in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review under section 330 of the Bankruptcy Code, retroactive to the date of the commencement of the bankruptcy case (the "**Chapter 11 Case**"). The Company shall supply Teneo with a draft of such application and any proposed order authorizing Teneo's retention sufficiently in advance of the filing of such application and proposed order to enable Teneo to review and comment, and the application and proposed order shall be in a form acceptable to Teneo. Teneo shall have no obligation to provide any services under this Agreement in the event that the Company becomes a debtor under the Bankruptcy Code unless Teneo's retention under the terms of this Agreement is approved by a final order of the Bankruptcy Court and which order is reasonably acceptable to Teneo. Prior to the Company commencing a case under the Bankruptcy Code, the Company shall pay all due and owing Compensation to Teneo.

The Company shall use its best efforts to provide for the payment in full, in cash, of all Compensation in any plan submitted to the Bankruptcy Court for confirmation. Teneo recognizes, however, the Company's ability to make such payments may be subject to approval and entry of an order by the Bankruptcy Court. If a restructuring is consummated pursuant to a bankruptcy plan, all Compensation payable to Teneo shall be deemed earned and payable in full upon the effective date of the plan.

**7. Conflict of Interest**

Teneo is not currently aware of any relationship or circumstance that has created or would create a conflict of interest with the Company or those parties-is-interest of which you have made us aware. Without limiting the generality of the preceding sentence, no Teneo Party has any conflicting interests with the Company, any officers or directors of the Company, any material vendors or customers of the Company, or any lender to the Company. Because Teneo comprises a consulting

4

(Cont.)



firm that services clients on a global basis in numerous cases, both in and out of court, it is possible that we may have rendered or will render services to, or have business associations with, other entities or people which had or have or may have relationships with the Company, including creditors of the Company.

8. **Indemnification**

The Company and Teneo agree to the indemnity provisions and other obligations set forth in the Terms of Business, which are incorporated in their entirety by reference into this Agreement and are an integral part hereof.

9. **Counterparts and Electronic Signatures**

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original agreement and all of which shall constitute one and the same instrument. The counterparts of this Agreement may be executed and delivered by facsimile or other electronic signature (including portable document format) by any of the parties, and the receiving party(ies) may rely on the receipt of such document so executed and delivered by facsimile or electronically as if the original had been received.

10. **Notices**

All notices required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given and received (a) when personally delivered or delivered by same-day courier; (b) on the third business day after mailing by registered or certified mail; (c) upon delivery when sent by prepaid overnight express delivery service (*e.g.*, FedEx, UPS); or (d) when sent via email or facsimile and upon the receipt by the sending party of written confirmation by the receiving party; provided, however, that an automated facsimile or email confirmation of delivery or read receipt shall not constitute such confirmation; and, in any case addressed to the addresses set forth below, which may be updated by the parties to this Engagement in writing from time to time.

James S. Feltman
Teneo Capital LLC
280 Park Avenue, 4th Floor
New York, NY 10017
james.feltman@teneo.com

11. **Agreement to Terms**

Please confirm your written acceptance of this Agreement by signing and returning the attached copy.

5

(Cont.)



Yours faithfully

**James S. Feltman**

**Senior Managing Director**

I accept the terms of this Agreement on behalf of Bird Global, Inc.

| Signed | *Michael Washinushi* |
|--------|----------------------|
| Name | Michael Washinushi |
| Date | 12 / 01 / 2023 |

6



**Teneo Capital LLC Terms of Business**

**Definitions**

"**Affiliate**" means any entity controlled by, controlling, or under common control with, the relevant party.

"**Agreement**" means the EL, including these ToB.

"**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time, and any successor statute and all rules and regulations promulgated thereunder.

"**Bankruptcy Court**" means the United States Bankruptcy Court having jurisdiction over the Chapter 11 Case(s).

"**Chapter 11 Case(s)**" means either (a) the case(s), if any, commenced under chapter 11 of the Bankruptcy Code by you; or (b) the case(s) in which you, as the creditor or other party-in-interest, have retained or will retain Teneo.

"**Claims**" means all liabilities, losses, damages, expenses, fines, penalties, costs, claims, causes of actions, investigations, inquiries, subpoenas, or other proceedings (including reasonably incurred legal costs; vendor costs for recovering, searching, hosting, and producing electronically stored data in defending any such claim; and any amounts paid by us for responding to any investigation, subpoena, discovery demands, or other proceeding) related to or arising in any manner out of any activities performed or services furnished pursuant to this Agreement.

"**Client**," "**you**," or "**your**" means, or refers to, the recipient(s) of the Services signing the EL.

"**Client Materials**" means all information relating to your business and the operation, strategies, products, and finances of your company that you provide us during the term of the EL for the provision of the Services.

"**Compensation**" means our fees and expenses plus applicable taxes in respect to the Services.

"**Damages**" means all losses, damages, liabilities, costs, and expenses arising from, or in any way in connection with, this Agreement.

"**Deliverable(s)**" means all written advice or other tangible product of the Services that is provided by Teneo to you and/or any items as specified in the EL as a "Deliverable."

"**Developed Material(s)**" means the output of our Services prepared jointly by a combination of our personnel working jointly with your own personnel and where you remain solely responsible for all of the decisions, assessments, conclusions, and judgments underlying them and is not Teneo branded, as specified in the EL as a "Developed Material."

"**Effective Date**" means the date stated in the EL as the date on which this Agreement commences.

"**EL**" means the engagement letter (and, as applicable, its appendices, schedules. or exhibits) accompanying these ToB.

"**Intellectual Property Rights**" means all past, present, and future legal and/or equitable interests and rights in all intellectual property and other proprietary rights of any kind whether registered or unregistered and existing now or in the future, including trademarks, service marks, inventions, patents, copyrights, trade secrets, and all goodwill associated with any of the foregoing and rights in, or relating to, applications, registrations, renewals, extensions, combinations, divisions, and reissues of any of the foregoing and any right or form of protection of equivalent or similar nature or effect to any of them that may subsist anywhere in the world.

7



"**Pre-Existing Works**" means all Intellectual Property Rights in any materials (including any software) that is created by, owned by, or licensed to us prior to the Effective Date, whether recorded in a documentary form or stored on any storage device, or subsequently amended during or following the termination of the EL and any subsequent modifications to the same.

"**Services**" means the services described in the EL as the "Services," including the provision of Deliverables.

"**Subcontractors**" means third parties appointed by Teneo to support the provision of the Services.

"**Teneo**," "**we**," "**us**," or "**our**" means, or refers to, the Teneo Party signing the EL.

"**Teneo Party(ies)**" means Teneo, any member of the Teneo Holdings LLC network of firms and their holding companies, subsidiaries, Affiliates, and Subcontractors and, in each case, their respective partners, principals, officers, directors, and personnel.

"**Teneo Technologies**" means all content, publications, thought pieces, materials, software, system interfaces, templates, methodologies, tools, processes, and technologies, including cloud-based technologies and algorithms owned by, licensed to, or developed by any Teneo Party and used by Teneo and its Subcontractors in performing the Services or its other obligations that are not an output of the Services and are licensed to you under separate license terms.

"**ToB**" means these terms of business.

**Interpretation**

a)    Article, section, and clause headings contained in this Agreement are for convenience of reference only and shall not affect the interpretations of this Agreement.

b)    Words in the singular, where the context so permits, shall be deemed to include the plural and vice versa.

c)    Unless expressly stated otherwise, all reference to a specific statute or statutory provision includes that statute as in force from time to time; any modification, amendment, or re-enactment of that statute; and any statute that may be enacted in substitution of that statute.

d)    Any words following the terms "including," "include," or any similar expression shall be construed as illustrative and shall not limit the sense of the word, description, definition, phrase, or term preceding those terms.

**1    Agreement**

1.1    This Agreement shall become effective on the earlier of the Effective Date and the date on which the EL has been signed.

1.2    In the event of any conflict between these ToB and the EL, the EL shall prevail unless it is stated otherwise.

**2    Your Responsibilities**

2.1    You agree to provide all information and materials in your possession that are reasonably required to enable us to provide the Services (including if it has previously been provided to the Teneo Parties under a different arrangement or is publicly available information). You agree that all information disclosed or to be disclosed to us is or will be true, accurate, and not misleading. You shall promptly inform us upon the discovery of any information that subsequently becomes untrue or inaccurate. To ensure that we are able to carry out the Services, you shall keep us



informed of any of the Client's strategy and developments that are relevant to the provision of the Services. Should you not disclose any such relevant information or developments, you accept that this might, without any fault or responsibility on our part, prevent us from providing the Services. The same shall apply should you decide to publish any document affecting a transaction or the performance of Services without prior notification to us. You confirm that you have and will maintain all necessary consents and authorizations which enable us to provide the Services to you and that you comply with all relevant laws and regulations where required.

2.2    You shall ensure that your employees are available to provide such assistance as we reasonably require and that we are given such access to senior management, as well as any members of your staff specified in the EL who are necessary to enable us to provide the Services. You will be responsible for ensuring that your employees have the appropriate skills and experience to provide us with such assistance.

2.3    You shall manage all aspects of your business and make management decisions relating to your business. Where you are using third parties to provide information or support to a project, including where you are employing other suppliers whose work may affect our ability to provide the Services, you will ensure that you have appropriate agreements in place with those third parties to enable us to provide the Services under the terms of this Agreement and ensuring that such third parties work collaboratively with us. Unless otherwise agreed in writing, we will not be responsible for the management of those third parties and the quality of their input and work.

**3    Confidentiality**

3.1    Where any party hereto has, or comes into possession of, information about the other(s) that is by its nature confidential, or is designated as such by the disclosing party (whether in writing or orally) ("**Confidential Information**"), including this Agreement, we each undertake for the term of this engagement and a three-year period thereafter to (i) keep it confidential; (ii) use it only in connection with providing and receiving the Services, and (iii) not to disclose it to any other person without the disclosing party's prior written consent. These undertakings will not apply to any Confidential Information that the receiving party can demonstrate (a) was previously known to it without any obligation of confidentiality; (b) has been independently developed by it without access to or use of the disclosing party's Confidential Information; (c) was acquired by it from a third party which was not, to the receiving party's knowledge, under an obligation to the disclosing party not to disclose such information; (d) was or has become publicly available through no fault of the receiving party; or (e) is subsequently disclosed by the disclosing party to a third party without restriction.

3.2    We and you each will be entitled to disclose Confidential Information to our legal advisors and insurers and to comply with any applicable legal, statutory, professional, or regulatory requirement. We may share your Confidential Information with (i) any Teneo Party we use to provide the Services; and (ii) any of our suppliers involved in providing infrastructure and other support services as part of our business, in each case on a confidential basis only.

3.3    Nothing in this Agreement will prevent or restrict any Teneo Party from using or sharing, for any purpose, any knowledge, experience, and skills used in, gained, or arising from performing the Services, subject to the obligations of confidentiality set forth herein.

3.4    This Section 3.4 is subject to Teneo (i) complying with applicable professional standards regarding conflicts of interest, and (ii) maintaining the confidentiality of your Confidential Information in accordance with Section 3.1. You acknowledge that other clients or third parties

9



who (a) are interested in, or are participating in, a project in relation to the same or similar subject matter as the Services; or (b) may have interests that compete and/or conflict with your interests, may have received, or may receive, other services related to that project from Teneo and/or another Teneo Party (where necessary, through separate engagement teams). We will not disclose to you nor use for your benefit any confidential information that such other teams from Teneo or another Teneo Party have obtained while providing services to other clients or third parties in relation to such project. You agree not to bring any claim against Teneo or another Teneo Party arising out of, or connected with, our or their provision of services to other clients or third parties or the non-disclosure to you of their confidential information as permitted by this Section 3.4.

**4    Liability**

4.1    Teneo warrants that it will perform the Services with reasonable skill and care. Except as specifically provided in this Agreement, no Teneo Party shall have any liability, regardless of the form of action, whether in contract or tort, or whether direct or indirect, except to the extent that any such liability for Claims is found in a non-appealable final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Teneo Party's gross negligence or willful misconduct. In no event will any Teneo Party have any liability to you for special, consequential, incidental, or exemplary damages or loss (nor any lost profits, savings, or business opportunity).

4.2    Nothing in this Agreement shall exclude or limit our liability for (i) fraud or fraudulent misrepresentation; (ii) gross negligence or willful misconduct; or (iii) any other liability that may not be excluded or limited by law.

4.3    Where Teneo has agreed in this Agreement that there is more than one beneficiary of the Services, the limitation on our total liability in this Agreement will apply to all such beneficiaries in the aggregate and shall be apportioned amongst them. You will procure that no such beneficiary will dispute or challenge the validity, operation, or enforceability of this section on the grounds that no such apportionment has been so agreed or on the grounds that the agreed share of the limitation amount so apportioned to any beneficiary is unreasonably low.

4.4    Any liability which we may have to you for Damages shall (so far as is permitted by law) be limited to such an amount as is determined to be just and equitable, taking into account the extent of responsibility for such Damages of us, you, and any person other than us who is jointly or severally liable to you for all or part of the same Damages, provided always that our liability to you shall not exceed in aggregate the amount set out in this Agreement. Any limitation, exclusion, or restriction on the liability of any such other person, whether arising under statute or contract or resulting from death, bankruptcy or insolvency, or any settlement of such liability agreed with you, shall not be taken account of for the purposes of determining the extent of our liability to you.

4.5    Except for the warranties, representations, conditions, and obligations expressly set out in this Agreement, Teneo disclaims all warranties, representations, conditions, and obligations, either express or implied, including warranties of satisfactory quality and fitness for a particular purpose. You agree that, in entering into this Agreement, you did not rely on any representations (whether written or oral) of any kind or of any person other than those expressly set out in this Agreement and we shall have no liability otherwise than pursuant to the express terms of this Agreement.

(Cont.)



4.6    Any ancillary comments from us which arise during delivery of the Services are provided solely for the purpose of the Services to you and, without our prior written consent, may not be used for any other purpose, or disclosed to any person other than your other advisors (who may not rely on such advice). You will not refer to us, or any comments which we provide during the delivery of the Services, in any public document or communication without our prior written consent, which will only be given on the basis that we will not be responsible for any such public document or communication.

## 5    Indemnification

5.1    You shall indemnify and hold harmless the Teneo Parties from and against all Claims to which any of the Teneo Parties may become subject related to or arising in any manner out of any activities performed or services furnished pursuant to this Agreement, any matter contemplated thereby, or a Teneo Party's role in connection therewith, including prior to the date hereof (the "**Indemnified Activities**"), except to the extent a court of competent jurisdiction shall have determined by final non-appealable judgment that such Liabilities resulted directly from the gross negligence or willful misconduct of Teneo in performing the services that are the subject of this Agreement.

5.2    You shall promptly reimburse the Teneo Parties for all costs and expenses (including fees, costs, and expenses of legal counsel), as incurred, in connection with (i) the investigation of; preparation for; response to; serving as a witness in respect of; or defending, pursuing, settling, or otherwise becoming involved in any pending or threatened investigative, administrative, judicial, regulatory, or other claim, action, or proceeding or any arbitration or investigation in any jurisdiction related to or arising in any manner out of any Indemnified Activities, whether in connection with pending or threatened litigation to which any Teneo Party is, or is threatened to be, a party (collectively, "**Proceedings**"); and (ii) enforcing a Teneo Party's rights under this Agreement.

5.3    We shall notify you after we become aware that a Proceeding has been commenced by way of service with a summons or other legal process giving information as to the nature and basis of the claim against a Teneo Party in respect of which indemnity may be sought hereunder. In any event, our failure to notify you shall not relieve you from any lability that you may have on account of this indemnity or otherwise except to the extent you could not otherwise have been aware of such Proceeding and you have been materially prejudiced with respect to the Proceeding by such failure.

5.4    Neither you nor any member of your board of directors shall (a) settle, compromise, consent to the entry of a judgment in, or otherwise seek to terminate any pending or threatened Proceeding in respect of which indemnity may be sought hereunder, whether any Teneo Party is an actual or potential party to such Proceeding; or (b) participate in, or facilitate, any such settlement, compromise, consent, or termination, including on behalf of your board of directors (or a committee thereof), in each case without Teneo's prior written consent unless such settlement, compromise, consent, or termination includes an unconditional release of each Teneo Party from all actual or potential Claims relating to the Indemnified Activities (such release to be set forth in an instrument signed by all parties to such settlement, compromise, consent, or termination) and does not include a statement as to or an admission of fault, culpability, or a failure to act, by or on behalf of any Teneo Party.

(Cont.)



**6        Payment**

6.1     Unless otherwise specified in the EL, we shall submit invoices for Compensation on a monthly basis and issue a final invoice to you on completion of the Services. You shall pay all invoices within thirty (30) days of the date of the applicable invoice ("**Due Date**"). Teneo shall have the right to suspend or terminate the provision of Services or any part thereof if payment is not received by the Due Date. If you dispute an invoice, you shall notify us within seven (7) days of its receipt and pay the undisputed portion of that invoice by the Due Date. You shall reimburse us for all reasonable expenses incurred in performing the Services (including all reasonable travel, meal, lodging, and mileage expenses) which will be invoiced as part of the Compensation. Termination of this Agreement, for any reason, shall not affect Teneo's right to receive Compensation incurred up to, and as of, the date of termination of this Agreement.

**7        Data Protection**

7.1     In connection with the delivery of, and invoicing for, the Services, Teneo may collect and utilize certain personal data of, or concerning, representatives of the Client. For information concerning the handling of personal data by Teneo, see Teneo's Privacy Policy at www.teneo.com.

**8        Survival**

8.1     The provisions of this Agreement, which expressly or by implication are intended to survive its termination, will survive and continue to bind both of us, including Sections 3 (Confidentiality), 4 (Liability), 5 (Indemnification), 6 (Payment), 9 (Compliance with Laws) and 10 (Miscellaneous).

**9        Compliance with Laws**

9.1     Client represents and warrants that at the time of signing of the Agreement and throughout the duration of the Agreement, the Client and its ultimate beneficial owner(s) and members of its bodies, are not a "Sanctioned Person" with whom Teneo would be prohibited from dealing or rendering its Services under the Agreement. For purposes of the Agreement, a "Sanctioned Person" is any individual or entity that: (i) is designated under, or otherwise subject to, Sanctions; (ii) it operates, or is organized or ordinarily resident in, a Sanctioned Country (meaning any country or territory that is subject to, or whose government is subject to, a regime of Sanctions prohibiting or restricting relations with these countries, territories or governments); or (iii) is 50% owned or controlled by, or acts for, at the direction or on behalf of, any of the foregoing parties set forth in (i) or (ii) hereof. "Sanctions" means any economic or financial sanctions, or trade embargoes administered or enforced by the US Government (including without limitation the US Department of the Treasury, the US Department of State, the US Department of Commerce, or any other US Governmental Authority), or by the European Union, any member state of the European Union, the United Kingdom, the United Nations, or any other applicable sanctions authority with jurisdiction over the Client or Teneo.

9.2     To the extent permitted under applicable laws, Client shall comply with Sanctions with respect to the Services and any goods, software or technology subject to or provided

12



under the Agreement. Client shall refrain from acting in any way that would cause Teneo to violate any Sanctions.

9.3    To the extent permitted under applicable laws, Client shall not export, re-export or otherwise transfer any items, software or technology received from Teneo pursuant to the Agreement, except in accordance with applicable export control regulations, including, without limitation, the export control regulations of the United Kingdom, the United States, the European Union, and any member state of the European Union ("Export Controls"). Client shall not otherwise act, directly or indirectly, in any manner that would cause Teneo to violate Export Controls.

9.4    The Client undertakes that no Services will be directly or indirectly provided for the benefit of, made available to, or implemented by any individual ordinarily resident or located in a Sanctioned Country or any entity established, incorporated or domiciled in a Sanctioned Country without prior written consent from Teneo.

9.5    To the extent applicable laws would require to act in a manner contrary to any clause of this Section 9, Client or Teneo, as applicable, shall promptly inform the other party about and commit to find a mutually acceptable solution to mitigate any potential or existing risks under applicable Sanctions (e.g. any change in the representations stated in the above clause 9.1 or any breach of this Section 9). To that end, each party commits to act in good faith and to provide all information that is deemed necessary by the other party to assess its actual or potential exposure under applicable Sanctions. A breach of this Section 9 by a party is considered as not curable.

9.6    Teneo shall be released from any obligation under the Agreement and shall be entitled to suspend or terminate the Agreement after written notice to the Client with immediate effect and without liability to the extent that performance of Teneo's obligations under the Contract would cause Teneo to violate Sanctions or Export Controls. The Client shall indemnify Teneo, and hold Teneo harmless, from any Claims, resulting from any breach of this Section 9, or Teneo's suspension or termination of the Agreement in accordance with this Section 9.

## 10    Miscellaneous

10.1    **Dispute Resolution.** Except to the extent that any dispute between you and Teneo must be brought before a Bankruptcy Court pursuant to the Bankruptcy Code, such dispute, whether relating to this Agreement or the relationship among the parties and whether involving alleged claims in contract, tort, or otherwise, will be submitted to final, binding arbitration, in accordance with the Federal Arbitration Act, in New York County before JAMS or if JAMS is unable to arbitrate, before the American Arbitration Association or if the American Arbitration Association is also unable to arbitrate, another nationally recognized arbitration tribunal mutually agreed to by the parties to the dispute. The arbitration shall be conducted before a single arbitrator, unless the parties otherwise agree in writing, in accordance with the then-existing most streamlined available rules of the selected arbitral forum. The arbitrator may award the prevailing party, as determined by the arbitrator, the prevailing party's reasonable expenses, including attorneys' fees and expenses and arbitration costs and the fees and costs of the arbitrator and the tribunal. In no event shall the arbitrator award punitive damages. No party hereto may bring any action or proceeding arising under or otherwise concerning the EL or the related relationship between the



parties more than one year after the termination of the EL, except that Teneo may bring an action or proceeding for non-payment up until one year after the date the last payment is due to it.

10.2 **Jury Trial Waiver.** The parties hereto have agreed to the dispute resolution provision set forth herein and, therefore, it is the parties' intention that disputes will not be heard in a court of law. Nothing herein, however, is intended or should be construed to preclude any party from seeking in a court of competent jurisdiction emergency or preliminary injunctive relief or relief in aid of or to compel arbitration. If any dispute relating to this Agreement should become subject to a proceeding before any court, THE PARTIES EXPRESSLY, IRREVOCABLY, AND UNCONDITIONALLY AGREE TO WAIVE ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE SERVICES PROVIDED HEREUNDER. The parties' agreement in this regard is an integral part of the consideration received by Teneo, and Teneo would not consent to perform services or enter into the Agreement without such agreement.

10.3 **Force Majeure.** Other than a party's obligation to provide Compensation set out in the EL, neither party will be liable for any delays or failures in performance or breach of contract due to events, causes, or circumstances beyond the reasonable control of either party.

10.4 **Notices.** All notices required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given and received (a) when personally delivered or delivered by same-day courier; (b) on the third business day after mailing by registered or certified mail; (c) upon delivery when sent by prepaid overnight express delivery service (*e.g.*, FedEx and UPS); or (d) when sent via email or facsimile and upon the receipt by the sending party of written confirmation by the receiving party; provided, however, that an automated facsimile or email confirmation of delivery or read receipt shall not constitute such confirmation; and, in any case, addressed to the appropriate party at the address set forth in the EL, or to any other address as the parties may have set during the period of this Agreement.

10.5 **Subcontracting.** We may subcontract the provision of the Services, or any part, to any person including any Teneo Party, but this will not affect Teneo's responsibility for the Services. You agree not to bring any claim (whether in contract, tort, breach of statutory duty, or otherwise) against any Teneo Party except Teneo in respect of loss or damage suffered by you arising out of, or in connection with, this Agreement or the Services. The Teneo Parties are intended third-party beneficiaries of this section and may enforce such terms for their protection.

10.6 **Nominated Subcontractor.** Where you require us to contract the services of a specific subcontractor selected by you, you will accept responsibility and liability for the work to be performed by such subcontractor. Our agreement to program and integrate the work to be performed by such subcontractor for the purposes of this Agreement is provided on the following basis: (i) we will not be responsible or liable to you or to any other person for the work performed by such subcontractor or for any acts, omissions, defaults, and neglects of such subcontractor; (ii) we shall not review any of the work provided by your nominated subcontractor unless we specifically agree to it in writing; (iii) it is your responsibility to inform yourself of the work performed by, and the advice given by, your other advisors; and (iv) you will be responsible and liable for, and will indemnify us against and from, any liability that we may incur to any person and against all Claims made against, suffered, or incurred by us, directly or indirectly, as a result of or in connection with the work performed by any such subcontractor.

10.7 **Non-Solicitation.** You shall not, except with our prior written consent, either during the term of the EL or within twelve (12) months following termination of this Agreement, directly or indirectly,



solict or entice away (or attempt to solicit or entice away) from our employment any person employed or engaged by us or otherwise connected directly or indirectly with this Agreement in the delivery of the Services other than by means of any general advertisements for employees, so long as such general advertisements are not directed to our employees. If you commit any breach of this section, unless otherwise agreed, you shall, on demand, pay to us a sum sufficient to fully compensate us for any injury suffered by us by reason of your breach of this section, in no event less than a sum equal to one year's basic salary or the annual fee that was payable by us to that employee, worker, or independent contractor plus the recruitment costs incurred by us in replacing such person.

10.8   **Assignment.** You shall not transfer, assign, novate, charge, or otherwise seek to deal in any way with any of your rights or obligations under this Agreement without our prior written consent. We shall not transfer, assign, novate, charge, or otherwise seek to deal in any of our rights or obligations under this Agreement without your prior written consent; we may assign our rights and obligations under this Agreement to one or more of our Affiliates upon written notice to you, provided that such assignment shall not materially alter the Services provided.

10.9   **No Third-Party Beneficiaries.** Teneo has been retained only by you. Unless otherwise expressly agreed in a writing signed by all parties hereto, no one other than you is authorized to rely upon the engagement of Teneo or any statements, advice, opinions, or conduct by Teneo. Except as set forth expressly herein, the parties understand and agree that there are no third-party beneficiaries of this Agreement, including partners, lenders, investors, trustees, beneficiaries, insureds, or Affiliates of the reorganized debtor, creditor committee, or any other entity. Accordingly, none of the aforementioned entities in this section shall have any right to pursue or enforce any right or remedy hereunder; to assert a Claim against Teneo; or to assert reliance in any manner on Teneo, this Agreement, or work performed hereunder.

10.10  **Waiver.** No failure or delay by any party to exercise any right or remedy provided under this Agreement or by law shall constitute a waiver of that or any other right or remedy, nor shall it prevent or restrict the further exercise of that or any other right or remedy, unless agreed in writing to be a waiver. No single or partial exercise of such right or remedy shall prevent or restrict the further exercise of that or any other right or remedy unless agreed in writing to be a waiver.

10.11  **Amendment.** No changes to this Agreement shall be effective unless agreed in writing and signed by both parties. This Agreement can be varied or terminated without any third party's consent.

10.12  **Entire Agreement.** This Agreement (i) supersedes and relieves the parties from any liability which might otherwise arise in respect of any previous agreement, understanding, statement, or representation between the parties in relation to the matters dealt with in this Agreement and represents the entire Agreement between the parties on these matters; and (ii) is in full substitution and replacement for any standard terms issued by you which might otherwise be applicable. The parties and each of them acknowledge and agree that this Agreement has not been entered into in reliance on any pre-contractual statement and representations provided always that this section shall not exclude or limit any liability or any right which any party may have in respect of pre-contractual statement or representations made or given fraudulently or dishonestly or in circumstances where there has been willful concealment.

10.13  **Authority to Sign.** By signing this Agreement, you expressly represent and warrant that you have full and complete authority to accept these ToB, to bind the Client to every term of this Agreement, and to authorize us to provide you the Services under this Agreement.

15

(Cont.)



10.14 **Severance.** If any provision of this Agreement, or part of any provision, is found by any court or other authority of competent jurisdiction to be invalid, illegal, or unenforceable, such provision or part-provision shall, to the extent required, be deemed modified to the minimum extent necessary to make it valid, legal, and enforceable. If such modification is not possible, the relevant provision or part-provision shall be deemed deleted. Any modification to, or deletion of, a provision or part-provision under this section shall not affect the validity and enforceability of the rest of this Agreement.

10.15 **Governing Law.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York without regard to the provisions, policies, or principles thereof relating to choice or conflicts of law. To the extent applicable, each of the parties hereto agrees to submit any claim or dispute arising out of or related to this Agreement to the Bankruptcy Court. If the Bankruptcy Court declines to assert jurisdiction over such proceedings, then such proceedings shall be heard and determined in any state or federal court of competent jurisdiction sitting in New York, New York, to whose jurisdiction each of the parties hereto hereby irrevocably submits. To the extent applicable, nothing in this section shall pertain to, or affect, the authority of the Bankruptcy Court to consider and rule upon Teneo's applications for interim or final compensation pursuant to this Agreement.

(Cont.)



**Appendix A – Agreed Upon Services with Cost Estimates**

These cost estimates assume that the Company has complete and accurate / reliable records and there are enough company personnel who can locate and source information electronically to minimize Teneo hours in a time relevant manner.  These cost estimates contemplate a four month stay in Chapter 11 and that the Company's CRO will take on a great deal of the responsibility communicating with and addressing creditor inquiries, the US Trustee, and interacting with secured creditors, junior creditors, vendors, and tort claimants.  The extent to which formalized reporting is required for the 50 or so non-filed affiliates and the timeliness and accuracy of their respective reporting will also impact these cost estimates.

The non-filed affiliates are assumed to be operating without the protection of the automatic stay and without any oversight and involvement by the FA.

- Produce a 13-week cash budget / DIP Budget
  - Teneo estimates that conforming an existing and reliable 13 week CF to a DIP budget  will take approximately 2 weeks cost approximately $100,000.
- US Trustee Reporting / Bankruptcy Reporting
  - Monthly Operating Reporting
    - Estimated $40,000 to $50,000 for the filed entities for the four month bankruptcy
  - Statements and Schedules
    - Estimated $60,000 to $120,000 for the filed entities (5)

(Cont.)



280 Park Avenue, 4th Floor
New York, NY 10017
Office: +1 212.886.1600
teneo.com

# Teneo Amendment

December 14, 2023

Michael Washinushi
Interim Chief Executive Officer
**Bird Global, Inc.**
392 NE 191st Street, #20388
Miami, FL 33179

Dear Michael:

**Re:**   **Amendment to Agreement effective on November 27, 2023**

We refer to that certain agreement (the "**Agreement**"), effective on November 27, 2023, by and between **Teneo Capital LLC**, a Delaware limited liability company, and **Bird Global, Inc.**  Capitalized terms used herein but not otherwise defined shall have the meanings assigned to such terms in the Agreement.

The parties hereby agree to amend the Agreement, effective as of December 14, 2023, as follows:

1.  To facilitate the carrying out of certain communication and corporate strategy advisory services (the "**Additional Services**"), the parties hereby agree that the Additional Services will be performed by Teneo's affiliate, Teneo Strategy LLC (the "**Consultant**"). The Consultant signing this letter agreement be "Teneo" under the Agreement. The terms and conditions of the Agreement shall control this letter agreement.

2.  In consideration for the Additional Services, the Client shall pay to the Consultant the following fees:

    a.  **Retainer.** Prior to the Consultant providing the Additional Services hereunder, the Client shall provide Consultant a retainer of $25,000 (the "**Retainer**"). Teneo shall hold the Retainer to secure payments hereunder until completion of the Additional Services. Upon termination, the Consultant shall return the unused portion, if any, of the Retainer to the Client.

**b. Hourly Fees.** In connection with providing the Additional Services hereunder, Consultant shall be entitled to hourly fees at its usual and customary services (the "**Hourly Fees**"). The Hourly Fees will be based principally on the experience of the people providing services, and the actual hours worked, unless otherwise agreed. All Hourly Fees shall be subtracted from the Retainer as they accrue. The current customary hourly rates, subject to period adjustment, charged by Consultant professionals anticipated to be assigned to this case are as follows:

| Title | Range | |
|---|---|---|
| Senior Leadership (Chairman, Vice Chairman) | $1,500 | $2,000 |
| Senior Managing Director | $950 | $1,500 |
| Managing Director | $800 | $950 |
| Senior Assoc, VP, SVP | $500 | $800 |
| Analyst, Consultant, Associate | $300 | $500 |

Additional Services rendered after the date of any rate change will be billed at the new rates. Prior to applying any increases in its hourly rates, the Consultant must provide ten (10) days' notice of any such increase to the Company.

Except as modified herein, all terms and conditions of the Agreement shall remain in full force and effect. This letter agreement shall be governed under the laws of the State of New York, without regard to its conflict of law provisions and may be executed in counterpart and by facsimile.

May it be known that the undersigned parties, for good and valuable consideration, the receipt and adequacy of which is acknowledged and agreed, accept and agree as of the date first written above:

[Signature page follows]

2

Accepted and Agreed to:

**BIRD GLOBAL, INC.**

Margaret Hoffman

_____
Name

Vice President, City Growth and Strateg

_____
Title

*Margaret K Hoffman*

_____
Signature

**TENEO STRATEGY LLC**

Tom O'Connor

_____
Name

CFO

_____
Title

_____
Signature

3

 **Audit trail**

| | |
|---|---|
| **Title** | Teneo Engagment Letter |
| **File name** | 1_-_Teneo_Engagment_Letter.pdf |
| **Document ID** | b626e11e255fe25fd1b11c8da5a1b3d00e0da42f |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

**SENT**
**12 / 18 / 2023**
14:54:48 UTC-8

Sent for signature to Tom O'Connor (tom.oconnor@teneo.com) from julie.linn@bird.co
IP: 72.185.82.46

**VIEWED**
**12 / 18 / 2023**
15:12:11 UTC-8

Viewed by Tom O'Connor (tom.oconnor@teneo.com)
IP: 74.89.91.231

**SIGNED**
**12 / 18 / 2023**
15:12:31 UTC-8

Signed by Tom O'Connor (tom.oconnor@teneo.com)
IP: 74.89.91.231

**COMPLETED**
**12 / 18 / 2023**
15:12:31 UTC-8

The document has been completed.

# EXHIBIT "C"

## (Curriculum Vitae of James S. Feltman)



**Teneo**

**James S. Feltman**
Senior Managing Director

**Office**
New York

**Contact**
james.feltman@teneo.com
+1 (305) 793-6279

Mr. Feltman is among the most experienced bankruptcy fiduciaries in the United States, having served as a Chapter 11 Trustee in 25 assignments, an Examiner in 14 matters and as a Chapter 7 Trustee in over 10,000 cases. Mr. Feltman's experience as a bankruptcy fiduciary is multi-jurisdictional, (including the Southern District of New York) and cross-border. Additionally, Mr. Feltman served in other fiduciary roles in numerous matters including as a Mediator, Arbitrator and Monitor. His industry specialization includes agriculture, retail, manufacturing and distribution, real estate / construction, aviation, healthcare, financial services, and other industries.

Mr. Feltman's extensive experience as a fiduciary includes operating and managing businesses, overall case management, sales and liquidation of assets and business interests, claims development and prosecution, negotiating settlements, and administering claims payment schemes in a variety of cases for more than the last two decades. Mr. Feltman has managed the dispositions of a range of businesses and business interests, real estate, personal and intellectual property.

Mr. Feltman is a Fellow of the American College of Bankruptcy, a member of the American Institute of Certified Public Accountants and Florida Institute of Certified Public Accountants. He is a Certified Public Accountant in the State of Florida. From 2002-2008, Mr. Feltman was a member of the Board of Directors of the American Bankruptcy Institute. Mr. Feltman was honored as one of the 2015 Consultants of the Year by *Consulting Magazine*.

**Education**

- M.P.S., Cornell University
- B.A., University of Wisconsin, Madison

**Certifications**

- Certified Public Accountant, Florida
- Certified in Financial Forensics
- Certified Fraud Examiner

**Professional Associations**

- American Bankruptcy Institute, April 2002 – April 2008, board of directors
- American Institute of Certified Public Accountants, member
- Florida Institute of Certified Public Accountants, member



## Honors and Awards

- Fellow, American College of Bankruptcy
- Top 25 Consultants in 2015 – Consulting Magazine

## Publications

- Financier Worldwide:
  - o  Panelist-Bankruptcy and Restructuring; November 2016
  - o  Panelist-Out-of-Court Restructuring Alternatives; June 2016
- ABI Fraud and Forensics
  - o  Co-Author-Effective Expert Reports-2015
  - o  Shifting Asset Valuations and Rising Debt; June 2017

## Speaking Engagements

- Cryptocurrency: About, Current State, & Outlook – 32nd Annual Bankruptcy Workshop at the University of Miami School of Law – June 2022
- Complex Financial Restructuring Symposium in LV Nevada – May 2022: Complex Chapter 11 Problem Solving
- Cryptocurrency Management Strategies in Bankruptcy – American College of Bankruptcy 6th and 11th Circuit Weekend and Joint Education Program – February 2022
- ABI Panel on Continuing Care Retirement Communities – September 2022
- Director Liability, Wellspring, Director Releases, etc. – April 2022 (Webinar)
- Complex Financial Restructuring Program LV Nevada – February 2020: Healthcare Restructuring
- The Knowledge Group – November 2019:  Using and Challenging Expert Witness Testimony in Bankruptcy Litigation: Winning Strategies
- Expert Witnesses in Bankruptcy Litigation – November 2019 (Webinar)
- World Bank / IFC - May 2019:  Current Restructuring Topics presented to the Workout Team
- Complex Financial Restructuring Program LV Nevada Fiduciary Duties - February 2019
- ABI Milan International Solvency and Restructuring conference; International Asset Tracing - October 2018
- Financial Services Volunteer Corps – October 2014: Selection and Supervision of Bankruptcy Administrators (Marrakesh, Morocco)
- BBA / AIRA Joint Bankruptcy & Restructuring Program – January 2014: Valuation Topics in Bankruptcy
- Illinois CPA Fraud Conference – October 2013: Red Flags of Audit Breakdowns – Lessons Learned
- American College of Bankruptcy – October 2013: Where Are We Now And How Did We Get Here?
- Knowledge @ Wharton - February 2013: Reverse Mergers: A Looming U.S. – China Showdown over Securities Regulation?
- Compliance Week – January 2013: No Clear Solutions in Audit Standoff with China
- Reuters.com – January 2013: Chinese Companies Retreat from U.S. Listings as Scrutiny Mounts
- Bloomberg – December 2012: SEC Auditor Case Seen Jeopardizing Chinese U.S. Listings
- CNBC – December 2012: U.S. / China Regulatory Standoff
- National Public Radio – December 2012: Feds Sue Chinese Audit Firms
- Industry Week – December 2012: Regulatory Clash:  Lessons Learned through an East-Meets-West Dispute
- Compliance Week – August 2012: PCAOB Provides Audit Committees with a Roadmap on Inspection Results



- CNN – July 2012: Challenges for Chinese Companies listed on U.S. markets
- CNBC – July 2012: Regulatory Environment in China
- Financier Worldwide – July 2012: Bankruptcy Litigation Roundtable (Article)
- The Association of Commercial Finance Attorneys CLEW – May 2012: Global Economics, Financial Fraud and Lender Liability
- The American Bankruptcy Institute 30th Annual Spring Meeting – April 2012: Commercial Real Estate Trends, Workouts, and Reorganizations
- Fox News Interview – January 2012: Will More Banks Fail in 2012?
- Anti-Corruption Compliance Program – October 2011: The Gathering Storm: Anti-Corruption Compliance for Private Equity and Hedge Funds
- National Conference of Bankruptcy Judges October 2011: Financial Advisors in the Courtroom, and conducted a Webinar – China's Red Flag: What Chinese companies must do to overcome issues surrounding transparency with the global investor community
- The Offshore Alert Conference – April 2011: Offshore But Not Off Limits: How Fraud Victims Can Obtain Relief in OFC's
- The American Bankruptcy Institute 29th Annual Spring Meeting – March 2011: Cutting-Edge Litigation Issues: Ponzi Schemes, the Return of the Leveraged Buyouts, Valuation Disputes and More
- The Distressed Debt Conference in London – September 2010:  Considerations for Turnaround Investing.
- American Bankruptcy Institute – July 2010: Ponzi Schemes and Other Scams for Bilking Money, from Madoff to Consumer Rip-offs.
- American Bankruptcy Institute – August 2009: Ethical Issues for Lawyers Representing "Unusual" Clients.
- American Bankruptcy Institute – August 2009: Prove It! Evidence in Bankruptcy Proceedings.
- Kellogg Turnaround Management Conference – April, 2009: Negotiating in Creditors' Committees
- Distressed Acquisitions for Strategic Advantage – September 2008: Analyzing the Risks of Absorbing a "Sick" Company – Do I Have the Right Team?
- VALCON – January 2008: Restructuring Options for Homebuilders - What's Different This Time?
- National Conference of Bankruptcy Judges – October 2007: Where Will Bankruptcy Work Come From in 2008?
- American Bankruptcy Institute – July 2007: Effective Pre-Bankruptcy Negotiating and Packaging.
- American Bankruptcy Institute – July 2007: Drivers Impacting Credit and Capital Marketplace.
- Association of Commercial Finance Attorneys – June 2007: Asset Based Lending.
- American Bankruptcy Institute - Annual Spring Meeting, April 2007: Pensions and Benefits in Bankruptcy.
- American Bankruptcy Institute – Caribbean Insolvency Symposium, February 2007: Liquidating Cross-Border Assets and Recovering Cross-Border Claims.
- National Association of Credit Management, January 2007: Deepening Insolvency
- 13th Annual Aircraft Financing Forum, October 2006: The Bankruptcy & Restructuring Process:  Current Airline and Creditor Issues.
- American Bankruptcy Institute, September 2006: London International Insolvency Symposium – Aviation Panel.



## Bankruptcy Trustee Appointments

| Case Name | Case No. | Filing Date | Appointment Date | Role | Attorney / Contact | Firm Name | Industry |
|---|---|---|---|---|---|---|---|
| BKC | Various | 1988-2004 | 1988-2004 | Chapter 11 and Chapter 7 Trustee | Felicia S. Turner / Steven Turner | Office of the U.S. Trustee, Atlanta, GA | Various |
| AeroFloral, Inc. | 01-16367-BKC-RAM | 6/13/01 | 7/17/01 | Trustee | David M. Levine | Tew Cardenas, Miami, FL | Distribution |
| Empresa De Transporte Aero Del Peru, S.A., Debtor | 99-13741-BCK-AJC | 4/21/99 | 9/8/99 | Trustee | David Cimo | Genovese, Lichtman, Joblove & Battista, P.A., Miami, FL | Aviation |
| Aviation Composites Services, Inc. | 01-18236-BKC-AJC | 2002 | 3/21/02 | Trustee | Brian Behar | Behar Gutt & Glazer, Aventura, FL | Aviation |
| Bandsawe Residual Corp., Debtor | 99-15698-BKC-RAM | 6/11/99 | 8/18/99 | Trustee | Jerry Markowitz | Markowitz, Davis, Ringel & Trusty, P.A., Miami, FL | Professional Services – Legal |
| Blackwell & Walker, P.A. | 96-10862-BKC-RAM | 2/14/96 | 3/8/96 | Trustee | Arnold Schatzman | Schatzman & Schatzman, Miami, FL | Professional Services – Legal |
| Book Wholesalers Inc., Debtor | 96-10521-BKC-RAM | 1/29/96 | 2/28/96 | Special Representative / Trustee | Tom Lehman | Tew & Beasley, Miami, FL | Retail |
| C.G.F. Electrical Corp., Debtor | 95-15649 | 11/17/95 | | Trustee | Brian Behar | Behar, Gutt & Glazer, Aventura, FL | Professional Services |
| Certified HR Services Company f/k/a The Cura Group, Inc. | 05-22912-BKC-RBR | 5/12/05 | 5/25/05 | Trustee | Paul Battista | Genovese Joblove & Battista, Miami, FL | Professional Services |
| Corporate Resource Services, Inc. | 15-12329 (MG) | 7/23/15 | 9/22/15 | Chapter 11 Trustee | Linda Rifkin, AUST | Office of the U.S. Trustee | Professional Services |
| Florida Industrial Equipment & Supplies, Inc., Debtor | 91-14374-BKC-PGH | 1991 | 8/15/93 | Trustee | Ilyse Homer | Stroock, Stroock & Lavan, Miami, FL | Retail |
| Glenbeigh Hospital of Miami, Inc., et al., Debtors | 93-11057-BKC-AJC | 1993 | 6/30/93 | Trustee | Patricia Redmond | Stearns, Weaver, Miller, et al., Miami, FL | Healthcare |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Joseph Charles & Associates, Inc. | 00-34898-BKC-SHR | 11/1/00 | 7/6/01 | Trustee | Kenneth B. Robinson | Rice & Robinson, Miami, FL | Financial Services |
| Lander, Inc., Debtor | 92-10103-BKC-AJC | 1/7/92 | 5/7/93 | Trustee | F. Lorraine Jahn | Mershon, Sawyer, *et al.*, Miami, FL | Retail |
| Marathon Manor, Inc. | 01-10599-BKC-AJC | 1/24/01 | 5/16/01 | Trustee | Frank P. Terzo | Holtzman Equels & Furia, Miami, FL | Healthcare |
| Phoenix Continental Corp. and Flightline of America, L.C. | 97-25400-BKC-PGH and 97-25401 | 8/97 | 9/9/97 | Trustee | Thomas R. Lehman | Tew & Beasley, Miami, FL | Aviation |
| Suncoast Towers South Associates | 98-10537 | 1998 | 3/98 | Trustee | Linda G. Worton | Greenberg, Traurig, Miami, FL | Real Estate |
| Sophisticated Communications, Inc. | 001-17635-BKC-AJC | 8/28/00 | 5/25/01 | Trustee | Brian S. Behar | Behar Gutt & Glazer, Aventura, FL | Telecom |
| TCPI, Inc. | 01-24937-BKC-RBR | 7/3/01 | 10/4/01 | Trustee | Jerry M. Markowitz | Markowitz, Davis, Ringel & Trusty, P.A., Miami, FL | Healthcare |
| TS Employment, Inc. | 15-10243 (MG) | 2/2/15 | 2/27/15 | Trustee | Michael Driscoll | U.S. Department of Justice, New York, NY | PEO (employee staffing) |
| TUSA Florida, Inc., *et al.*, Debtors | 93-10748-BKC-SMW, 93-10759-BKC-SMW, 93-10928-BKC-SMW | 2/26/93 | 5/14/93 | Trustee | John Genovese | Kelley Drye & Warren, Miami, FL | Transportation |
| United Information Systems, Inc. | 98-16621-BKC-AJC, 98-16634-BKC-AJC | 7/22/98 | 9/28/98 | Trustee | Jerry Markowtiz | Markowitz, Davis, Ringel & Trusty, P.A., Miami, FL | Distribution |
| United Forming, Inc. | 92-11113-BKC-SMW | 2/24/92 | 8/14/92 | Trustee | Lee Mandell | Lee Mandell, P.A., Coral Gables, FL | Construction |
| World Terminal Distribution Corp. | 00-16555-BKC-RAM | 7/25/00 | 1/19/01 | Trustee | Allison R. Day | Genovese Lichtman Joblove & Battista, Miami, FL | Distribution |

5



| Worldwide Web Systems, Inc. | 00-16067-BKC-RAM | 7/11/00 | 8/11/00 | Trustee | Paul S. Singerman | Berger, Davis & Singerman, Miami, FL | Telecom |
| WTI International Corp. | 98-18183-BKC-AJC | 1/25/99 | 5/1/99 | Trustee | Arnold Schatzman | Schatzman & Schatzman, Miami, FL | Licensing / Patents |

### Bankruptcy Examiner Appointments

| Case Name | Case No. | Filing Date | Appointment Date | Role | Attorney / Contact | Firm Name | Industry |
|---|---|---|---|---|---|---|---|
| 25 Travel, Inc. | 92-15634-BKC-SMW | 1992 | | Examiner | | Miami, FL | Retail |
| Aerial Transit Company, Debtor | 92-17033-BKC-AJC | 12/11/92 | 4/8/93 | Examiner | Ronald Neiwirth | Semet, Lickstein, *et al.*, Coral Gables, FL | Aviation |
| Jack W. Barrett, Debtor | 93-10562-BKC-AJC | 2/12/93 | 7/30/93 | Examiner | Rick Rodgers | Port St. Lucie, FL | Professional Services / Medical |
| Cascade International, Inc., *et al.* | 91-33703-BKC-RAM | 1991 | | Examiner | John Genovese | Kelley Drye & Warren, Miami, FL | Retail |
| Evolution Imports, Inc. | 96-21853-BKC-RAM | 1996 | 6/25/96 | Examiner | N/A | Miami, FL | Retail |
| F.L.G. Inc., Debtor(s) | 99-10467-BKC-AJC | 1999 | 3/99 | Examiner | N/A | Miami, FL | Retail |
| Fisher Island Investments, Inc., Mutual Benefits Offshore Fund, Ltd., Little Rest Twelve, Inc. | 11-17047-BKC-AJC, 11-17051-BKC-AJC, 11-17061-BKC-AJC | 2011 | 4/27/11 | Examiner | N/A. | Miami, FL | Various |
| Hillard Development Corp. v. Griswold, *et al.* | Adv No. 94-0467-BKC-AJC-A | 5/27/94 | 2/2/95 | Examiner | James Boone | James Boone, P.A., Ft. Lauderdale, FL | Insurance |
| Ideas Apparel Group, Inc., Inc., Debtor | 91-B-10398 (CV) New York | 1991 | 6/11/93 | Examiner | | USBC, New York, NY | Insurance |
| IDEECO, Inc., Debtor | 95-23042-BKC-RBR | 1995 | 8/31/95 | Examiner | Denyse Heffner | Office of the U.S. Trustee, Miami, FL | - |



| Luke Records, Inc., Debtor | 95-11447-BKC-RAM | 3/28/95 | 6/20/95 | Examiner | Amber Donner | Office of the U.S. Trustee, Miami, FL | Entertainment |
|---|---|---|---|---|---|---|---|
| M&E Trading Co., Inc., Debtor | 91-15597-BKC-PGH | 1991 | | Examiner | Brent Friedman | Stroock, Stroock & Lavan | Retail |
| Overseas Corp., *et al.*, Debtor | 90-15067-BKC-AJC | 1990 | | Examiner | | USBC, Miami, FL | Real Estate |
| Syntax-Brillian Corporation, *et al.* | 08-114079 (BLS) | 7/8/08 | 9/2/08 | Examiner | Steven M. Yoder | Potter Anderson & Corroon, Wilmington, DE | Electronics |

## Liquidating Trustee Appointments

| Case Name | Case No. | Filing Date | Appointment Date | Role | Attorney/ Contact | Firm Name | Industry |
|---|---|---|---|---|---|---|---|
| Aero Systems Inc. / Aero Systems Aviation Corp. | 93-12972-BKC-SMW, 93-12973-BKC-SMW | 8/5/93 | 5/12/94 | Liquidating Trustee | Ronald Neiwrith | Semet, Lickstein, *et al.*, Coral Gables, FL | Aviation |
| American Way Service Corp., Debtor | 94-24696-BKC-RBR | 12/2/94 | 10/12/95 | Liquidating Trustee | Paul J. Battista | Genovese, Joblove & Battista, P.A., Miami, FL | Insurance |
| Certified HR Services Company Liquidating Trust | 05-22912-BKC-RBR | 11/27/07 | 11/27/07 | Liquidating Trustee | Paul J. Battista | Genovese, Joblove & Battista, P.A., Miami, FL | Professional Services |
| L. Luria Liquidating Trust | 97-16731-BKC-Ram (CH 11) | 1997 | 6/1/98 | Liquidating Trustee | Brian Kriger | Traub, Fox & Bonequist, New York, NY | Retail |
| Mission Health, Inc. | 99-5019-3F1 | 1999 | 10/18/00 | Liquidating Trustee | Edwin W. Held, Jr. | Fischette Owen Held & McBurney, Jacksonville, FL | Healthcare |
| Rich International Airways, Inc. Liquidating Trust | 96-17399-BKC-RAM | 1996 | 5/98 | Liquidating Trustee | Peter Levitt | Adorno & Zeder, Miami, FL | Aviation |
| Levitt and Sons, LLC, *et al.* | 07-19845-BKC-RBR | 11/9/07 | 12/21/07 | Liquidating Trustee | Paul J. Battista | Genovese, Joblove & Battista, P.A., Miami, FL | Real Estate |



| Pharmasystems Holding Corporation, Debtor | 99-14626-RAM | 5/13/99 | 5/17/99 | Liquidating Trustee | Craig Rieders | Genovese, Joblove & Battista, P.A., Miami, FL | Retail |
| --- | --- | --- | --- | --- | --- | --- | --- |

## Fiduciary and Other Roles

| Case Name | Case No. | Filing Date | Appointment Date | Role | Attorney/ Contact | Firm Name | Industry |
| --- | --- | --- | --- | --- | --- | --- | --- |
| AN Global | 23-11294 | 8/28/23 | 8/28/23 | CRO | Katie Coleman | Hughes, Hubbard and Reed | Information Technology |
| RGN Group Holdings LLC | 20-11961 | 8/17/20 | 7/17/20 | Responsible Officer | Chad Husnick | Kirkland and Ellis LLP | Real Estate |
| Legal Sea Foods, LLC | N/A | | 11/20 | CRO | Richard Heller | | Hospitality |
| Patriot National Inc. and Subsidiaries | 18-10189 | 1/30/18 | 10/17/17 | CRO | Katie Coleman Laura Davis Jones | Hughes Hubbard & Reed Pachulski Stang Ziehl & Jones LLP | Professional Services |
| Value City Department Stores, LLC | 08-14197 | 10/26/08 | 1/23/08 | President and CRO | John Longmire | Willkie Farr & Gallagher LLP, New York, NY | Retail |
| FJC Amusements, Inc. as a general partner of a joint partnership, Niagara Flume Partnership, Plaintiff, and Triple D of Lakeland, defendant | N/A | | 2008 | Arbitrator | Joel S. Fass | Colodny, Fass, Talenfeld, Karlinsky & Abate, P.A., Ft. Lauderdale, FL | Entertainment |
| Larry Kline Wholesale Meats & Provisions, Inc. v. David Freeman | N/A | | 11/07 | Mediator | Joel S. Fass | Colodny, Fass, Talenfeld, Karlinsky & Abate, PA, Ft. Lauderdale, FL | Distribution |
| ABC for Tasco Worldwide, Inc. and Celestron International | Multiple | 2002 | 5/02 | Assignee for the Benefit of Creditors | Ronald L. Leibow | Kay Scholer LLP, Los Angeles, CA | Mfg. / Retail |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Metso Oyj and Svedala Industries, AB | Docket No. C-4024, File No. 001-0186 | | 9/7/01 | Interim Monitor-FTC | M. Elaine Johnston | White & Case, New York, NY | Mfg. |
| The Estate of Ralph Laurence Devine, Deceased | Probate Division, File Number: 98-3651, Division: 04 | 6/99 | 12/98 | Co-Curator | David Glazer | Behar, Gutt & Glazer | Probate Estate |
| DeCiccio Floral Corp. d/b/a American Floral Distributors | 96-03762 CA15 | 2/22/96 | 2/29/96 | Assignee for the Benefit of Creditors | Robert A. Schatzman | Schantz, Schatzman & Aaronson, Miami, FL | Distribution |
| Fyffes Bananas International v. Proyecto La Cruz Manzanillo | N/A | | 8/94 | Arbitrator | Tom Murphy | Fyffes Bananas International, Ft. Lauderdale, FL | Agriculture |
| General Trading, Inc. v. Yale Materials Handling Corp. | 88-0061-CIV-Bandstra | 1988 | 4/15/94 | Federal Receiver | Philip Allen | Litow, Cutler, Zabludowski, et al., Miami, FL | - |
| Hi-Tech Computer Products, Inc., et al., v. NationsBank of Florida | 92-11601 (08) Broward Circuit Ct. | 1992 | 12/3/92 | Special Master | Frank Sinagra | Haley, Sinagra & Perez, P.A., Ft. Lauderdale, FL | Technology |
| Carbotex, Inc. Assignor | 97-27655 CA (11) | | | Assignee for the Benefit of Creditors | Paul L. Orshan | Kluger, Peretz, Kaplan & Berlin, P.A., Miami, FL | Retail |

**EXHIBIT "D"**

**(Proposed Order)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| In re: | Chapter 11 Cases |
|---|---|
| BIRD GLOBAL, INC., *et al.*,[1] | Case No. 23-20514-LMI |
| Debtors. | (Jointly Administered) |

**INTERIM ORDER APPROVING THE EMPLOYMENT OF TENEO CAPITAL LLC, AS FINANCIAL ADVISOR TO THE DEBTORS, AND TENEO STRATEGY LLC, AS COMMUNICATIONS AND CORPORATE STRATEGY ADVISOR TO THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

**THIS MATTER** having come before the Court for hearing on _____, 2023 at

_____ _.m., in Miami, Florida, upon the *Debtors' Application for the Approval of the*

*Employment of Teneo Capital LLC, as Financial Advisor to the Debtors, and Teneo Strategy LLC,*

*as Communications and Corporate Strategy Advisor to the Debtors, Effective as of the Petition*

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179.  The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

*Date* [ECF No. ____] (the "Application"), and the *Declaration of James S. Feltman on Behalf of Teneo Capital LLC and Teneo Strategy LLC* (the "Feltman Declaration") attached to the Application as Exhibit A.  The Application requests entry of an order approving the Debtors-in-Possession's employment of Teneo Capital LLC ("Teneo Capital") as financial advisor, and Teneo Strategy LLC ("Teneo Strategy", and collectively, with Teneo Capital, "Teneo") in these Chapter 11 Cases.[2] The Court has considered the Application and the Feltman Declaration, having been satisfied based on the representations made in the Application and the Feltman Declaration that (a) Teneo does not hold or represent an interest adverse to the Debtors' estates and (b) Teneo is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and as required by section 327(a) of the Bankruptcy Code, finds that: (i) it has jurisdiction over the matters raised in the Application pursuant to 28 U.S.C. §§ 157 and 1334; (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), and that this Court may enter a final order consistent with Article III of the Constitution; (iii) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; (iv) the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors and other parties in interest; (v) notice of the Application and the hearing were appropriate under the circumstances and no other notice need be provided; and (vi) upon review of the record before the Court, including the legal and factual bases set forth in the Application, the Feltman Declaration and the statements made by counsel at the hearing, good and sufficient cause exists to grant the relief requested.  Accordingly, it is

      **ORDERED** that:

      1.      The Application is **APPROVED**, on an interim basis.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Application.

2.      The employment by the Debtors, as debtors-in-possession, of Teneo, in accordance with the terms and conditions of the Engagement Letter, is **APPROVED** pursuant to 11 U.S.C. § 327(a), on an interim basis, pending a final hearing as set forth below, effective as of the Petition Date.

3.      Teneo shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with these Chapter 11 Cases, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules.

4.      The Court shall conduct a final hearing (the "<u>Final Hearing</u>") on the Application on **_____, 2024 at _____, United States Bankruptcy Court, C. Clyde Atkins United States Courthouse, 301 North Miami Avenue, Courtroom ____, Miami, FL 33128**.

5.      Entry of this Order is without prejudice to the rights of any party-in-interest to interpose an objection to the Application, and any such objection will be considered on a *de novo* standard at the Final Hearing.

6.      This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

# # #

Submitted by:
Paul Steven Singerman, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL  33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340
Email:  singerman@bergersingerman.com

*(Attorney Singerman is directed to serve this order upon all non-registered users who have yet to appear electronically in this case and file a conforming certificate of service.)*