UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BIRD GLOBAL, INC., et al., | Case No. 23-20514-CLC |
| Debtors. | Jointly Administered |
| _____/ | |

**LIMITED OBJECTION AND JOINDER IN OBJECTION BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS (I) APPROVING POSTPETITION FINANCING, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION, (V) MODIFYING AUTOMATIC STAY, (VI) SCHEDULING A FINAL HEARING, AND (VII) GRANTING RELATED RELIEF**

Lloyd's, London Syndicates Numbers 1969 and 1971 (collectively "Underwriters"), by and through undersigned counsel, object (the "Objection") and join (the "Joinder") in the objection to be filed by the Official Committee of Unsecured Creditors,[1] to the "*Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*" [D.E. 32] (the "DIP Motion").[2]  In support of the Objection, Underwriters state as follows:

---

[1] The Underwriters understand that the Committee is filing an objection to the DIP Motion contemporaneously herewith, but that same has not been filed as of the filing of the instant Objection.

[2] The DIP Motion was granted in an interim basis in the "*Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing, (B) Grant Senior Secured Liens Superpriority Administrative Expense Claims, and (C) Utilize Cash Collateral; (II) Granting Adequate Protection to the Prepetition Secured Parties; (III) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief*" which set the DIP Motion for final hearing on January 16, 2024 [D.E. 66] (the "Interim Order"). The Final Hearing was continued to January 22, 2024.  [D.E. 137]

## Introduction

1. Bird Global, Inc. and the jointly administered debtors[3] (collectively, the "Debtors"), are in the business of renting electric scooters to the general public. The Debtors continue to operate their businesses and manage their affairs as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2. The Debtors contracted with Underwriters to provide general liability insurance coverage related to the operation and use of their electric scooters.

3. The terms of coverage require the Debtors to defend liability claims and to cover the cost of that defense and any related losses as part of a self-insured retention provision ("SIR") before Underwriters becomes responsible to participate. Dependent on which policy year is triggered by the claim's individual date of loss, the policies' SIRs range from $250,000 to $1,000,000 for each individual claim. The current 2023-24 policy is subject to a $1,000,000 SIR.

4. The Debtors have not satisfied their SIR obligations under their respective insurance policies and the Debtors' interim cash collateral budget[4] (the "Budget") does not provide or account for the payment of any of the Debtors' SIR obligations on any going-forward basis which violates the terms of all of their insurance policies.

5. Accordingly, the Budget is objectionable, and the DIP Motion should be denied unless and until the Budget is modified to account for the Debtors' SIR obligations.

---

[3] The jointly administered debtors include Bird Global, Inc., Bird Rides, Inc., Bird US Holdco, LLC, Bird US Opco, LLC, and Skinny Labs, Inc.

[4] See Exhibit 1 to Interim Order.

## The DIP Motion Should be Denied

*The Insurance Contracts*

6. The Debtors purchased several liability policies from Underwriters (the "Policies"), for policy years ranging from 2020 through 2023.[5]

7. While specific terms of coverage under these Policies may vary from year to year, each of the Policies contain self insured retention ("SIR") provisions that range from $250,000 to $1,000,000 per incident depending on the policy year.

8. The SIR provisions require the insured – in this case the Debtors – to pay any and all costs[6] associated with defending and/or satisfying a claim until such time as the Debtors satisfy their SIR obligations. At that point, and only at that point, does the insurer assume any defense costs.

9. Put another way, there is no insurance coverage until losses exceed the SIR. Furthermore, failure to satisfy the SIR obligations violates the Policies.

*The Claims*

10. According to the Debtors, as of the filing of the instant case, there are in excess of 300 known claims pending against the Debtors - many of which are in active litigation and set for trial in the immediate future (the "Claims").

11. Dependent on the individual date of loss, each of these 300-plus Claims are subject to the individual SIRs that range from $250,000 to $1,000,000.

12. Based on the limited information available, the Debtors have not established that they have met any of their SIR obligations for these 300-plus Claims or otherwise under the Policies, nor

---

[5] Underwriters note that additional general liability policies exist pre-dating the 2020 policy year. However, for purposes of this Limited Objection, only the 2020 through 2024 are at issue.

[6] This includes all expenses associated with retaining and compensating defense counsel.

does the DIP Motion provide any information on how they plan to meet these obligations.[7] Indeed, the Debtors have conceded that they have no reserves budgeted to fund any of their SIR obligations nor have the Debtors contemplated that these obligations will be assumed and/or satisfied through any Section 363 sale process. The Debtors' financial advisor has conceded that the Budget is insufficient to pay the Debtors' obligations beyond the proposed Section 363 sale.

13. Notwithstanding the foregoing, the Debtors' reported value of certain of the 300-plus asserted Claims could significantly exceed the individual SIRs, thus triggering coverage under the subject policies.

14. In addition to claims and lawsuits asserted directly against the Debtors, there are a significant number of claims/lawsuits brought against certain municipalities which do not specifically name the Debtors as defendants. Nonetheless, the Debtors are contractually obligated to defend and indemnify these municipalities pursuant to contracts and/or licensing agreements with the municipalities. While not subject to the automatic stay, these claims are subject to the Policies' SIRs and Debtors' obligations under the same.

15. Indeed, there are multiple trials scheduled against these municipalities and for which Debtors owe a defense and indemnity obligation in the immediate future. At least one such trial against a municipality was scheduled to begin on January 29, 2024, with another fourteen (14) trials set for February, March, and April of this year. Although these cases are presently stayed, upon information and belief, some of these litigants intend to challenge the Court's January 26 *Order Granting Debtors' Emergency Motion to Extend the Automatic Stay and For a Preliminary Injunction* (the "Injunction Order").

---

[7] Underwriters continues to work with the Debtors to quantify the extent to which the SIR obligations have been met, but the Debtors have not yet been able to fully compile the information.

16. Even though the Debtors have taken up the defense of some of the Claims as required by the Policies, Underwriters have been informed and advised that a number of the law firms retained by the Debtors to defend the Claims have not been paid and/or have otherwise withdrawn or declined representation. Despite the entry of the Injunction Order and the multiple orders authorizing the retention of special litigation counsel, there are litigants who have requested and will continue to seek to have the automatic stay lifted to proceed against the Debtors' insurance proceeds.

17. If the Claims are not properly defended, the risk of adverse rulings is high as is the risk of otherwise unreasonably high verdicts against the Debtors.

18. Such a result would be prejudicial and damaging to Underwriters and the creditors of the Debtors because it can substantially increase the amount of the administrative claims in addition to the unsecured creditor pool.

19. It would also put at risk the licenses that the Debtors have with many municipalities where the Debtors operate as many of the Claims include municipalities as co-defendants. Losing their licenses would prove detrimental to any reorganization efforts.

20. Until it becomes clear the extent to which the Debtors have satisfied their SIRs, Underwriters cannot determine when and if their obligation to assume a defense or indemnify arises.

*The Budget*

21. Most important, however, is the fact that the current cash collateral budget does not contemplate funding the Debtors' significant SIR obligations arising from the Claims, a fact that has been confirmed by the Debtors.

22. Indeed, a review of the Budget reveals little to no information. The Budget categories are general in nature and the Budget appears to omit a variety of necessary operating expenses.

23. While Underwriters appreciate that the Budget is interim in nature, items as significant and as important as the Debtors' SIR obligations must be contemplated, quantified, and funded in order to maintain the Debtors' obligations under the Policies including the defense of the Claims.

24. Failure by the Debtors to fund the SIRs is careless and risky and could lead to drastic and irreparable consequences.

*Events of Default under DIP Financing*

25. Section 10.01(s) of the Senior Secured Priming and Super-Priority Debtor-in-Possession Loan Agreement and Section 9.8 of the Senior Secured Priming and Super-Priority Debtor-in-Possession Loan Note Purchase Agreement provides that entry of judgments against the Debtors in excess of $1,000,000 in the aggregate triggers an event of default.

26. These figures are inconsistent with the nature and value of the Claims and it is likely if not probable that events of default might occur sooner rather than later.

27. The likelihood is heightened by the real possibility that the Debtors may not have the ability to fund a defense of the Claims and have not accounted for the same in the Budget.

28. There is little logic or value associated with approving a debtor-in-possession debt facility under which events of default could be imminent.

## Conclusion

29. Accordingly, until such time as the Budget is amended to provide for the payment of the outstanding SIRs so that the Debtors remain in compliance with their obligations under the Policies and Claims can be properly defended, the Budget is insufficient, unreasonable, and should not be approved.

WHEREFORE, Underwriters respectfully requests the entry of an order (a) denying the DIP Motion unless and until the Budget is amended to adequately fund the Debtors' SIR obligations, and (b) granting such other and further relief as this Court deems appropriate under the circumstances.

Dated: February 1, 2024

Respectfully Submitted,

**MARKOWITZ, RINGEL, TRUSTY & HARTOG, P.A.**
9130 S. Dadeland Blvd., Suite 1800
Miami, FL 33156
Tel. (305) 670-5000
Fax. (305) 670-5011

By: */s/ Jerry M. Markowitz*
 Jerry M. Markowitz
 Florida Bar No. 182420
 jmarkowitz@mrthlaw.com
 Ross R. Hartog
 Florida Bar No. 272360
 rhartog@mrthlaw.com
 Rachel L. Rubio
 Florida Bar No. 564559
 rrubio@mrthlaw.com

-and-

**FIELDS HOWELL LLP**
Armando P. Rubio
Florida Bar No. 478539
9155 So. Dadeland Blvd.
Suite 1012
Miami, FL 33156
Tel. (786) 870-5600
Fax. (855) 802-5821
arubio@fieldshowell.com

*Counsel for Apollo Syndicate Management Limited; Apollo Group Holdings Limited; Apollo syndicate 1969; and Apollo syndicate 1971*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Limited Objection and Joinder to the Objection by the Official Committee of Unsecured Creditors to the *"Debtors' Emergency Motion for Interim and Final Orders (I) Approving Postpetition Financing, (II) Authorizing Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief"*, was served via the Court's CM/ECF to all counsel of record and interested parties registered to receive electronic noticing in this case on February 1, 2024.