**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:                                          Case No. 23-20514-CLC

BIRD GLOBAL, INC., *et al.*[1],                 Chapter 11

      Debtors.                               (Jointly Administered)

_____/

**CALIFORNIA PLAINTIFFS' OBJECTION TO DEBTORS'**
**FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION[2]**

**Summary of Argument**

Eleventh Circuit precedent allows third party releases in very limited circumstances where debtors can meet a high burden of showing that settling defendants would not have entered into the settlement agreement without the release, the bar order is integral to the settlement, and the release is fair and equitable. Here, Debtors propose a plan that creates a trust to pay tort claimants holding claims against non-debtor parties (which claimants are not creditors of the Debtors). The non-debtor parties are primarily municipalities that had contracts authorizing Debtors to operate in their cities. The claimants whose claims are against the municipalities only (and not the Debtors) are prosecuting causes of action for their substantial injuries caused by the cities' failure to maintain their roadways. Under the Debtors' plan, these causes of action will be extinguished. In exchange for receiving the benefit of the bar order, the cities make a minimal contribution proposed

---

[1] The address of the Debtors is 392 NE 191st St., #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).
[2] The California Plaintiffs file their objection on June 3, 2024, pursuant to an agreement with the Debtors, Purchaser, Underwriters, and certain Municipalities.

trust. The terms of this Plan are not fair and equitable, are not necessary to Debtors' plan of liquidation, and must not be confirmed.

The objecting California Plaintiffs, Brenda Wright, Lindsy Thompson, Marc Perkins-Carrillo, Gregory Buce, Borna Eslami, Tracy Squire, Benjamin Michael Palajac, John Francis Foley, Yaman Fejleh, and Destiny Smith, all sustained serious injuries while riding Bird scooters in Los Angeles, Santa Monica, and San Diego, California (together, the "Municipalities"). These injuries resulted from negligently maintained and designed roadways and other negligent conduct by the Municipalities and certain third-party contractors. The California Plaintiffs filed suits against the Municipalities and the culpable third parties prior to the Petition Date. The California Plaintiffs hold no claims, and have never asserted claims, against the Debtors (until they were forced to file claims against the proposed Trust or recover zero on account of their injuries if Debtors' unfair Plan were confirmed). The proposed Trust will only pay a tiny fraction of the damages suffered by the California Plaintiffs. On the other hand, if their claims are not barred by Debtors' Plan, they will obtain full recovery of their damages from the Municipalities which have plenty of assets to pay such judgments.

Debtors have neither made any effort to show that the third-party releases can meet the exacting standard for approval, nor have they provided authority that non-consensual third-party releases can be appropriate as against claimants who are not in fact creditors of the Debtors. The Municipalities contribute nothing to the tort claims trust, with no suggestion that they lack the means to do so. The plan, as proposed, provides a "free ride" to the Municipalities, at the expense of the victims of their negligence, who will never have their day in court if the third-party releases are approved. The plan further deprives the California Plaintiffs of their Seventh Amendment right to a jury trial and is premature given that the Supreme Court will likely soon change the standard

for, or bar, third-party releases after announcement of its decision later this month in the *Purdue Pharma* case. Because the third-party releases are not "fair and equitable," the California Plaintiffs respectfully request that the Court deny confirmation.

**Factual Background**

**The Permits and Indemnity Obligations**

The Debtors received permits from the Municipalities to operate their businesses within their jurisdictions. Those permits require the Debtors to indemnify the Municipalities for, among other things, the California Plaintiffs' claims (even if the Debtors had no fault for such damage). These indemnification obligations contributed to the events leading to the filing of these bankruptcy cases. *See* First Day Declaration, ECF No. 31, ¶ 67. As examples of the extent of these obligations, the City of Los Angeles filed a proof of claim for roughly $76 million, and the City of San Diego filed a proof of claim for roughly $47 million.

**The Debtors' Plan and Disclosure Statement**

The Debtors' *First Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 643] (the "Plan") provides non-consensual third-party releases to the Municipalities for all claims held by the California Plaintiffs. The proposed consideration for these releases is that the Settling Insurers[3] will buy back the $43+ million insurance policies for $12 million. That $12 million will fund a trust for the benefit of the holders of Tort Claims, including the California Plaintiffs. The Plan defines "Tort Claims" to include claims against the Debtors as well as claims against the Municipalities.

The Municipalities, who receive releases under the Plan, will not pay any consideration for such releases. Neither the Plan nor the Disclosure Statement provide any information on why

---

[3] Capitalized terms not otherwise defined herein shall have the meaning given them in the Plan.

the Municipalities should receive releases without providing any consideration. Prior to filing their Plan, no effort was made by the Debtors to negotiate with the various plaintiffs to obtain their input or consent to having their claims terminated in exchange for participating in a trust that will pay only a very small percentage of their claims. The Debtors state that there are approximately 211 lawsuits that will have to share in the proposed $12 million which works out to approximately $57,000 per claimant. As set forth in the declarations of the California Plaintiffs, they each have millions of dollars of damages.

The Debtors have not objected to the claims of the Cities of Los Angeles and San Diego, and the Plan does not provide for the waiver of either claim. Accordingly, the Cities of Los Angeles and San Diego will participate in the distribution to general unsecured creditors and escape liability for their negligence which lead to the California Plaintiffs' damages.

In § 13.7(b), the Plan includes a release by all *creditors* of the Debtors' management. Neither the Plan nor the Disclosure Statement provide any information on what consideration those parties will provide in exchange for such releases.

The Liquidation Analysis attached as Exhibit 2 to the Disclosure Statement [ECF No. 642] does not include any information about any insurance which might be available for the benefit of creditors, the value of any prepetition causes of action, an estimate of the potential Talon Claim Proceeds, the value of potential claims against the Debtors' directors and officers and available insurance coverage, or any analysis of potential Chapter 5 claims not released as part of the sale of the Debtors' assets. The insurance policies to be canceled under the proposed agreement exceed $43 million. The beneficiaries of these policies are the Debtors and the Municipalities. To the extent that the claims of the various plaintiffs exceed the insurance coverage, that is a risk that should be borne by the Debtors and the Municipalities that chose not to pay for additional

coverage. Upon information and belief, the Municipalities have applicable insurance coverage far in excess of that disclosed in the Plan or Disclosure Statement. Regardless, the Municipalities should bear the burden of compensating for injuries that result from the Municipalities' negligence, not the injured parties.

**The Tort Claim ADR Procedures**

The Plan provides for the Tort Claim ADR Procedures for the purpose of liquidating Tort Claims. The Tort Claim ADR Procedures provides that if the Tort Claims Trustee and a holder of a Tort Claim are unable to consensually liquidate a Tort Claim, then the Tort Claims Trustee and the holder of the Tort Claim will submit the dispute to binding arbitration. The Tort Claim ADR Procedures do not provide for the liquidation or estimation of Tort Claims, including those held by the California Plaintiffs, by jury trial in the District Court or appropriate state court.

**Different Tort Claims**

While the Plan lumps together all claims sounding in tort, those claims differ significantly in their underlying legal and factual bases and potentially culpable parties. The California Plaintiffs generally assert claims against certain Municipalities resulting from those Municipalities' negligent maintenance of roadways. Other claimants allege theories based on strict products liability, breach of the warranty of fitness for a particular purpose, breach of the warranty of merchantability against the Debtors, various Municipalities, and the scooters' manufacturer.

Unlike many other claimants, the California Plaintiffs do not hold any claims against the Debtors. The California Plaintiffs suffered their injuries as a result of certain Municipalities' conduct rather than the Debtors. While other creditors hold claims against the insolvent Debtors, the California Plaintiffs hold claims against solvent Municipalities. However, the Plan places all Tort Claims in Class 6 despite their underlying dissimilarity.

{2511/000/00582017}                                    5

**The Variety of Insurance Coverage**

Depending on the date of injury, different Tort Claims fall under separate insurance policies. Those policies carry varying SIR Obligations. The Disclosure Statement includes the following chart to summarize available insurance coverage:

| Policy Year | Policy Name | SIR | Total Pending Cases | Pending PI Cases | Pending City Cases | Limits Remaining (approximate) |
|---|---|---|---|---|---|---|
| 3/1/2018-2/28/2019 | Great American | N/A | 39 | 39 | 0 | $2.8M |
| 3/1/2019-1/31/2020 | AIG | N/A | 37 | 29 | 8 | $1M |
| 2/1/2020-5/31/2021 | Underwriters | $250K | 38 | 21 | 17 | $10M |
| 6/1/2021-5/31/2022 | Underwriters | $250K | 46 | 28 | 18 | $10M |
| 6/1/2022-7/31/2023 | Underwriters | $500K | 25 | 17 | 8 | $10M |
| 8/1/2023-6/30/2024 | Underwriters | $1M | 2 | 1 | 1 | $10M |

The Disclosure Statement reveals $43.8 million in available coverage for 187 pending cases, of which 52 are against Municipalities. Of those totals, 76 cases, or roughly 40.6% of total cases, fall within policy years for which only $3.8 million in coverage remains, or roughly 8.6% of total coverage. For the remaining policy years, the SIR Obligations range from $250,000 to $1 million. Despite these differences in available coverage, the Plan provides for all Tort Claims to receive pro rata distributions from a single pot regardless of the fact that 40.6% of total claims have rights against only 8.6% of insurance coverage.

**Legal Argument**

Under 11 U.S.C. § 524€, the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." The Eleventh Circuit,

however, does permit non-debtor releases "under some circumstances" pursuant to 11 U.S.C. § 105(a). *SE Prop. Holdings, LLC v. Seaside Eng'g & Surveying (In re Seaside Eng'g & Surveying)*, 780 F.3d 1070, 1076-77 (11th Cir. 2015); *Munford v. Munford (In re Munford)*, 97 F.3d 449, 455 (11th Cir. 1996). Such bar orders "ought not to be issued lightly," but instead "cautiously and infrequently," and only where "essential, fair, and equitable." *In re Seaside*, 780 F.3d at 1078, 1079; *see also In re Transit Grp.*, 286 B.R. 811, 818 (Bankr. M.D. Fla. 2002) (explaining that non-debtor releases are the "exception, not the norm," which should not be approved "unless some extraordinary reason is proven"). The inquiry of whether a bar order is appropriate is "fact intensive in the extreme." *In re Seaside*, 780 F.3d at 1079.

The Eleventh Circuit has set forth factors a bankruptcy court should assess when evaluating the appropriateness of a bar order in two different scenarios: one in which a bar order was "essential for a litigation settlement" (the *Munford* factors) and the other in which a bar order was an "integral part of a reorganization plan" (the *Seaside* factors). *See Markland v. Davis (In re Centro Grp., LLC)*, 2021 U.S.App.LEXIS 32962, at *5-6 (11th Cir. Nov. 5, 2021) (citing *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449, 455 (11th Cir. 1996) [litigation settlement]; *In re Seaside*, 780 F.3d at 1077 [reorganization plan]).

Here, the *Seaside* factors, which apply to reorganization cases, are clearly inapplicable. The Debtors have already sold substantially all their assets and filed a plan of liquidation. *See In re Seaside*, 780 F.3d at 1078 (noting that bar orders should be reserved for those "unusual cases in which such an order is necessary for the success of the reorganization, and only in situations in which such an order is fair and equitable under all the facts and circumstances"); *see also In re Centro Grp.*, 2021 U.S.App.LEXIS 32962, at *9 (explaining that the *Seaside* factors apply to bar orders that are specifically within the reorganization context).

Moreover, the Debtors' sales of their assets did not include assumption and assignment of their permits and contracts to operate in the subject Municipalities. If they had, then the Debtors would have had to have cured any defaults and provided adequate assurance of future performance that the judgments obtained against the Municipalities would be indemnified (*i.e.*, that the California Plaintiffs would recover from the Municipalities and then the Debtors would repay the Municipalities under their indemnification agreements).

Because the *Seaside* factors do not apply, the release of the Municipalities must satisfy the *Munford* standard (unless overturned or modified by the Supreme Court's forthcoming decision in *Purdue Pharma*). The *Munford* factors generally apply to bar orders assessed in the settlement context. *In re Centro Grp.*, 2021 U.S.App.LEXIS 32962, at *9. Such a bar order is appropriate only where the settling defendant "would not have entered into the settlement agreement" without it, and where the bar order is "integral to the settlement in an adversary proceeding." *In re Seaside*, 780 F.3d at 1076 (quoting *Munford*, 97 F.3d at 455). Further, a bar order should only be entered where essential, fair, and equitable. *In re Seaside*, 780 F.3d at 1079 (citing *In re Munford*, 97 F.3d at 455). As discussed in more detail below, none of the required factors are present and limiting the California Plaintiffs' ability to recover on account of their substantial damages against non-debtor Municipalities is grossly unfair and inequitable.

A debtor seeking non-debtor releases bears the high burden of showing that such releases are appropriate. *See In re Transit Grp.*, 286 B.R. 811, 817-18 (Bankr. M.D. Fla. 2002) (placing the burden on the debtor to demonstrate that unusual circumstances exist and that the non-debtor release was fair and necessary based on the factors).

**A. Any decision regarding the third-party releases should be postponed pending the Supreme Court's imminent decision in *Purdue Pharma*.**

As this Court is aware, the Supreme Court will likely issue its ruling in *Purdue Pharma* in June 2024. The Supreme Court granted certiorari on the following issue: "Whether the Bankruptcy Code authorizes a court to approve, as part of a plan of reorganization under Chapter 11 of the Bankruptcy Code, a release that extinguishes claims held by nondebtors against nondebtor third parties, without the claimants' consent." *See William K. Harrington v. Purdue Pharma L.P., et al.*, Case No. 23-124 (Sup. Ct. Aug. 10, 2023).

In the event that this Court confirms the Plan and approves the third-party releases, the decision will be subject to automatic reversal on appeal should the Supreme Court abrogate the Eleventh Circuit's decision in *Munford*. *See generally United States v. Dunlap*, 2024 U.S.App.LEXIS 11757, at *2 (11th Cir. May 15, 2024) (discussing the prior panel precedent rule, under which a prior panel's holding is binding until it is overruled or undermined to the point of abrogation by the Supreme Court or the Eleventh Circuit sitting *en banc*).

Good reasons exist to expect that the Supreme Court will limit or eliminate third-party releases, including:

1) The Bankruptcy Code expressly authorizes such releases in the asbestos context but not in other contexts. *See* 11 U.S.C. § 524(g).

2) Other circuits prohibit third-party releases (outside the asbestos context). *See Resorts Intl' v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995), *cert denied*, 517 U.S. 1243 (1996) (holding that approval of a global release provision was contrary to 11 U.S.C. § 524(e)); *In re W. Real Est. Fund, Inc.*, 922 F.2d 592, 600 (10th Cir. 1990) (prohibiting third-party releases); *Bank of N.Y. Tr. Co., NA v. Official Unsecured Creditors' Comm. (In re Pac. Lumber Co.)*, 584 F.3d 229, 252 (5th Cir. 2009) ("Section 524(e) only releases the debtor, not co-liable third parties.").

3) 11 U.S.C. § 105(a)'s plain language suggests that it can only augment other Bankruptcy Code provisions and as such cannot serve as statutory authority for third-party releases.

4) Direct claims held by third parties against non-debtors are not proceedings that "aris[e] under" the debtor's bankruptcy case for purposes of 28 U.S.C. § 1334's delineation of federal courts' bankruptcy jurisdiction.

5) The third-party claims are non-core for purposes of 28 U.S.C. § 157(b) and, absent a non-debtor release, would be pursued in District Court or state court. The California Plaintiffs will file an objection to final orders contemporaneously herewith.

6) Non-consensual third-party releases deprive plaintiffs of their fundamental right to maintain a lawsuit. *See Corfield v. Coryell*, 6 F.Cas. 546, 551-52 (Cir. Ct., E.D. Pa. 1823) (noting a fundamental right to institute and maintain actions of any kind in the courts of the state).

Accordingly, the operative law will likely change significantly between the filing of this Objection and the Supreme Court's decision in *Purdue Pharma*.

**B. The Plan does not satisfy the *Munford* factors.**

Applying the *Munford* factors to this case, the Debtors fail to provide evidence why the bar order, channeling injunction, and releases in favor of the Municipalities are appropriate or even sought. Debtors, for instance, do not explain that the Municipalities would not have entered into the settlement agreement without the releases, nor do Debtors contend that the bar order is integral to the settlement agreement. In fact, the Municipalities contribute no funds to the Tort Claims Trust, bringing into question why the bar order is, in fact, essential. The Municipalities may argue they are contributing to the Plan by consenting to the buyback of the insurance policies. However,

the Debtor, Underwriters, and Municipalities have not provided any justification for why it is necessary to structure the settlement as a buyback of the policies rather than having the Underwriters making a payment in exchange for a release solely from the Debtor and allowing the policies to remain in place as to the Municipalities. The Debtors also disclose that the extent of the Municipalities' right to indemnification is disputed. Yet, the Debtors seek to provide a complete release to the Municipalities without the Municipalities contributing on account of any non-indemnified claims.

Further, the Plan cannot possibly satisfy the "fair and equitable" standard. The California Plaintiffs have suffered severe, life-altering injuries and allege that the negligence of the Municipalities or other non-debtor defendants caused these injuries. To be clear, none of the California Plaintiffs hold or assert claims against the Debtors—they only seek to establish independent liability against the Municipalities or other non-debtor defendants, alleging, generally, that defects in the roadways caused their injuries. The California Plaintiffs assert those independent claims against solvent entities subject to collection. The California Plaintiffs have discovered no legal authority to support a non-consensual release of claims against solvent entities where no bar to collection exists.

Submitted in support of this confirmation objection are declarations regarding the injuries sustained by each of the California Plaintiffs, including photographs of some of the injuries. These declarations substantiate the California Plaintiffs' collective assertion of claims totaling tens of millions of dollars. The severity of the injuries also underscores the importance of each of the California Plaintiffs at the very least receiving his or her day in court. *See generally Corfield v. Coryell*, 6 F.Cas. 546, 551-52 (Cir. Ct., E.D. Pa. 1823) (noting a fundamental right to institute and maintain actions of any kind in the courts of the state).

A Tort Claims Trust containing $12 million to pay hundreds of tort claims will be woefully inadequate for the California Plaintiffs (and for other tort claimants).

Debtors will derive no benefit from the releases given to non-debtor parties. Rather, Debtors realized the value of their assets through the sale to the Buyer, without assuming and assigning any agreements with the Municipalities, and they have now filed a liquidation plan. There is no need for Debtors to uphold its contractual obligations with the Municipalities, nor does Debtor need to maintain the permits to operate with the Municipalities. Rather, the releases appear to inure exclusively to the benefit of non-debtor parties, including the Municipalities, the Settling Insurers, and the Purchaser. Such releases fail to meet the "essential" factor required by *Munford*.

Debtors submitted no evidence that the Municipalities lack the ability to make a meaningful contribution to the Tort Claims Trust. It instead appears that they want a free discharge of tens of millions of dollars of tort liability, without having to contribute to the Plan or filing their own Chapter 9 cases. Debtors provide no authority that third-party releases are appropriate as against parties who do not even hold or assert claims against the bankruptcy estate. The third-party releases at issue, as such, epitomize an unfair and inequitable plan.

To the extent the non-debtor parties have indemnification claims against the Debtors, the Debtors can deal with such debt through their liquidation plan. That was the bargain and risk that the Municipalities assumed when contracting with Debtors for indemnification regarding claims for which Debtors did not even have liability. To the extent such claims are large and affect the distributions to other creditors of the Debtors, that is of no import. Such claims are the Debtors' actual liabilities, and all creditors should receive *pro rata* distributions (instead of the current proposal to provide a windfall to other creditors at the expense of the non-creditors, California Plaintiffs).

**C. The Tort Claims ADR Procedures Violate the California Plaintiffs' Constitutional Right to a Jury Trial**

The Seventh Amendment of the U.S. Constitution provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." The Bankruptcy Code does not affect a personal injury claimant's right to a jury trial; 28 U.S.C. § 1411(a) provides, with an exception not applicable here, that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."

Title 28 U.S.C. § 157(b)(2)(B) excludes from the definition of "core proceedings" "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11." Section 157(b)(2)(O) likewise excludes "personal injury tort or wrongful death claims." 28 U.S.C. § 157(b)(2)(O). And, 28 U.S.C. § 157(b)(5) provides that the "district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending." *See also In re N. Am. Health Care, Inc.*, 544 B.R. 684 (Bankr. C.D. Cal. 2016) (noting that if the plan somehow made it uneconomic for a jury trial to go forward, the tort claimants would effectively be deprived of their Seventh Amendment right to a jury trial, which would be unfair, prejudicial, and an outcome to be avoided); *In re G-I Holdings, Inc.*, 323 B.R. 583, 607-16 (Bankr. D.N.J. 2005) (holding that personal injury tort claimants have a right to jury trial); *In re Pac. Gas & Elec. Co.*, 279 B.R. 561, 564, 571 (Bankr. N.D. Cal. 2002)

(indicating that there is "no dispute that the authority to liquidate [personal injury] claims rests with the district judge, not with the bankruptcy judge," and that § 1411 preserves the right to jury trial on personal injury claims); *In re Poole Funeral Chapel, Inc.*, 63 B.R. 527, 532 (Bankr. N.D. Ala. 1986) (highlighting that sections 157(b)(2)(B), (b)(2)(O), and (b)(5) make clear that the Bankruptcy Code prevents bankruptcy courts from trying personal injury tort and wrongful death actions).

The California Constitution also guarantees a right to a jury trial. *Jogani v. Superior Court*, 165 Cal.App.4th 901, 905 (2008) (citing Cal. Const., art. I, § 16). As a general proposition, the jury trial is a matter of right in a civil action at law, but not in equity. *Id.*

Here, to the extent the Plan attempts to liquidate the personal injury tort claims, including those of the California Plaintiffs, without jury trials through the Tort Claim ADR Procedures, it runs afoul of both the Seventh Amendment and the United States Code and cannot be confirmed.

### D.  The Plan Improperly Classifies the Tort Claims

11 U.S.C. § 1122(a) provides that a plan may classify claims together "only if such claim or interest is substantially similar to the other claims or interests of such class. "Substantially similar" claims are those "which share common priority and rights against the debtor's estate." *In re Greystone III J.V.*, 995 F.2d 1274, 1278 (5th Cir. 1991). The California Plaintiffs do not share common priority and rights against the Debtors' estate. As an initial matter, the California Plaintiffs have no rights against the Debtors' estates because the California Plaintiffs have no claims against the Debtors. Rather, other holders of Tort Claims have rights against the Debtor. Further, the California Plaintiffs hold claims against solvent non-debtor entities and, outside of bankruptcy, would recover the full value of their claims. As the California Plaintiffs have "alternative means at [their] disposal for protecting [their] claim[s]," their claims are not substantially similar to Tort Claims asserted solely against the

Debtors. *See In re U.S. Truck Co., Inc*, 800 F.2d 581, 587 (6th Cir. 1986). "If the plan unfairly creates too many or too few classes … the plan cannot be confirmed." *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990). Here, the Plan creates too few classes. Assuming the Debtors can include the California Plaintiffs' claims in the Plan, the Debtors must do so by separate classification.

The Plan also inappropriately classifies Tort Claims arising out of different years. As the funding for the Tort Claims Trust comes from insurance payments, the Plan should separately classify Tort Claims according to the insurance policy years so that the holders of certain Tort Claims will not improperly share in insurance proceeds which they have no right to outside of the Plan.

**E.  Request for Conversion or Dismissal or, in the alternative, Relief from the Automatic Stay to Establish Independent Liability against the Municipalities and Other Non-Debtor Defendants.**

Pursuant to Confirmation Procedures Order [ECF No. 644], the California Plaintiffs request the Court convert or dismiss the Debtors' cases. Nothing remains to be done in the chapter 11 case. The Debtors have proposed a liquidating plan that appears designed to benefit the Underwriters, Purchasers, and Municipalities rather than creditors. Further, the Debtors seek to provide releases to prepetition management rather than pursuing any actions for violation of management's fiduciary duties. A chapter 7 trustee can investigate and pursue the Debtors' causes of action without improperly seeking a release of non-creditor claims against non-debtor entities.

In the alternative, the California Plaintiffs request relief from the automatic stay to pursue their claims against non-debtor entities without further interference from the Debtors' bankruptcies.

"[I]n situations where a codefendant is independently liable as, for example, where the debtor and another are joint tortfeasors or where the nondebtor's liability rests upon his own breach of a duty, then the protection afforded a debtor under the automatic stay would clearly not extend to such nondebtor." *In re Metal Ctr., Inc.*, 31 B.R. 458, 462 (Bankr. D. Conn. 1983) cited with approval by *Peevy v. Jerace*, No. 17-81026-CIV-MARRA, 2017 U.S. Dist. LEXIS 237910 (S.D. Fla. Dec. 21, 2017) [stay as to non-debtors denied]; *Brent v. Source Interlink Distribution, LLC*, No. 2:14-cv-52-FtM-38DNF, 2014 U.S. Dist. LEXIS 116609 (M.D. Fla. Aug. 21, 2014) [same]; and *Jerome v. Hertz Corp.*, No. 2:12-cv-610-FtM-38DNF, 2013 U.S. Dist. LEXIS 180099 (M.D. Fla. Dec. 24, 2013) [same].

In *Mims v. Wal-Mart Stores, Inc.*, 2012 U.S.Dist.LEXIS 194014 (N.D. Ala. Apr. 13, 2012), David and Donna Mims (together, the "Mims") filed a complaint against Blitz U.S.A., Inc. ("Blitz") and Wal-Mart Stores, Inc. ("Wal-Mart"), alleging that a gas container manufactured by Blitz and sold by Wal-Mart exploded, causing injury to David Mims. *Id.* at *2-3. The Mims asserted several claims against Blitz and several separate and additional claims against Wal-Mart, and Donna Mims asserted a claim against both defendants for loss of consortium. *Id.* at *3. On November 9, 2011, Blitz filed a Chapter 11 bankruptcy petition, automatically staying the Mims' claims against it. *Id.* at *3-4. Wal-Mart then filed a motion before the district court to extend the stay to it, asserting that claims against it were really claims against Blitz. *Id.* at *4. Specifically, Wal-Mart contended that a "Supplier Agreement" it had entered into with Blitz required Blitz to indemnify it for any judgment that may be contained against it. *Id.* at *6-7. The Mims responded that they were suing Wal-Mart for its own conduct in connection with the sale of the gas storage container, and as such there was no identity of interest between Wal-Mart and Blitz. *Id.* at *6.

The court noted that the power to grant or deny a request to stay the proceeding was in its discretion. *Id.* at *4. The court found that the "unusual circumstances" exception did not apply because the Mims' claims against Wal-Mart were "separate and independent of their claims against Blitz." *Id.* at *8. According to the court, the claims against Wal-Mart did not derive from the claims against Blitz, nor did they depend on any finding of liability against Blitz. *Id.* Instead, the Mims asserted their claims against Wal-Mart on Wal-Mart's own action; namely, having sold the Blitz gas container. *Id.*

The court further highlighted that whether Wal-Mart was able to access Blitz's insurance proceeds was not the Mims' concern, nor was it a justifiable basis for staying the case. *Id.* at *9. The court noted that Wal-Mart's contractual agreement with another party "simply [was] not a valid reason to stay Plaintiffs' claims and subject them to indefinite delay." *Id.* According to the court, "the mere existence of an indemnity clause alone has never been deemed sufficient to justify staying the case as to a non-debtor defendant." *Id.* at *11. And, the court did not find that granting a stay would promote judicial efficiency and result in no harm or prejudice to the Mims, who would only suffer further delay in pursuit of their independent legal claims against Wal-Mart. Id. As such, the court denied Wal-Mart's motion to stay. *Id.* at *12.

Here, the Municipalities and other non-debtor defendants are independently liable for the California Plaintiffs' damages should they prove that the non-debtors failed to properly maintain the roadways. Whether Debtors have any liability to the non-debtor defendants under the indemnification agreements does not alter this fact. The appropriate remedy after denial of plan confirmation should be to lift the stay imposed by this Court by emergency motion in Adversary Case No. 1:24-ap-01010 and the present injunction barring the California Plaintiffs from

establishing independent liability against exclusively non-debtor parties should be terminated.

**Conclusion**

As set forth above, it is manifestly unfair and inequitable to confirm the proposed Plan which terminates and bars the California Plaintiffs' claims against non-Debtors including the Municipalities. This is especially true where the California Plaintiffs did not even sue the Debtors and have not alleged that Debtors were in any way liable for their life-altering injuries. Such a term is not essential in liquidation cases such as the present ones. Moreover, the Plan is not fair and equitable to the various plaintiffs. The Plan provides a benefit to the non-debtor Municipalities who are not paying anything in exchange for receiving such tremendous benefits, provides a benefit to the various insurance carriers who are escaping liability under the subject policies for a fraction of policy limits, and does not provide any benefit to the Debtors which will simply be paying creditors from the pot of money realized from the liquidation of their assets.

For the reasons stated above, the California Plaintiffs respectfully request that this Court deny Plan confirmation and convert or dismiss these cases or, in the alternative, grant the California Plaintiffs relief from stay.

## RESERVATION OF RIGHTS AND JOINDER IN OBJECTIONS

The California Plaintiffs reserve the right to raise other and further objection to the Plan, including any amendments, modifications, and supplements thereto. To the extent applicable, the California Plaintiffs join in any other objections to confirmation of the Plan filed or raised by the holders of Tort Claims.

Respectfully submitted,

**MARSHACK HAYS WOOD LLP**
D. Edward Hays (Pro Hac Vice)
Bradford N. Barnhardt (Pro Hac Vice)
870 Roosevelt
Irvine, California 92620
Telephone: 949-333-777
Facsimile: 949-333-7778
ehays@marshackhays.com
bbarnhardt@marshackhays.com

In Association with,

**SHRAIBERG PAGE P.A.**
Attorneys for the California Plaintiffs
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law
shess@slp.law

By:   */s/ Bradley S. Shraiberg*
Bradley S. Shraiberg
Florida Bar No. 121622
Samuel W. Hess
Florida Bar. No. 1044184

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on June 3, 2024.

*/s/ Bradley S. Shraiberg*