UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 |
| BIRD GLOBAL, INC., et al., | Case No. 23-20514-CLC |
| Debtors. | Jointly Administered |
| _____/ | |

**DECLARATION OF MICHAEL WASHINUSHI IN SUPPORT OF CONFIRMATION OF SECOND AMENDED PLAN AND APPROVAL OF THE UNDERWRITERS' INSURANCE SETTLEMENT AGREEMENT**

1. My name is Michael Washinushi. I am over 21 years of age and fully competent to make this declaration (the "Declaration"). Unless otherwise stated, I have personal knowledge of the facts set forth in this Declaration.

2. I am the co-chief executive officer of Third Lane Mobility, Inc., f/k/a Bird Scooter Acquisition Corp., and its subsidiaries, including Blue Jay Transit, Inc. (collectively, the "Purchaser").

3. Pursuant to this Court's *Order (I) Authorizing and Approving (A) the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims and Encumbrances, and (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (II) Granting Related Relief* [ECF No. 464] (the "Sale Order"), the Court approved the sale of substantially all of the Debtors' assets to the Purchaser. The closing of the sale of the Debtors' assets occurred on March 22, 2024, and the Purchaser has been operating its business since then.

4. I am authorized to submit this Declaration on behalf of the Purchaser in support of, as applicable, (i) final approval of the *Second Amended Disclosure Statement for Debtors Second*

*Amended Joint Chapter 11 Plan of Liquidation*, dated June 3, 2024 [ECF No. 801] (as it may be amended, modified, or supplemented, the "Disclosure Statement"); (ii) confirmation of the Debtors' *Second Amended Joint Chapter 11 Plan of Liquidation*, dated June 3, 2024 [ECF No. 802] (as it may be amended, modified, or supplemented, the "Second Amended Plan"); and (iii) approval of the Underwriters' Insurance Settlement Agreement (as defined in the Second Amended Plan).[1]

5. Unless otherwise indicated, all facts set forth in this Declaration are based upon: (i) my personal knowledge; (ii) my experience, knowledge, and information as the co-chief executive officer of the Purchaser and its business operations; (iii) my involvement in the settlement discussions leading up to Global Settlement Term Sheet, which was incorporated into the Second Amended Plan, (iv) my involvement in the settlement discussions leading up to the Underwriters' Insurance Settlement Agreement; (v) information provided to me by employees and agents of the Purchaser working with me or under my direction; and (vi) as to matters involving United States bankruptcy law or rules or other applicable laws, my reliance on the advice of counsel. If I were called upon as a witness, I could and would testify competently to the facts set forth herein.

6. I am familiar with the terms and conditions of the Second Amended Plan as they relate to the Purchaser. I am also familiar with the terms and conditions of the Underwriters' Insurance Settlement Agreement as they relate to the Purchaser.

7. The Second Amended Plan and the Underwriters' Insurance Settlement Agreement are each the result of a collaborative effort between, among others, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), the Purchaser, the Municipalities, and Underwriters. From the Purchaser's perspective, the negotiations leading to the Second Amended

---

[1] All capitalized terms used herein and not otherwise defined herein shall have the meaning set forth in the Second Amended Plan.

Plan and the Underwriters' Insurance Settlement Agreement were extensive, at arm's-length and in good faith.

8. With respect to the Second Amended Plan and the Global Settlement Term Sheet, the Purchaser provided the Additional DIP Funding as part of the agreements reached with the Debtors and the Committee in the Global Settlement Term Sheet. Pursuant thereto, the Purchaser funded the Additional DIP Funding in an amount equal to $2,220,000 to the Debtors at the closing of the purchase by the Purchaser of substantially all of the Debtors' assets. In connection therewith, the Purchaser agreed to the proposed treatment of the Additional DIP Funding Claim as set forth in Class 3 of the Second Amended Plan.

9. I understand that the Additional DIP Funding is required by the Debtors in order to enable the Second Amended Plan to be confirmed, including to pay Allowed Priority Claims and certain Professional Compensation Claims.

10. As a condition to providing such Additional DIP Funding and the proposed repayment treatment related thereto as set forth in the Second Amended Plan, the Purchaser negotiated in good faith for the release by the Debtors of certain persons related to the Purchaser under the Second Amended Plan, including, without limitation, the Purchaser Parties, the Junior DIP Parties, the Junior DIP Agent, John Ivan Bitove, Kevin Talbot, Antonio Occhionero, Philip Evershed, Philip Ryan, Racquel Russell, Jim Mutrie (subject to the qualifications set forth in the Second Amended Plan), Robert Comin, John Jason Bitove, Stewart Lyons, Michael Washinushi, H. Joseph Prodan, and Clint Johnson.

11. With respect to the Second Amended Plan and the Underwriters' Insurance Settlement Agreement, the Purchaser agreed to fund an amount equal to $2,000,000 of the Insurance Settlement Proceeds, which amount is being advanced by Underwriters to the Purchaser and is

required to be repaid by the Purchaser to Underwriters (the "Purchaser's Contribution").  The Purchaser agreed to fund the Purchaser's Contribution, in part, in order to settle claims that were asserted it for allegedly having assumed, as part of the assignment of permits to the Purchaser, certain indemnification obligations to the Municipalities for tort claims arising prior to the Purchaser's acquisition of the Debtors' assets.  In addition, the Purchaser agreed to fund the Purchaser's Contribution, in part, on behalf of the Municipalities in order for the Municipalities to obtain the benefits of the Underwriters' Insurance Settlement Agreement because the Purchaser continues to do business in such Municipalities.

12. In exchange for funding the Purchaser's Contribution, the Purchaser requires that the Bar Order and the Channeling Injunction set forth in the Underwriters' Insurance Settlement Agreement be granted and approved by the Court, including in favor of the Purchaser and the Municipalities.  The Bar Order and the Channeling Injunction are an integral and mandatory part of the Underwriters' Insurance Settlement Agreement from the perspective of the Purchaser.  To that end, if the Bar Order and Channeling Injunction were not part of the benefits to the Purchaser and the Municipalities, among others, under the Underwriters' Insurance Settlement Agreement and the Second Amended Plan, then the Purchaser would not have agreed to fund the Purchaser's Contribution.

### 28 U.S.C. § 1746 Declaration

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed this the 6th day of June, 2024.

/s/ Michael Washinushi
Michael Washinushi