UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

Bird Global, Inc., *et al*[1],                    Case No. 23-20514-CLC

    Debtors.                                        Chapter 11

_____/

### EMERGENCY MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL

**Basis for Emergency Relief:**

**The California Plaintiffs request a hearing as soon as possible. On August 2, 2024, the Court entered the Confirmation Order [ECF No. 1205] which provides for the immediate effectiveness of the Debtors' Plan. If the Debtors immediately consummate the Plan, the California Plaintiffs may lose all appellate remedies. A hearing is currently scheduled for August 7, 2024, at 11:00 a.m. on the California Plaintiffs' Motion to Reconsider the waiver of the Rule 3020 14-day stay.**

Brenda Wright, Lindsy Thompson, Marc Perkins-Carrillo, Gregory Buce, Borna Eslami, Tracy Squire, Benjamin Michael Palajac, John Francis Foley, Yaman Fejleh, and Destiny Smith (collectively, the "California Plaintiffs"), pursuant to Fed. R. Bankr. P. 8007, request the Court stay the Confirmation Order [ECF No. 1205] pending appeal. In support, the California Plaintiffs state as follows:

#### SUMMARY

1. On July 29, 2024, the Court held a status conference on confirmation of the *Debtors' Second Amended Joint Chapter 11 Plan of Liquidation* [ECF No. 802] (the "Plan") following the Supreme Court's decision in *Harrington v. Purdue Pharma L.P.*, 144 S. Ct. 2071

---

[1] The address of the Debtors is 392 NE 191st St., #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

(2024). At the status conference, the Court issued its ruling whereby the Court ruled that *Munford* survives *Purdue* because *Munford* concerned bar orders in the context of settlements rather than third-party releases in connection with a plan of reorganization. The Court also overruled all other objections to confirmation, including the California Plaintiffs' objections based on classification and constitutional concerns.

2. The California Plaintiffs contend the Court's rulings in connection with confirmation included four chief issues for appeal. First, the Court rejected the application, in the settlement context, of *Purdue's* clear statement that "nothing in the bankruptcy code" authorizes the non-consensual extinguishment of non-debtors' claims against non-debtor entities. 144 S. Ct. at 2086. Second, the Court should not have allowed the testimony of Brad Safon ("Safon") when Safon failed to consider sufficient data, apply reliable principles and methods, or follow binding Eleventh Circuit precedent as to valuing unliquidated claims. Third, the Court improperly concluded that the California Plaintiffs' claims against solvent non-debtors are substantially similar to tort claims against the Debtors under 11 U.S.C. § 1122(a). Fourth, the Court entered a final order approving the Bar Order and Channeling Injunction in contradiction of 28 U.S.C. § 157 and Article III.

3. Without a stay, the California Plaintiffs will likely suffer irreparable injury because the specter of equitable mootness may eliminate the availability of appellate relief. In contrast, the Debtors and other parties in interest will not suffer any substantial harm because the Debtors are not an operating entity. A stay will effect a standstill of a case already at a standstill. Finally, no harm will befall the public interest. Rather, a stay will preserve the ability of appellate courts to answer a question of great public importance: what is the practical effect of *Purdue Pharma*? The California Plaintiffs intend to seek a direct appeal to the Eleventh Circuit so that the Eleventh

Circuit can rule on the continued viability of its own precedent. Accordingly, the California Plaintiffs are entitled to a stay pending appeal. *In re Woide*, 730 Fed. App'x 731, 737 (11th Cir. 2018).

## ARGUMENT

4. "A stay pending appeal is an 'extraordinary remedy' and the party seeking it must show: "(1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to them unless the stay is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *In re Woide*, 730 Fed. App'x at 737 (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000)) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015)).

5. While Courts consider all four factors, the first two are most critical. *In re Revel AC, Inc.*, 802 F.3d at 568. As to likelihood of success on the merits, the movant need not demonstrate that success is more likely than not. Rather, "the movant need only present a substantial case on the merits when a serious legal question is involved" and the equities favor the movant. *Ruiz v. Estelle*, 650 F.2d 555, 566 (Former 5th Cir. 1981).[2] Otherwise, Rule 8007 would not require applicants to first seek a stay in the Bankruptcy Court because the Court "has already decided the merits of the legal issue." *Id.* "A likelihood of success on the merits is shown when the movant has raised questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *In re Lickman*, 301 B.R. 739, 743 (Bankr. M.D. Fla. 2003) (Williamson, J.) (quoting *Colorado Public Utilities*

---

[2] Decision issued on June 26, 1981. "The decisions of the United States Court of Appeals for the Fifth Circuit …, as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit…." *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Comm. v. Yellow Cab Cooperative Ass'n (In re Yellow Cab Cooperative Ass'n),* 192 B.R. 555, 557 (D.Co.1996)) (cleaned up).

6. "[A]ll four stay factors are interconnected, and thus the analysis should proceed as follows. Did the applicant make a sufficient showing that (a) it can win on the merits (significantly better than negligible but not greater than 50%) *and* (b) will suffer irreparable harm absent a stay? If it has, we balance the relative harms considering all four factors using a sliding scale approach." *In re Revel AC, Inc.*, 802 F.3d at 571.

## Likelihood of Success on the Merits

### *The Bankruptcy Code Does Not Authorize the Bar Order and Channeling Injunction*

7. The Court concluded that *Munford* survives *Purdue*. The California Plaintiffs disagree. The Court stated that it relied on the Underwriters brief at ECF No. 1135. In that brief, the Underwriters rely solely on the contention that $19.2 million is sufficient to pay all Tort Claims in full. In support, they reference the testimony of Safon, who valued only 20 out of 204 claims and, by his own admission, did not have access to sufficient information to form an opinion. During his testimony, Safon changed his opinion repeatedly whenever cross-examined. That testimony should have been excluded, for the reasons stated above, and should have received no weight. The Court also did not acknowledge the 204 proofs of claim, deemed allowed until objected to, which assert claims of over $384 million and were admitted into evidence. The Court did not conduct an estimation proceeding pursuant to 11 U.S.C. 502(c). While the Court gave credit to Safon's testimony, which he was paid thousands of dollars to give, the Court also discounted countervailing testimony for the reason of financial interests. The Court's also made no mention of the 204 proofs of claim admitted into evidence. The Court also received no evidence that the 20 claims which Safon evaluated were in any way representative of the 184 claims he did not analyze.

The California Plaintiffs believe the finding that the Plan provides for full payment has no basis in the evidentiary presentation and, therefore, will be overturned on appeal.

8. The Debtors and Underwriters also relied on *MacArthur* for the proposition that the Court can bar third-party claims pursuant to 11 U.S.C. § 363. That analysis finds no support in *MacArthur*. To the extent the Court relied on the Debtors' and Underwriters' arguments, those arguments distorted the law. *MacArthur* found that bankruptcy courts could issue injunctions to enforce sales of estate property free and clear of all liens, interests, and encumbrances. *MacArthur v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988). Of relevance here, *MacArthur* similarly considered the sale of insurance policies. *Id.* at 91. The *MacArthur* injunction prevented only suits "based upon, arising out of, or related to the [settled] policies." *Id.* (alteration in original). In that case, parties with claims against the debtor had filed direct actions against the debtor's insurers. *Id.* at 92. *MacArthur* enjoined those direct actions. *Id.* Under that reasoning, the injunction was appropriate because the Bankruptcy Code allows the sale of assets of the estate free and clear, and the Court could enforce that free and clear sale by enjoining continued actions against the asset being sold. *Id.* at 93. "The injunctive orders issued by the Bankruptcy Court were necessary to effectuate the Court's channeling authority, that is, to make sure that claims to Manville's insurance proceeds were, in fact, channeled to the settlement fund and could not be asserted directly against the insurers." *Id.* In other words, *MacArthur* authorizes injunctions against the purchaser of estate assets on account of a party's claim against that asset. Instead, the party must assert its claim against the proceeds. The Bar Order and Channeling Injunction go one step further. Instead of channeling only claims against the asset being sold, the Bar Order and Channeling Injunction apply to claims that the California Plaintiffs hold against the Municipalities entirely

independently of any claim to the insurance proceeds. *MacArthur* does not authorize the type of injunction that the Court entered, and the California Plaintiffs will prevail in their appeal.

9. *Purdue* overruled *Munford*, such that the Court cannot approve a bar order in the settlement context. The Supreme Court held that a nonconsensual third-party release runs afoul of the Bankruptcy Code. *Id.* at 2087. Looking to § 1123 for authority, the Supreme Court unequivocally concluded the Bankruptcy Code does not authorize third-party releases. *Id. Purdue Pharma* also explicitly acknowledged that § 105(a) does not create any authority. *Purdue Pharma*, *Id.* at 2082, n. 2 ("As the Second Circuit recognized, however, '§ 105(a) alone cannot justify' the imposition of nonconsensual third-party releases because it serves only to 'carry out' authorities expressly conferred elsewhere in the code.").

10. That holding directly overrules *Munford* and *Seaside.* In both *Munford* and *Seaside*, the Eleventh Circuit relied on § 105(a) to find authority to approve a third-party release. *In re Munford, Inc.*, 97 F.3d 449, 455 (11th Cir. 1996) ("We conclude that section 105(a) and rule 16 taken together provide amply authority for the bankruptcy's court action."); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1078 (11th Cir. 2015) (relying on § 105(a)). *Munford's* reliance purely on § 105(a) and Fed. R. Civ. P. 16 does not survive *Purdue Pharma's* statement that § 105(a) serves only to implement authority otherwise present in the Bankruptcy Code. *Purdue Pharma*, 144 S. Ct. at 2082, n. 2; *Cf. Law v. Siegel*, 571 U.S. 415, 420-21 (2014). Similarly to *Munford*, *Purdue* also arose in the context of approval of a settlement. *Purdue Pharma*, 144 S. Ct. 2071.

11. The Eleventh Circuit found authority to approve the release in *Munford* from the combination of Fed. R. Civ. P. 16, made applicable in bankruptcy by Fed. R. Bankr. P. 16, and § 105(a). *Munford*, 97 F.3d 455. However, neither the Federal Rules of Civil Procedure nor Federal

Rules of Bankruptcy Procedure confer any authority not otherwise present in the Bankruptcy Code. *See* 28 U.S.C. § 2072(b) ("Such rules shall not abridge, enlarge or modify any substantive right.") (civil rules); 28 U.S.C. § 2075 ("Such rules shall not abridge, enlarge, or modify any substantive right.") (bankruptcy rules); *see also*, *BFP Investments, Inc. v. BFP Investments Ltd.*, 150 Fed. App'x 978, 979 (11th Cir. 2005) ("Rules of procedure may not modify substantive law."). *Purdue Pharma* makes clear that "nothing in the bankruptcy code contemplates" the nonconsensual extermination of claims against nondebtors. *Purdue Pharma*, 144 S. Ct. at 2086.

12. Labelling the release a "Bar Order" and "Channeling Injunction" does not change the analysis. *Id.* The constant thread throughout *Purdue Pharma* is that the Bankruptcy Code does not provide for the nonconsensual adjustment of nondebtors' claims against nondebtors. *Id.* at 2083 ("Each of those 'other' paragraphs authorizes a bankruptcy court to adjust claims without consent only to the extent such claims concern the debtor."); at 2084 ("a bankruptcy court's powers are not limitless and do not endow it with the power to extinguish without their consent claims held by nondebtors … against other nondebtors"); at 2085 (noting the general rule that only debtors receive discharges); at 2086 ("No one has directed us to a statute or case suggesting American courts in the past enjoyed the power in bankruptcy to discharge claims brought by nondebtors against other nondebtors"). The Debtors cannot escape the clear import of *Purdue Pharma* through careful doublespeak. *See Id*. That conclusion applies with greater force where the Debtors seek approval of the exact arrangement—a release and channeling injunction—that the Supreme Court roundly rejected. If the Bankruptcy Code does not authorize releases in the context of a plan of reorganization, where the Court's powers are at their peak, then surely the Court cannot authorize the same releases under the lower threshold of approval of a settlement. The indemnity relationship between the Municipalities and Debtors likewise does not affect the analysis. *See Id.* at 2087, n. 7.

13. The Supreme Court has, outside the bankruptcy context, made clear that a settlement between two parties cannot obliterate the rights of a third. *Texas v. New Mexico*, 144 S. Ct. 1756 (2024). In *Texas v. New Mexico*, the two states entered a proposed consent decree to resolve litigation over the apportionment of water in the Rio Grande. The United States had intervened in the case and objected to the proposed settlement because the agreement purported to cut off its rights. The Supreme Court held that was impermissible: "'[P]arties who choose to resolve litigation through settlement may not dispose of the claims of a third party."

14. Even if *Munford* survives, the California Plaintiffs contend the Court improperly determined the Debtors met *Munford's* standard. A critical factor in *Munford* was that the settling party contributed all of its available assets to the settlement. *Munford*, 97 F.3d at 452. Here, the Underwriters contributed only $11 million out of $40 million of available insurance, and the Municipalities contributed only $1-3 million. *Munford* also barred claims subject to substantial defenses. *Id.* at 456. Here, the Debtors have not met their evidentiary burden that the California Plaintiffs have weak claims against the Municipalities. Rather, this case is analgous to *GunnAllen Financial*, where Judge Williamson denied a bar order because creditors overwhelmingly rejected the bar order (here, almost 80% opposed), the barred claimants had no opt out rights, and no estate claims were intertwined with the barred claims. *In re GunAllen Financial, Inc.*, 443 B.R. 908, 910-916 (Bankr. M.D. Fla. 2011). Lastly, *Munford* requires that the settlement be fair and equitable. Here, the California Plaintiffs' claims for substantial and life-altering injuries against the solvent Municipalities would be paid in full were it not for the Bar Order and Channeling Injunction. Yet, the Municipalities are not contributing anything close to what would be required to pay the California Plaintiffs' claims in full. The proposed settlement is thus neither fair nor equitable.

**The Court Should Have Excluded Safon's Testimony**

15. The California Plaintiffs believe the Court should not have allowed and relied on the testimony of Safon. Safon valued unliquidated claims without using any identifiable principle or method. Under binding Eleventh Circuit precedent, the standard for such valuations is to discount the expected value of an eventual judgment by the probability of it occurring. *In re Advanced Telecommunication Network, Inc.*, 490 F.3d 1325, 1335 (11th Cir. 2007). Safon did not apply that standard, and the Court should have excluded that testimony. Other bankruptcy courts follow that standard. *See In re Boy Scouts of America & Delaware BSA, LLC*, 642 B.R. 504, 554 (Bankr. D. Del. 2022); *In re Kane*, 470 B.R. 902, 924 (Bankr. S.D. Fla. 2012). An expert must engage in "a detailed review of the specific litigation, the underlying facts, how it was presented, and the like." *In re Kane*, 470 B.R. at 924. Safon admitted that he did not conduct a detailed review of anything, and that he failed to conduct any review of over 90% of the Tort Claims. The California Plaintiffs believe the Court deviated from Eleventh Circuit precedent, and the admission and consideration of Safon's testimony is reversible.

***The Debtors' Classification Scheme Violates 1122(a)***

16. The California Plaintiffs' claims are not substantially similar to other Tort Claims such that they can be classified together. 11 U.S.C. § 1122(a) provides that a plan may classify claims together "only if such claim or interest is substantially similar to the other claims or interests of such class. "Substantially similar" claims are those "which share common priority and rights against the debtor's estate." *In re Greystone III J.V.*, 995 F.2d 1274, 1278 (5th Cir. 1991). The California Plaintiffs do not share common priority and rights against the Debtors' estate. As an initial matter, the California Plaintiffs have no rights against the Debtors' estates because the California Plaintiffs have no claims against the Debtors. Rather, other holders of Tort Claims have rights against the Debtor. Further, the California Plaintiffs hold claims against solvent non-debtor

entities and, outside of bankruptcy, would recover the full value of their claims. As the California Plaintiffs have "alternative means at [their] disposal for protecting [their] claim[s]," their claims are not substantially similar to Tort Claims asserted solely against the Debtors. *See In re U.S. Truck Co., Inc*, 800 F.2d 581, 587 (6th Cir. 1986). "If the plan unfairly creates too many or too few classes … the plan cannot be confirmed." *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990). Here, the Plan created too few classes. The Plan also inappropriately classifies Tort Claims arising out of different years. Because the funding for the Tort Claims Trust comes from insurance payments (in varying amounts for varying years), the Plan should separately classify Tort Claims according to the insurance policy years so that the holders of certain Tort Claims will not improperly share in insurance proceeds which they have no right to outside of the Plan.

17. The Court's oral ruling and the Confirmation Order did not include factual findings on this issue. Assuming the Court relied on the Debtors' brief in support of confirmation, that brief provides no justification for determining the California Plaintiffs' claims against non-debtors are substantially similar. *In re WR Grace & Co.*, which is the only case the Debtors cite in support of their classification scheme that does not stand for a general proposition, considered "direct" and "indirect" claims. 475 B.R. 34 (D. Del. 2012). While the Debtors attempt to construe the California Plaintiffs' claims as "indirect" and analogize to *WR Grace*, the Debtors do so through willfully ignoring the factual background of *WR Grace*. In *WR Grace*, the "indirect" claims were claims for indemnity or contribution. *Id.* at 109. Those are the claims the Municipalities hold against the Debtors. The California Plaintiffs' claims are the reason for the Municipalities' claims, but that fact does not transport the California Plaintiffs into the Municipalities' shoes. *WR Grace* does not stand for what the Debtors say it does. The Debtors have repeatedly ignored the fact that the California Plaintiffs *do not hold claims against the Debtors* and therefore have *no rights against*

*the Debtors' assets*. Classification requires analyzing the nature and character of the claim as it relates to the Debtors and the estates. As the California Plaintiffs have no rights against the Debtors and their estates, the California Plaintiffs' claims are not substantially similar to the other Tort Claims. The California Plaintiffs find no evidence in support of the Court's ruling. Accordingly, the California Plaintiffs will be successful on appeal.

***The Court Lacked Authority to Enter Final Orders***

18.     The California Plaintiffs contend the Court lacked authority to enter a final order approving the Bar Order and Channeling Injunction. The Court acknowledged in its oral ruling that it holds "related to" jurisdiction over the California Plaintiffs' claims against non-debtor Municipalities. Yet, in contradiction to binding Eleventh Circuit precedent, the Court also concluded that it could enter a final order approving the Bar Order and Channeling Injunction. 28 U.S.C. § 157 unambiguously states that the Court cannot enter a final order on matters which are only "related to" the Debtors' bankruptcy. In recognition of that fact, the Eleventh Circuit has conclusively held that bankruptcy courts cannot enter final orders where they hold only "related to" jurisdiction. *Wortley v. Bakst*, 844 F.3 1313 (11th Cir. 2017). *Munford* itself, which the Court relied on to approve the Bar Order and Channeling Injunction, acknowledges the Court holds only "related to" jurisdiction to enter the Bar Order and Channeling Injunction. As the California Plaintiffs believe the Court diverged from binding Eleventh Circuit precedent, they contend they will prevail on appeal.

19.     Notwithstanding the Court's lack of statutory authority, Article III also prevents the Court from entering final orders. While the California Plaintiffs extensively briefed and argued this issue, the dispute boils down to deciding whether to adopt the Second Circuit's or Third Circuit's analysis. *Compare, In re Purdue Pharma, L.P.*, 69 F.4th 45, 68 (2d Cir. 2023), *reversed*

*on other grounds*, 144 S. Ct. 2071; *In re Millenium Lab Holdings II, LLC*, 945 F.3d 126 (3d Cir. 2019). Those cases differ in their focus on the operative language of *Stern*. The Second Circuit found that "core" claims included "those stemming 'from the bankruptcy itself' or those which 'would necessarily be resolved in the claims allowance process.'" *In re Purdue Pharma*, 69 F.4th at 68 (quoting *Ster v. Marshall*, 564 U.S. 462, 471 (2011)). The Third Circuit focused on whether resolution of the claim was "integral to the restructuring of the debtor-creditor relationship." *In re Millenium Lab Holdings II*, 945 F.3d at 138. When considering *Stern*, the Eleventh Circuit has uniformly quoted the same portion as the Second Circuit. *Wortley*, 844 F.3d at 1319 (quoting *In re Fisher Island Invs., Inc.*, 778 F.3d 1172, 1190 (11th Cir. 2015) (quoting *Stern*, 564 U.S. at 499)) (alteration in original). The California Plaintiffs urge following the Eleventh Circuit's interpretation of *Stern*. By issuing a final order, the Court impliedly adopted the Third Circuit's analysis. The California Plaintiffs believe that analysis conflicts with the Eleventh Circuit. Accordingly, the California Plaintiffs contend they will prevail on appeal, such that evidentiary issues will be considered *de novo*, and the Confirmation Order cannot have immediate effect.

20. As the above analysis demonstrates, the issues on appeal are "so serious, substantial, difficult and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry." *In re Lickman*, 301 B.R. at 743. The California Plaintiffs have satisfied the first factor for a stay pending appeal.

***The California Plaintiffs Will Suffer Irreparable Harm Absent a Stay***

21. Without a stay pending appeal, equitable mootness may likely deprive the California Plaintiffs from any appellate remedy as the Debtors may substantially consummate the Plan. *See, e.g., In re Hazan*, 10 F.4th 1244, 1252 (11th Cir. 2021). "Among the factors a court should consider in deciding whether to dismiss an appeal for equitable mootness are whether the

appellant has obtained a stay pending appeal, whether the plan is substantially consummated, and whether third parties' rights or the debtor's ability to successfully reorganize would be adversely affected by granting the relief sought by the appellant." *Id.* Without a stay, all factors likely will weigh against the California Plaintiffs. The likelihood the California Plaintiffs will lose their ability to appeal is higher where the challenged decision involves approval of a consummated settlement. *See, e.g., Musilino v. Alabama Marble Co., Inc.*, 534 B.R. 820, 829-830 (N.D. Ala. 2015). As a stay is necessary to preserve the California Plaintiffs' ability to appeal, they will suffer irreparable harm absent a stay.

***Other Interested Parties Will Not Suffer Any Substantial Harm***

22. Other interested parties will not suffer any substantial harm if the Court stays the Confirmation Order pending appeal. The Debtors have already sold their assets to the Purchaser. The only things to be done under the Plan is the pursuit of litigation, the contributions in consideration of the Bar Order and Channeling Injunction, and the resolution of the Tort Claims. Nothing prevents the Debtors from pursuing litigation targets if the Court stays the Confirmation Order. The only effect of a stay is to delay payments to Tort Claimants, some of which are the parties challenging the Confirmation Order. The Tort Claimants also overwhelmingly rejected the Plan. Accordingly, no interested parties will suffer any substantial harm.

***The Public Interest Supports a Stay***

23. The most glaring issue on appeal is whether *Purdue* overruled *Munford*. A stay will preserve that issue for appeal. The effect of *Purdue* on *Munford* is not addressed in any case law, and deciding an issue of first impression will serve the public interest by avoiding future litigation over these same issues. The California Plaintiffs intend to seek a direct appeal to the Eleventh

Circuit. A stay pending appeal with allow the Eleventh Circuit to decide the continued viability of its own precedent.

24. As all factors support a stay pending appeal, including the most critical factors of a substantial likelihood of success and the risk of irreparable harm, the Court should stay the Confirmation Order until the conclusion of all appeals. If the Court finds that a stay would be improper, the California Plaintiffs request a 30-day stay so that they can seek a stay from the District Court and/or the Eleventh Circuit.

WHEREFORE, the California Plaintiffs request the Court grant this Motion and stay the Confirmation Order [ECF No. 1205] pending the conclusion of all appeals. In the alternative, the California Plaintiffs request a stay of the Confirmation Order [ECF No. 1205] for 30 days so that the California Plaintiffs may seek a stay from appellate courts.

Respectfully submitted,

**MARSHACK HAYS WOOD LLP**
D. Edward Hays (Pro Hac Vice)
Bradford N. Barnhardt (Pro Hac Vice)
870 Roosevelt
Irvine, California 92620
Telephone: 949-333-777
Facsimile: 949-333-7778
ehays@marshackhays.com
bbarnhardt@marshackhays.com

**SHRAIBERG PAGE P.A.**
Attorneys for the California Plaintiffs
2385 NW Executive Center Drive, #300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
bss@slp.law; shess@slp.law

By: _/s/ Bradley S. Shraiberg_____
Bradley S. Shraiberg
Florida Bar No. 121622
Samuel W. Hess
Florida Bar. No. 1044184

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic noticing in this case on August 2, 2024.

By: _/s/ Bradley S. Shraiberg_

{2511/000/00585556}                                   15