UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 11 Cases |
| BIRD GLOBAL, INC., *et al.*,[1] | Case No. 23-20514-CLC |
| Debtors. | (Jointly Administered) |

## DEBTORS' RESPONSE IN OPPOSITION TO THE EMERGENCY MOTION TO STAY CONFIRMATION ORDER PENDING APPEAL

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors") submit this response in opposition (the "Response") to the *Emergency Motion to Stay Confirmation Order Pending Appeal* [ECF No. 1213] (the "Stay Motion"), filed by Brenda Wright, Lindsy Thompson, Marc Perkins-Carrillo, Gregory Buce, Borna Eslami, Tracy Squire, Benjamin Michael Palajac, John Francis Foley, Yaman Fejleh, and Destiny Smith (collectively, the "California Plaintiffs"). In support of the Response, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

The Court held a two-day Confirmation Hearing in June where it heard and considered a significant amount of documentary and testimonial evidence presented by the Debtors and other plan supporters as well as various objectors, including the California Plaintiffs. At the conclusion of the Confirmation Hearing, the California Plaintiffs urged the Court to wait until the Supreme Court issued its ruling in *Purdue*, which the Court found prudent to do and did. Following the

---

[1]    The address of the Debtors is 392 Northeast 191st Street, #20388, Miami, FL 33179. The last four digits of the Debtors' federal tax identification numbers are: (i) Bird Global, Inc. (3155); (ii) Bird Rides, Inc. (9939); (iii) Bird US Holdco, LLC (8390); (iv) Bird US Opco, LLC (6873); and (v) Skinny Labs, Inc. (8176).

ruling in *Purdue*, the Court requested briefing on the effect of *Purdue* on the Plan before the Court. Ultimately, nine (9) briefs were filed for the Court's consideration (the "Purdue Briefs").

After considering all arguments in the Purdue Briefs, in addition to all arguments previously made by the parties, and more importantly, the evidence presented at the Confirmation Hearing, the Court confirmed the Plan, approved the Insurance Settlement Agreements, including the Bar Order and the Channeling Injunction, and overruled all objections. In doing so, the Court found based on the evidence before it that confirmation of the Plan and approval of the Insurance Settlement Agreements would result in full payment to Tort Claimants, including the California Plaintiffs. The Court also carefully analyzed *Purdue* and found it to be distinguishable based on Eleventh Circuit precedent and the unique and different facts of this case. In keeping with that ruling, the Court entered its Confirmation Order.

The California Plaintiffs, unhappy with the Court's ruling, filed the Stay Motion—making the identical arguments the Court already carefully and thoughtfully considered, but rejected. The California Plaintiffs are required to show four factors to justify a stay pending appeal and they have not met a single one. The Stay Motion is in many respects a motion for rehearing because it does not endeavor to meet the stringent standards required in the Eleventh Circuit for a stay pending appeal. For example, the California Plaintiffs make no attempt to explain how the Court's detailed factual findings on full payment are "clearly erroneous," as required to prevail on an appeal. The standard in the Eleventh Circuit to show a substantial likelihood of success on appeal is that the lower court made clearly erroneous rulings.

In addition, the Court's finding that the Tort Claimants will receive payment in full under the Plan is fatal to the California Plaintiffs' arguments that they will suffer irreparable harm in the absence of a stay. Simply stated, there can be no irreparable harm when the appellant stands to receive full payment. Moreover, the only basis cited by the California Plaintiffs for irreparable

harm, the possibility that their appeal will be equitably moot, is insufficient to satisfy this necessary element. On the other hand, the harm caused by granting a stay of the Confirmation Order is massive and requires all stakeholders, including other Tort Claimants, the Liquidating Trustee, the Tort Claims Trustee, and the Purchaser, to wait an indefinite period of time while the California Plaintiffs pursue an appeal with a low chance of success. The Debtors respectfully submit that the Court should deny the Stay Motion.

## SUMMARY OF THE ARGUMENT

The Stay Motion should be denied because the California Plaintiffs cannot satisfy any of the established requirements for the imposition of a stay. *First*, in simply rehashing certain of their confirmation objections, the California Plaintiffs have failed to demonstrate a likelihood of success on the merits of their anticipated appeal. *Second*, given the Court's finding that Tort Claims will be paid in full under the plan (a finding they do not and cannot show to be clearly erroneous), they cannot demonstrate irreparable harm in the absence of a stay—indeed, full payment is the opposite of irreparable harm. *Third*, they have failed to show the absence of harm to others if a stay were imposed—in fact others will be substantially harmed by the delay, cost, and uncertainty occasioned by a stay. *Fourth*, they have failed to show how the public interest would be served by thwarting the implementation of a plan that would pay them in full. In any event, if the Court were inclined to grant a stay, it should be on the condition that the California Plaintiffs post a significant bond.

## BACKGROUND

1.      On December 20, 2023 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned cases (the "**Chapter 11 Cases**").

13182550-4

2.      On March 8, 2024, the Bankruptcy Court entered an order [ECF No. 464] authorizing the sale of substantially all of the Debtors' assets to Bird Scooter Acquisition Corp. and its designee(s) (the "**Purchaser**").

3.      On April 18, 2024, the Debtors filed (i) the *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Liquidation* [ECF No. 596]; and (ii) the *Debtors' Joint Chapter 11 Plan of Liquidation* [ECF No. 597].

4.      On April 29, the Debtors filed the First Amended Disclosure Statement [ECF No. 642] and First Amended Plan [ECF No. 643].

5.      On June 3, 2024, the Debtors filed the Second Amended Disclosure Statement [ECF No. 801] and the Second Amended Plan [ECF No. 802].

6.      The Second Amended Plan incorporated the Insurance Settlement Agreements, which provide for, among other things: (i) Underwriters, Great American, Lexington, the Municipalities, and the Purchaser to contribute over $19.2 million to fund the Tort Claims Trust; (ii) all Tort Claims to be channeled to the Tort Claims Trust; (iii) the sale under section 363(f) of the Bankruptcy Code of the insurance policies back to the Settling Insurers; and (iv) the adjudication or reconciliation of Tort Claims though an efficient procedure that is intended to facilitate a prompt distribution from the Tort Claims Trust to the Holders of Tort Claims.

7.      The Court held a two-day evidentiary hearing on June 10 and 12, 2024 (the "Confirmation Hearing").  At the Confirmation Hearing, the Court considered a significant amount of documentary and testimonial evidence, made multiple rulings on objections, including a *Daubert* motion, and heard from both the Debtors and other Plan Proponents as well as all Plan objectors.  Following the Confirmation Hearing, the Court took the matter under advisement.

8.      On June 27, 2024, the Supreme Court rendered its opinion in *Harrington v. Purdue Pharma, L.P.*, 144 S. Ct. 2071 (2024) ("Purdue").  Following *Purdue*, the Court requested that

13182550-4

interested parties file briefs based on the *Purdue* ruling and the effect, if any, of that ruling on the Plan. Nine parties, including the United States Trustee, filed Purdue Briefs.[2]

9.      On July 29, 2024, after having the benefit of its review of *Purdue* and the Purdue Briefs, the Court held a hearing where it approved the Disclosure Statement on a final basis, confirmed the Plan, approved the Insurance Settlement Agreements included therein, and overruled all objections to the Disclosure Statement and the Plan. In doing so, the Court specifically found that the "evidence supports a finding that the 204 [Tort Claims] timely asserted against the estates will be paid in full through the process set forth in the Second Amended Plan." July 29, 2024 Hr'g Tr. 31:10-14; *see also* July 29, 2024 Hr'g Tr. 32:18-23 (explaining that the evidence "supports the conclusion that $19.2 million to be contributed to the tort claims trust will sufficiently fund the trust to resolve all asserted tort claims.").

10.      On August 2, 2024, the Court entered its *Order (I) Approving the First Amended Disclosure Statement for Debtors' Second Amended Joint Chapter 11 Plan of Liquidation on a Final Basis, (II) Confirming the Debtors' Second Amended Joint Chapter 11 Plan of Liquidation, (III) Approving the Insurance Settlement Agreements, and (IV) Entering Bar Order and Channeling Injunction* [ECF No. 1205] (the "Confirmation Order"). In the Confirmation Order, the Court found that "the $19.2 million to be contributed sufficiently

---

[2]      *See United States Trustee's Post Confirmation Statement* [ECF No. 1130]; *Debtors' Brief Regarding the Supreme Court's Opinion in Harrington v. Purdue Pharma, L.P.* [ECF No. 1133]; *Underwriters' Joinder and Supplement to Debtors' Brief Regarding the Supreme Court's Opinion in Harrington v. Purdue Pharma, L.P.* [ECF No. 1135]; *Municipalities' Joinder and Supplement to Debtors' Brief Regarding Supreme Court's Opinion in Harrington v. Purdue Pharma, L.P.* [ECF No. 1138]; *Third Lane Mobility, Inc's Joinder in and Supplement to Briefs Regarding the Supreme Court Opinion in Harrington v. Purdue Pharma, L.P. and Related Filings* [ECF No. 1139]; *Pittsburgh Plaintiffs' Brief and Objection to Debtors' Second Amended Plan of Reorganization* [ECF No. 1131]; *Supplemental Brief in Opposition to Confirmation* [ECF No. 1132]; *Tort Claimants' Supplemental Brief in Support of Their Objection to Debtors' Chapter 11 Plan and Disclosure Statement* [ECF No. 1134]; and *Donna Jackson Tchirkow's Brief on The Effects of Harrington v. Purdue Pharma L.P. on the Proposed Bar Order and Channeling Injunction* [ECF No. 1137].

13182550-4

funds the Tort Claims Trust to resolve and provide for payment in full of all asserted Tort Claims that are ultimately allowed." *See* Confirmation Order, ¶ YY.

11.     Shortly after the entry of the Confirmation Order, the California Plaintiffs filed their *Emergency Motion to Reconsider Waiver of Stay in Confirmation Order* [ECF No. 1207] (the "Motion to Reconsider") asking the Court to reconsider its waiver of the fourteen (14) day stay pursuant to Bankruptcy Rule 3020(e) included in the Confirmation Order. The California Plaintiffs argue that the waiver is not appropriate. However, Section 13.3of the Plan provides that the Plan may go effective notwithstanding Bankruptcy Rule 3020(e). No Creditor or party in interest objected to this provision of the Plan.

12.     Counsel to the California Plaintiffs contacted undersigned counsel prior to filing the Stay Waiver Motion but unfortunately did not wait for a response (which would have pointed out that the Plan contemplates such a waiver) before filing the Motion to Reconsider.

13.     Shortly after the California Plaintiffs filed the Motion to Reconsider, the Court entered an amended Confirmation Order (the "Amended Confirmation Order") removing paragraph 50 which included the waiver of the stay in Rule 3020(e). As such the Motion to Reconsider was rendered moot.

14.     On August 2, 2024, the California Plaintiffs also filed the Stay Motion requesting that the Court stay its Confirmation Order pending the California Plaintiffs' appeal.

## ARGUMENT

15.     The Stay Motion should be denied as it is merely a restatement of the same arguments that the Court carefully considered and overruled. While the California Plaintiffs raise several issues that they might advance on appeal, they fail to meet the stringent Eleventh Circuit standards for a stay pending appeal, including the obligation to demonstrate that they have a substantial likelihood of prevailing on appeal, *i.e.*, that this Court clearly erred. The Court's

6

multiple findings of fact in connection with the Confirmation Order will be reviewed under a clear error standard on appeal. Importantly, the California Plaintiffs make no attempt to even suggest that such findings are clearly erroneous. By the same token, the Court specifically found that the Insurance Settlement Proceeds are sufficient to pay the Tort Claims *in full*. Given that factual finding, there can be no irreparable harm to the California Plaintiffs if the Court does not grant a stay. How can someone be irreparably harmed when they will be paid in full? Moreover, the Supreme Court in *Purdue* expressly did not opine on full payment plans, making *Purdue* readily distinguishable by any reviewing court. Therefore, the California Plaintiffs cannot make the showing that they have a substantial likelihood of success as a legal matter. Without making a strong showing they are likely to succeed on appeal and no risk of irreparable harm, the California Plaintiffs simply cannot, and do not, meet their burden and the Stay Motion must be denied.

### A. Legal Standard for a Stay Pending Appeal

16. An injunction or stay pending appeal is an "extraordinary remedy." *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021). To obtain a stay, the movant must establish all of the following: "(1) a substantial likelihood that [it] will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the [movant] unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest." *Id.* (quoting *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000) (en banc)).[3]

17. A stay pending appeal is a "drastic remedy" and courts may not grant one "unless the movant has clearly established the burden of persuasion as to each of the four prerequisites." *Id.* (quoting *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)); *In re Sanders*, 544

---

[3] The Supreme Court has referred to the first prong as requiring a "strong showing that [the movant] is likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 426 (2009).

B.R. 463, 467 (Bankr. S.D. Fla. 2016) ("all four must be present if the bankruptcy court is to grant a stay pending appeal."); *In re Brown,* 290 B.R. 415, 424 (Bankr. M.D. Fla. 2003) (same).

18.     The Supreme Court instructs that the first two factors are "the most critical." *Nken*, 556 U.S. at 434.  For the first factor (substantial likelihood that the movant will prevail), "[i]t is not enough that the chance of success on the merits be better than negligible." *Id.*  For the second factor (substantial risk of irreparable injury unless the stay is granted), it is not enough to show "some possibility of irreparable injury." *Id.* at 434–35 (citation and internal quotation marks omitted).  If a movant fails to establish the first factor, it must show that all three other factors strongly weigh in its favor.  *Robles Antonio v. Barrios Bello*, No. 04-12794-GG, 2004 WL 1895123, at *1 (11th Cir. June 10, 2004).

19.     On appeal, "[f]actual findings of the bankruptcy court are reviewed for *clear error*, and legal conclusions . . . are reviewed *de novo*."  *In re Woide*, 730 F. App'x 731, 734 (11th Cir. 2018) (emphasis added).  "Clear error is a highly deferential standard of review."  *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005).

20.     When applying the clear error standard of review, an appellate court "will not reverse a lower court's finding of fact simply because we 'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985)).  Instead, the appellate court must conclude "with the *definite and firm conviction* that a mistake has been committed."  *United States v. United States Gypsum Co.,* 333 U.S. 364, 395 (1948) (emphasis added).  Put simply, the appellate court must review factual findings "with a serious thumb on the scale for the bankruptcy court."  *U.S. Bank Nat. Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 394 (2018).

21.     As explained by the Supreme Court, "when a trial judge's finding is based on [her] decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent

and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson*, 470 U.S. at 575. Put differently, if there are two permissible views of the evidence, the factfinder's choice between them cannot be clear error.

> **B.    Analysis of Request for Stay Pending Appeal**

>> **1.    The California Plaintiffs Do Not Have a Substantial Likelihood of Success on Appeal.**

22.    The first factor for consideration is whether the California Plaintiffs have a substantial likelihood of success on their appeal of the Confirmation Order. The California Plaintiffs are not likely to succeed for several reasons and the Stay Motion raises nothing new that the Court has not already carefully considered and rejected. In the Eleventh Circuit, the first factor is "the most important" and requires that the movant to demonstrate that this Court's decision was "clearly erroneous." *Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986) ("A finding that the movant demonstrates a probable likelihood of success on the merits on appeal requires that we determine that the trial court below was clearly erroneous."); *In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. 862, 872 (Bankr. M.D. Fla. 2015) ("To satisfy that factor, the [movant] must show it is probable that the district court will find this Court's confirmation ruling clearly erroneous."); *see also In re Yormak*, No. 2:15-BK-04241-FMD, 2021 WL 2935842, at *4 (Bankr. M.D. Fla. July 13, 2021) ("To establish the likelihood of success on appeal, the moving party must generally show that the bankruptcy court's decision was clearly erroneous.").

23.    Moreover, it is insufficient for a movant to show some "possibility" of success, it must be a strong showing. *Nken*, 556 U.S. at 434; *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019) (explaining that "the party seeking the stay must show more than the mere possibility of success" on its appeal).

24.     None of the Court's rulings were clearly erroneous and, in fact, the California Plaintiffs do not even attempt to present any arguments in the Stay Motion to demonstrate that such rulings were clearly erroneous.  Indeed, the words "clear error" *do not appear* in the Stay Motion.  The fact that the California Plaintiffs do not grapple with the applicable standard in the Eleventh Circuit for a stay pending appeal warrants denial of the Stay Motion.  The California Plaintiffs simply reassert their arguments previously made against confirmation of the Plan in what appears to be more of a motion for rehearing than a motion for stay of the Confirmation Order. The Debtors addressed each and every one of the California Plaintiffs' arguments in their confirmation brief [ECF No. 863] which the Court considered prior to its ruling.  For completeness of the record, the Debtors will briefly respond to each of the arguments of the California Plaintiffs.

a.     **The Bankruptcy Code Authorizes Bar Orders and Channeling Injunctions.**

25.     The California Plaintiffs take the position that *Purdue* overruled *Munford*.  The Court carefully considered *Purdue* and concluded that *Munford* has not been overruled.  The Court explained that, unlike the debtor in *Purdue*, the Debtors here did not rely on 11 U.S.C. § 1123(b)(6) as authority for the Bar Order and Channeling Injunction.  Moreover, the Court analyzed the difference between a bar order, which is necessary as part of a settlement agreement, as in *Munford*, and a non-consensual third-party release, like in *Purdue*.

26.     The Court also carefully distinguished *Purdue* in two other key respects.  *First*, *Purdue* did not address settlements pursuant to Bankruptcy Rule 9019 or sales of a debtor's property under section 363 of the Bankruptcy Code.  The Supreme Court only ruled on whether non-consensual, third-party releases may be provided in the specific context of a plan of reorganization and only with respect to section 1123(b)(6).  The Supreme Court expressly distinguished situations in which a debtor is seeking to resolve its own claims or sell its own property—steps that are expressly authorized under §§ 363(f), 1123(b)(3)(A) and (4).  That, of

10

course, is the present case before the Court—the Debtors are selling their insurance policies to the Settling Insurers and are compromising their own claims and rights under those policies. *Purdue* did not foreclose the sale of insurance policies and the use of proceeds thereof to create a trust and channeling claims to such trust—which is what will occur here. The California Plaintiffs do nothing to counter these clearly distinguishable facts in the Stay Motion. Instead, they essentially argue that the ruling in *Purdue* is the same as what happened here, even though it is clearly distinguishable both factually and legally.

27. *Second*, *Purdue* explicitly did not opine on full payment cases. Here, the Court found, based on all the evidence presented at the confirmation hearing, that the Debtors' Plan will result in full payment of the Tort Claims. This factual finding is only reversible for clear error. *In re Woide*, 730 F. App'x at 734. A finding that the Plan will provide full payment to the Tort Claimants removes this case from the four corners of *Purdue* and removes any concern that non-debtors are discharging debts to third parties without payment in full in contravention of *Purdue*. In response to this finding, the California Plaintiffs simply say they believe such finding has no basis, without more. Stay Motion, ¶7. The California Plaintiffs fail to explain how this finding is clearly erroneous, which failure establishes that they do not have a substantial likelihood of success on appeal. *See, e.g.*, *In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. at 876 (explaining that "it is highly unlikely that the district court on appeal would conclude that this Court's finding that this is an unusual case and that the bar order is fair and necessary to the Debtors' reorganization is somehow clearly erroneous.").

28. The California Plaintiffs also argue that *Purdue* ruled that section 105(a) does not create authority to release claims and that *Munford* relies solely on section 105(a) for its ruling in approving settlements. Even if that were true, the Court here did not rely solely on section 105(a)—it relied on sections 105(a), 363, and 1123(b)(3)(A). Moreover, there was no sale in

11

*Purdue* as there is here, rendering the California Plaintiffs' use of general statements from *Purdue* to be unavailing. The *Purdue* court did not analyze a sale and it did not analyze full payment. *Purdue*, 144 S. Ct. at 2074 (recognizing that its ruling "is a narrow one" and that it did not "pass upon a plan that provides for full satisfaction" of claims).

29.    At bottom, the California Plaintiffs' arguments regarding the Court's analysis of *Purdue* and approval of the Plan notwithstanding *Purdue* are best characterized as disagreements with the Court's ruling. The arguments do not show that the Court clearly erred, as required in the Eleventh Circuit, and therefore cannot constitute a "strong showing" that the California Plaintiffs will prevail on appeal. *Nken*, 556 U.S. at 434.

### b.    The Court Correctly Permitted Mr. Safon's Testimony.

30.    At the Confirmation Hearing, the Court ruled that it would permit Mr. Safon's testimony and determine the appropriate weight to give it. In doing so, the Court carefully considered the arguments of the California Plaintiffs against such inclusion and ultimately overruled such arguments. The Court considered Mr. Safon's testimony as someone who has dealt with in excess of 1,000 cases as a mediator. The Court determined that his testimony was sufficiently reliable and would assist the Court in trying the facts of the case. The Eleventh Circuit reviews the admission of expert testimony in a limited manner and will reverse only for an abuse of discretion. *Maiz v. Virani*, 253 F.3d 641, 662 (11th Cir. 2001) (explaining that deference is appropriate on an abuse of discretion review and "we must affirm unless we at least determine that the district court has made a clear error of judgment, or has applied an incorrect legal standard.").

31.    The California Plaintiffs disagree with the Court's ruling but do nothing to suggest, much less show, that the Court clearly erred—as is required under the standard set by the Eleventh Circuit for a stay pending appeal. Perhaps more importantly, even if Mr. Safon's testimony were completely excluded, the Court could still conclude that the Plan can pay claims in full based on

the Mr. Rankin's testimony with respect to historical resolution of claims against the Debtors and

Mr. Beckett's testimony that after February 1, 2020, there have been no settlements, judgments or

payments in excess of the applicable SIR, which ranges from $250,000 to $1,000,000.  As a result,

the California Plaintiffs have not shown a substantial likelihood of success that they will prevail

on appeal with respect to Mr. Safon's testimony.

> c.  **The Court Correctly Approved the Debtors' Classification of Claims in Class 6.**

32.    The California Plaintiffs assert that the Court improperly approved the Debtors'

Plan which classified Tort Claims in Class 6.  Stay Motion, ¶¶ 16-17.  In doing so, they make the

identical arguments made in their objection to the Plan.  *First*, they argue that California Plaintiffs

do not have rights against the Debtors' estate and repeat the factually incorrect statement that they

have no claims against the Debtors.  The California Plaintiffs each filed claims against the Debtors

in these Chapter 11 Cases.[4]  *Second*, the California Plaintiffs argue that the Debtors created too

few classes of Tort Claims and should have created classes for each separate insurance policy year.

The California Plaintiffs cited *no* authority for this proposition.

33.    Bankruptcy courts have wide latitude in determining whether claims have been

properly classified.  *In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir. 1987) ("Congress

intended to afford bankruptcy judges broad discretion [under section 1122] to decide the propriety

of plans in light of the facts of each case").  On appeal, such determinations will be upheld so long

as the classification scheme is "reasonable" and does not "arbitrarily designate classes."  *Id.*;

*Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810, 813 (6th Cir. 1990) ("a

bankruptcy court's decision to approve or reject the [classification] of claims proposed by a debtor

---

[4]    *See* Claim Nos. 10462, 10463, 10464, 10466, 10467, 10572, 10573, 10574, 10575, 10576, 10596, 10597, 10598, 10599, 10600, 10620, 10621, 10622, 10623, 10624, 10613, 10614, 10615, 10616, 10618, 10399, 10587, 10589, 10590, 10591, 10592, 10586, 10588, 10593, 10594, 10595, 10581, 10640, 10643, 10644, 10645, 10646, 10580, 10638, 10639, 10641, and 10642.

will only be reversed if the party opposed to the court's decision can demonstrate that the court abused its discretion.").

34.     Section 1122(a) requires that a plan "place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class." 11 U.S.C. §1122(a).  Substantial similarity does not require that claims or interests in a particular class be identical, or that all similarly situated claims must be placed in the same class and receive the same plan treatment.  Rather, section 1122(a) provides plan proponents with considerable discretion in classifying claims and interests according to the facts and circumstances of each case. *See, e.g.*, *Olympia & York Florida Equity Corp*. v. *Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 880 (11th Cir. 1990) (plan proponents have considerable, but not unlimited, discretion when classifying claims and interests); *see also In re Wabash Valley Power Ass'n, Inc.*, 72 F.3d 1305, 1321 (7th Cir. 1995) ("[a] debtor in bankruptcy has considerable discretion to classify claims and interests in a chapter 11 reorganization plan").

35.     Put another way, a plan proponent is afforded significant flexibility in classifying claims under section 1122(a) so long as there is a reasonable basis for the classification structure. *See In re Drexel Burnham Lambert Group, Inc*., 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992).  That some Tort Claimants only sued a Municipality does not warrant separate classification because claims against Municipalities are, in effect, claims against one or more Debtors due to the Debtors' indemnification obligations.  *See In re Quigley Co., Inc.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) ("The fact that some members of the class may also look to third parties for payment, while others in the class do not have the same right, does not mandate separate classification.").[5]

---

[5]    The California Plaintiffs cite again to a Sixth Circuit decision for the proposition that because the California Plaintiffs have an "alternative means at [their] disposal for protecting their claim[s]," they cannot be classified together with other Tort Claimants.  [ECF No. 789, at 14-15] (quoting *In re U.S. Truck Co., Inc*, 800 F.2d 581, 587 (6th Cir. 1986)).  *U.S. Truck* does not stand for this broad proposition and is readily distinguishable.  In *U.S. Truck*, a union's claim based on rejection of its collective

14

36.     As previously explained in the Debtors' confirmation brief, there is only one source of funds being made available by the Insurance Settlement Released Parties for Tort Claimants which, as a practical matter, obviates the issue of separately classifying Tort Claimants based upon who they are suing or upon what entity they have made demand for insurance proceeds, which Tort Claimants are subject to which Insurance Policies, or any other issue.  All Tort Claims have a similar nexus of fact—they each allegedly suffered an injury relating to the use of the Debtors' scooters.   Just because there is insurance available, or recovery might be available from Municipalities does not change the character of such claims or the effect on the Debtors' assets.  *See, e.g.*, *In re Boy Scouts of Am. & Delaware BSA, LLC*, 642 B.R. 504, 634 (Bankr. D. Del. 2022) ("That the Lujan Claimants have a procedural right to sue BSA's insurers directly, does not change the character of their claims against BSA . . . ."); *In re AOV Indus., Inc.*, 792 F.2d 1140, 1151 (D.C. Cir. 1986) ("The existence of a third-party guarantor does not change the nature of a claim vis-à-vis vis the bankrupt estate and, therefore, is irrelevant to a determination of whether claims are "substantially similar" for classification purposes.").

37.     The "clear rule" with respect to section 1122(a) is that a debtor "shal[l] not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.'" *In re Mallinckrodt plc*, 639 B.R. 837, 857 (Bankr. D. Del. 2022) (quoting *In re Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991)).  Here, classifying Holders of Tort Claims together is reasonable because they all share a common set of facts and, directly or indirectly, would have a similar effect on the Debtors' assets, and will share in the Tort Claim Trust Assets. There is

---

bargaining agreement was classified separately from a class of claims resulting from rejection damages. 800 F.2d at 583-84.  The union in *U.S. Truck* asserted that this classification was impermissible because it isolated their claim to gerrymander an accepting class.  *Id.* at 584.  The Sixth Circuit disagreed, explaining that the union's claim was in a different posture than the other class because it had a creditor and non-creditor interest in voting for the Plan which differed from the other class.  *Id.* at 587.  As such, the debtors there did not improperly classify the union's claim separately.  The Sixth Circuit did not rule as a matter of law that when a claimant has an alternative recovery source that it must be classified separately.

nothing arbitrary and certainly nothing fraudulent in classifying the Tort Claimants together, regardless of any differences, especially where such Tort Claimants will share in the Tort Claim Trust Assets set aside for them to the exclusion of all other Creditors.

38.    The California Plaintiffs ignore the standards in the Eleventh Circuit and the discretion provided to a debtor in favor of a non-existent standard that can be simplified as—if the Debtors *could have* classified claims differently, they *must* do so.  That is not the law and the Court correctly determined that the Debtors properly classified claims in the Plan.  The California Plaintiffs have a low likelihood of success on appeal with respect to classification because they will have to show that the Court abused its discretion, and it did not.

d.    **The Court Correctly Found that it had Authority to Enter a Final Order.**

39.    The California Plaintiffs advance the same argument on jurisdiction that the Court rejected in its ruling on confirmation of the Plan.  The California Plaintiffs also suggest in the Stay Motion that the Court determined in its ruling that it only had "related to" jurisdiction.  This is a misstatement of the Court's ruling on jurisdiction.  The Court determined it had jurisdiction over confirmation as a core matter and that it also had "related to" jurisdiction.  While the Court analyzed *Munford*, it did not say it only had "related to" jurisdiction.  This is a core matter and the Court had appropriate jurisdiction to enter a final order.  The California Plaintiffs' remaining jurisdiction argument merely reflects their disagreement with the Court's ruling and their preference of non-binding precedent that the Court follow (*i.e.*, Second Circuit or Third Circuit). This disagreement most definitely does not show a substantial likelihood of success as to this argument on appeal.

40.    The Debtors provided a robust jurisdiction analysis in their confirmation brief and will not restate that in its entirely here.  *See* [ECF No. 863, ¶¶ 109-116].  However, in short, bankruptcy courts have subject matter jurisdiction over four types of matters: (1) cases under title

16

11; (2) proceedings arising under title 11; (3) proceedings arising in a case under title 11; and (4) proceedings related to a case under title 11.[6]  A proceeding is "related to" a bankruptcy case where "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy."  *Matter of Lemco Gypsum, Inc.*, 910 F.2d 784, 788 (11th Cir. 1990).

41.    Here, the Court determined it had subject matter jurisdiction to issue the Bar Order and approve the Channeling Injunction.  The Court's ability to do so falls well within its "arising under" or "arising in" jurisdiction.[7]  Confirmation of the Second Amended Plan is undoubtedly a "core" proceeding.  28 U.S.C. § 157(b)(2)(L) ("Core proceedings include, . . . confirmations of plans[.]").

42.    The Supreme Court made clear that, for there to be constitutional authority for a bankruptcy court to enter a final order, an action does not have to stem from the bankruptcy itself. *Stern* provided a two-part disjunctive test and held that "the question [governing the extent to which a bankruptcy court may constitutionally exercise power] is whether the action at issue stems from the bankruptcy itself *or would necessarily be resolved in the claims allowance process*." *Stern*, 564 U.S. at 499 (emphasis added); *see also In re Millennium Lab Holdings II*, 945 F.3d at 136.  The California Plaintiffs argued that their Tort Claims did not stem from the bankruptcy and that they would not be resolved in the claims allowance process because they do not have claims against the Debtor. However, as explained above, the test from *Stern* is disjunctive and is whether an action stems from the bankruptcy *or* will necessarily be resolved in the claims allowance

---

[6]  28 U.S.C. § 1334; *see Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 220 (3d Cir. 2008) ("A bankruptcy court has subject matter jurisdiction over 'all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . .'") (quoting 28 U.S.C. § 157(b)(1)).

[7]  *See In re Millennium Lab Holdings II, LLC*, 575 B.R. 252, 261 (Bankr. D. Del. 2017), *aff'd*, 591 B.R. 559 (D. Del. 2018), *aff'd sub nom. In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019) (holding that confirmation of a plan that contains releases is a proceeding "arising in and arising under title 11" and thus a core proceeding that the Court has jurisdiction over); 1 Collier on Bankruptcy ¶ 3.01 (16th ed. 2021) (explaining that matters "arising under" title 11 include "confirmation of a plan under chapters 9, 11, 12 or 13").

process.  Also, the California Plaintiffs' Tort Claims will be resolved in the claims allowance process because the California Plaintiffs' filed proofs of claims against the Debtors' Estates.

43.    The California Plaintiffs have a low likelihood of success on this issue.

**2.    There is no Risk of Irreparable Injury to the California Plaintiffs (or any Tort Claimant) if a Stay is Not Granted.**

44.    Even if the movant is able to establish a substantial likelihood of success on the merits, the absence of a *substantial likelihood* of irreparable injury makes granting a stay improper. *Siegel*, 234 F.3d at 1176 (en banc).  That is because a showing of irreparable injury "is the sine qua non of injunctive relief"—or necessary condition. *Id.*  Such irreparable injury "must be neither remote nor speculative, but actual and imminent." *Id.*  "[S]imply showing some possibility of irreparable injury fails to satisfy [this] factor." *Nken*, 556 U.S. at 436; *Arias Leiva v. Wilson*, No. 1:17-CV-23938-JLK, 2018 WL 9662565, at *2 (S.D. Fla. Oct. 30, 2018) (merely showing a possibility of irreparable injury is insufficient).

45.    The sole basis for a substantial likelihood of irreparable harm cited by the California Plaintiffs is the mere possibility of equitable mootness.  Stay Motion, ¶21.  "Equitable mootness is a doctrine that permits courts sitting in bankruptcy appeals to dismiss challenges (typically to confirmation plans) when effective relief would be impossible." *In re Nica Holdings, Inc.*, 810 F.3d 781, 786 (11th Cir. 2015).  However, the lack of a stay does not compel a finding of equitable mootness. *In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 745 (S.D. Fla. 2010).

46.    More to the point, the risk of equitable mootness by itself is not sufficient to show irreparable harm.  Indeed, "if equitable mootness alone could serve as the basis of irreparable injury, a stay would be issued in every case" challenging a confirmation order on appeal. *In re W.R. Grace & Co.*, 475 B.R. 34, 207 (D. Del. 2012); *see also In re Scrub Island Dev. Grp. Ltd.*, 523 B.R. at 878 ("the majority of courts have held that the risk that an appeal may become moot does not by itself constitute irreparable harm."); *In re F.G. Metals, Inc.*, 390 B.R. 467, 477 (Bankr.

M.D. Fla. 2008).  In *W.R. Grace*, the movant, like the California Plaintiffs here, sought a stay of a confirmation order pending appeal and its sole basis for irreparable injury was that its appeal might become equitably moot.  475 B.R. at 206.  Because this is the sole reason for irreparable injury advanced by the California Plaintiffs for a stay pending appeal—the Stay Motion must be denied.

47.    Moreover, while equitable mootness is an insufficient basis to show irreparable injury, it is especially the case here where the Court specifically found that the Plan will pay the Tort Claims in full.  The California Plaintiffs' interests are therefore fully protected and there can be no irreparable harm.  Indeed, the Court found after carefully considering and weighing the evidence "that the 204 [Tort Claims] timely asserted against the estates will be paid in full through the process set forth in the second amended plan."  *See* July 29, 2024 Hr'g Tr. 31:10-14; Confirmation Order, ¶ YY ("[T]he Court is satisfied that . . . the $19.2 million to be contributed sufficiently funds the Tort Claims Trust to resolve and provide for payment in full of all asserted Tort Claims that are ultimately allowed.").

48.    In the *Boy Scouts* case, certain claimants filed a motion for stay pending appeal arguing that they would suffer irreparable harm because they believed they could recover more outside of the plan than within it.  *In re Boy Scouts of Am. & Delaware BSA, LLC*, No. 20-10343-LSS, 2023 WL 6442586, at *8 (D. Del. Oct. 3, 2023).  The district court explained that the bankruptcy court carefully considered the evidence and made findings of fact that claims will likely be paid in full, warranting denial of the motion because no irreparable harm could be shown.  *Id.*

49.    Where an appellant stands to receive payment in full, courts reject assertions of irreparable harm.  *See, e.g.*, *In re Heritage Hotel Assocs., LLC*, No. 8:19-BK-09946-CED, 2020 WL 8611083, at *4 (Bankr. M.D. Fla. Sept. 11, 2020) (recognizing that bidder on assets was not irreparably harmed by sale order absent a stay where if property sold the bidder would be paid in full); *In re 160 Royal Palm, LLC*, No. 18-19441-EPK, 2019 WL 1224600, at *11 (Bankr. S.D. Fla.

Mar. 14, 2019) (rejecting claim of irreparable injury if stay not granted where claimant was protected by its lien on sale proceeds which would provide full payment); *In re G-I Holdings Inc.*, 420 B.R. 216, 283 (D.N.J. 2009) ("The Court will not grant a stay pending appeal and exacerbate the present risk of failure for a creditor that is being paid in full under the Plan.").

### 3. There is Substantial Harm to Other Interested Persons if the Confirmation Order is Stayed

50.     The California Plaintiffs assert that the "only effect of a stay is to delay payments to Tort Claimants."  Stay Motion, ¶22.  Not true.  Staying the Confirmation Order affects *everyone* who stands to receive a distribution under the Plan—hundreds of creditors.  Moreover, staying the Confirmation Order prevents the Liquidating Trustee from getting underway with his duty to maximize value for the Liquidating Trust Beneficiaries and prevents the Tort Claims Trustee from starting the process to analyze Tort Claims and make distributions.

51.     The California Plaintiffs wrongly suggest that the only thing left to do is the "pursuit of litigation" and "[n]othing prevents the Debtors from pursuing litigation targets if the Court stays the Confirmation Order."  Stay Motion, ¶22.  This is also not true.  Put simply, the Debtors are out of money.  Staying the Confirmation Order will cause the Debtors' Estates to incur expenses, including but not limited to, professional fees it has no way of paying.  This endangers the Liquidating Trust and the Tort Claims Trust and risks tearing apart the carefully negotiated settlements set forth in the Plan.

52.     Given that the Court has already determined that Tort Claims will be paid in full, granting a stay now would throw the entire process into question, including whether the Liquidating Trust and the Tort Claims Trust can proceed.  The appellate process could span years.  Because the Tort Claimants will receive full payment through the Plan, it would not be appropriate to stay the Confirmation Order.  *See In re Boy Scouts*, 2023 WL 6442586, at *9 (explaining that where claimants seeking a stay will be "made financially whole" this factor weighs against a stay).

**4.    The Public Interest Favors Finality and Denial of the Stay Motion.**

53.    The California Plaintiffs argue that public interest favors a stay because a post-*Purdue* decision is a matter of first impression.  However, given that the California Plaintiffs have not met any of the previous three factors for a stay pending appeal, it is not appropriate to stay the Confirmation Order just because it presents new issues for appeal.  It bears repeating that the denial of a stay does not remove the California Plaintiffs' appellate rights.  Moreover, the California Plaintiffs comprise only nine (9) out of the 204 Tort Claimants (*i.e.*, 4.4% of Tort Claimants).  A stay would significantly delay distribution to the other 95.6% Tort Claimants.

54.    When analyzing public interest arguments, courts should "consider the good of the case as a whole" and not focus on the desires of a single stakeholder group which could "thwart the maximization of value for all."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284 (Bankr. S.D.N.Y. 2007).  It simply is not in the public interest to stay the Confirmation Order for an indefinite period of time given that there has been no showing of a substantial likelihood of success or a substantial risk of irreparable injury.  Moreover, a "timely resolution of the bankruptcy estate is also in the public interest."  *In re W.R. Grace & Co.*, 412 B.R. 657, 666 (D. Del. 2009).

**C.    If the Court Determines that a Stay is Appropriate, the California Plaintiffs Must Post a Substantial Bond to Keep the Confirmation Order Stayed.**

55.    The Debtors strongly submit that the California Plaintiffs have not met their burden to show that a stay pending appeal is appropriate, which is necessary to even consider a bond.  *See In re 160 Royal Palm, LLC*, 2019 WL 1224600, at *3 (explaining that under Rule 8007 there is no stay pending appeal as of right and "the Court must first determine whether a stay is warranted and, if so, determine whether a bond or other security will be required as a condition of the stay.").  However, if the Court is inclined to grant a stay, it should require a substantial bond to be posted by the California Plaintiffs.  As explained above, staying the Confirmation Order puts everything on hold and will cost the Debtors money they simply do not have.  Because the Court has already

21

found that the California Plaintiffs will receive a full recovery, this makes the requirement to post a bond all the more appropriate.

<u>**CONCLUSION**</u>

56.    For these reasons, the Debtors respectfully request that the Court deny the Stay Motion in its entirety.

Dated: August 6, 2024

Respectfully submitted,

BERGER SINGERMAN LLP
*Counsel for the Debtors and*
*Debtors-in-Possession*
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By:    */s/ Jordi Guso*
    Paul Steven Singerman
    Florida Bar No. 378860
    singerman@bergersingerman.com
    Jordi Guso
    Florida Bar No. 863580
    jguso@bergersingerman.com
    Clay B. Roberts
    Florida Bar No. 116058
    croberts@bergersingerman.com